1 | JOSHUA HILL JR. (SBN 250842)
JHill@mofo.com
2 | RACHEL J. MOROSKI (SBN 286805)
RMoroski@mofo.com
3 | MORRISON & FOERSTER LLP
425 Market Street
4 | San Francisco, California  94105-2482
Telephone: 415.268.7000
5 | Facsimile: 415.268.7522

6 | JANIE SCHULMAN (SBN 130461)
JSchulman@ mofo.com
7 | NILES PIERSON (SBN 307115)
NPierson@mofo.com
8 | MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
9 | Los Angeles, California  94105-2482
Telephone: 213.892.5200
10 | Facsimile: 213.892.5454

11 | Attorneys for Plaintiff
INTERNATIONAL TECHNOLOGICAL
12 | UNIVERSITY FOUNDATION, INC.

13 | UNITED STATES DISTRICT COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15 | SAN JOSE DIVISION

16 | INTERNATIONAL TECHNOLOGICAL
UNIVERSITY FOUNDATION, INC.,

17 | Plaintiff,

18 | v.

19 |

20 | KIRSTJEN M. NIELSEN, in her official capacity
as Secretary of the Department of Homeland
21 | Security, UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
22 | HOMELAND SECURITY, UNITED STATES
IMMIGRATION AND CUSTOMS
23 | ENFORCEMENT, STUDENT AND
EXCHANGE VISITOR PROGRAM, and DOES
1 through 10, inclusive,

24 |

25 | Defendants.

CASE NO.  18-cv-6228

**COMPLAINT FOR
DECLARATORY, INJUNCTIVE,
AND MANDAMUS RELIEF**

Plaintiff International Technological University Foundation, Inc. ("ITU") alleges as follows:

**NATURE OF THE ACTION**

1.      The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Indeed, the "attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Id.*  As such, a client cannot be forced to reveal the contents of its communications with its counsel.

2.      ITU brings this action because the Department of Homeland Security's Student and Exchange Visitor Program ("SEVP") has been in the unauthorized possession of a privileged communication between ITU and its counsel; SEVP has refused to return the document or reveal how it came into possession of the document; and SEVP has instead relied on the document to attempt to revoke ITU's ability to admit nonimmigrant students, a potential death knell for the school.  SEVP's actions are "outrageous" and constitute a fundamental violation of ITU's constitutional rights.  This action alleges violations of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.  This action also seeks declaratory, injunctive, and mandamus relief pursuant to 28 U.S.C. §§ 1361, 1651, & 2201 and 5 U.S.C. § 706.

3.      Defendant SEVP's management of the process by which schools, such as ITU, are certified to enroll "nonimmigrant" students—those temporarily studying in the U.S. on F-1 visas—endows it with substantial power over a school's ability to recruit and retain international students.  For students to receive F-1 visas, an institution in the United States must first sponsor such students through issuance of a form known as an I-20.  SEVP controls whether or not schools have approval to submit I-20s through a certification process.  SEVP also has the power to revoke this certification.  Thus, for schools with significant numbers of nonimmigrant students

and tuition-funded academic programs, particularly nonprofit schools, SEVP certification can make or break the ability to fulfill their academic missions.

4.      The United States has historically been a magnet for higher education students around the world.  As of June 2017, over one million nonimmigrant students were enrolled in SEVP-certified schools in the United States.  ITU, a school with graduate degree programs in the STEM disciplines, first obtained SEVP certification in 2003 and has continuously enrolled nonimmigrant students in every subsequent academic year to the present.  Approximately 80% of ITU's annual classes have obtained F-1 visas to travel lawfully to the United States to pursue academic studies at ITU.  The majority of ITU's students travel from India and China.  This is consistent with broader trends, as SEVIS reports that 49% of all Asian students in the United States are earning a STEM degree; and 84% of Indian students in the United States study STEM.

5.      In July 2016, SEVP issued to ITU a notice that it intended to withdraw ITU's certification to admit nonimmigrant students.  Based on the content of the notice, ITU first learned that SEVP's decision to withdraw ITU's certification was based on hearsay drawn from a confidential, attorney-client privileged memorandum, authored in October 2014 by ITU's outside counsel (the "Privileged Report" or "Report").  ITU immediately advised SEVP that the memorandum was protected by the attorney-client privilege and demanded that SEVP return or destroy all copies and not rely on its contents.  SEVP steadfastly refused to return the Privileged Report, while admitting that it had been in possession of the Report since January 13, 2015, and, thus, had concealed its possession of the Report for more than 18 months.

6.      In July 2017 and again in April 2018, while seeking to formally withdraw ITU's certification based on information found in the Privileged Report, SEVP attempted to justify its clear violation of ITU's attorney-client privilege with numerous and repeated unverifiable assertions.

7.      During the time that SEVP secretly possessed and improperly relied on the Privileged Report, ITU's Board of Trustees and new President have reconstituted its leadership; imposed industry best practices in all administrative functions; expanded its research laboratories,

resulting in patented innovations; passed a fulsome third-party audit of its administrative functions; and, in July 2018, achieved full reaccreditation from WASC.

8.     The government's outrageous and fundamentally unfair treatment of ITU is consistent with the animus toward immigration of the current Executive Branch.  Defendant Department of Homeland Security ("DHS") is on the front lines of this administration's war on immigration and immigrants.  Actions of the administration have included a controversial travel ban on visitors from Muslim-majority countries, a "zero tolerance" policy resulting in the forced separation of families seeking refuge in the United States, and the unilateral elimination of the Deferred Action for Childhood Arrivals program (DACA).  More recently, the executive branch has discussed new restrictions on Chinese students studying in the United States.  Thus, it is not surprising that, in April 2018, SEVP again tried to withdraw ITU's certification, doubling-down on its reliance on the Privileged Report in the face of both ITU's notice and prima facie evidence that the Report is protected by the attorney-client privilege.

9.     SEVP's decision to withdraw ITU's certification based on information it learned through the unauthorized possession of the Privileged Report is a blatant violation of ITU's Due Process rights.  Even more troubling is the apparent approval of this action by attorneys within DHS, ICE, and SEVP.  As a result of SEVP's actions, ITU announced to its student body in July 2017 that SEVP had taken this action, resulting in an immediate and devastating decline in student enrollment and, thus, its operations.

10.     Losing the ability to admit nonimmigrant students would decimate ITU's student population and tuition revenue even more and almost certainly lead to the closure of the school. By this action, ITU seeks a declaration that SEVP's actions are contrary to the laws of the United States and the Constitution, and to enjoin Defendants from any and all use of documents protected by ITU's attorney-client privilege and the attorney work product doctrine.

## THE PARTIES

11.     Plaintiff International Technological University Foundation, Inc. ("ITU") is a non-profit operating a WASC-accredited graduate school with degree programs in business

administration, computer engineering, digital arts, electrical engineering, engineering management, and software engineering.  ITU is headquartered in San Jose, California.

12.     As of the time of the filing of this Complaint, Defendant Kirstjen M. Nielsen is the Secretary of the United States Department of Homeland Security ("DHS").  She oversees the DHS and SEVP.  She is sued in her official capacity.

13.     Defendant United States of America includes all government agencies and departments responsible for the possession, use, and review of any document protected by ITU's attorney-client privilege or the attorney work product doctrine.

14.     Defendant Department of Homeland Security is a federal cabinet agency charged with enforcing federal laws governing border control, customs, trade, and immigration.  Immigration and Customs Enforcement ("ICE") is the largest investigative arm of DHS.

15.     Defendant United States Immigration and Customs Enforcement, Student and Exchange Visitor Program ("SEVP"), on behalf of DHS, manages schools and nonimmigrant students in the F visa classification and their dependents.  Only schools certified by SEVP can enroll nonimmigrant students in the F visa classification.

16.     ITU is ignorant of the true names and/or capacities of the defendants sued under the fictitious names of Does 1-10, inclusive, except that ITU is informed and believes and, on that basis, alleges that the damages alleged herein were proximately caused by these defendants' wrongful acts.  ITU therefore sues these defendants by such fictitious names and ITU will amend this complaint to allege their true names and capacities when ascertained.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361.  Relief may be granted under the Administrative Procedure Act, 5 U.S.C. §§ 702 to 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 to 2202, the All Writs Act, 28 U.S.C. 1651, and the general legal and equitable powers of this Court.  ITU alleges that an Executive Agency of the United States Government has acted unreasonably, arbitrarily and capriciously and has violated the United States Constitution and federal regulations in connection with an agency decision.

18.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(e), in that the plaintiff ITU resides in this District in San Jose, California.

19.     Intradistrict assignment is proper in the San Jose Division pursuant to Local Rule 3-2(e) because a substantial part of the events or omissions which give rise to the claim occurred in the City of San Jose.

## FACTUAL ALLEGATIONS

## I.     ITU IS A WASC-ACCREDITED SCHOOL IN THE SILICON VALLEY THAT SERVES MOSTLY INTERNATIONAL STUDENTS.

20.     ITU is a non-profit organization operating a university accredited by the Western Association of Schools and Colleges Senior Commission for Universities and Colleges ("WASC") that offers technology-focused graduate programs in electrical engineering, computer science, software engineering, computer engineering, digital arts, engineering management, cybersecurity, and business administration and conducts independent high-technology research. ITU research has led to patented inventions and startup companies.  ITU seeks to prepare its students to become business and technical leaders in the tech industry.

21.     WASC is an academic body that accredits all major universities in California, Hawaii, and the U.S. Pacific Islands that confer graduate degrees.  Other WASC-accredited schools include, for example, Stanford University, Santa Clara University, the University of Southern California, the University of Hawaii, and the schools in the University of California system.  ITU earned WASC accreditation in February 2013, which was the result of four years of rigorous preparation.  Accreditation status is based upon the application of four accreditation standards and 39 "Criteria for Review."  The accreditation process involved two site visits by teams of four to five faculty and administrators from other accredited universities across the country.

22.     F-classified students are nonimmigrants whose primary purpose is to complete an academic course of study at an SEVP-certified school or program.  These students obtain F-1 visas to travel lawfully to the United States to pursue academic studies.  By convention, these

students are called "nonimmigrant" students.  In June 2017, there were a reported 8,774 SEVP-certified schools that enrolled international students.

23.     A substantial majority of ITU's students are non-American citizens who have obtained F-1 visas.  Although the percentage fluctuates from year to year, nonimmigrant students who have obtained F-1 visas comprised approximately 80% of ITU's student enrollment in the 2017-2018 academic year.  Over the last two decades, thousands of nonimmigrant students have graduated from ITU, several of whom have gone on to work for some of the most prominent technology companies in Silicon Valley, while many others have returned to their home countries to apply what they learned at ITU.

24.     Unlike many larger universities also accredited by WASC, ITU does not yet benefit from an endowment to fund its academic programs.  Instead, ITU is reliant on revenue from student tuition and fees to fund the day-to-day operations of the school, such as hiring faculty and staff, maintaining its campus in San Jose, enhancing student programs, and partnering with community groups in Silicon Valley.  If ITU's SEVP certification is withdrawn, and ITU loses its authority to issue Forms I-20 to prospective nonimmigrant students, ITU would not survive the corresponding loss of student tuition and fees needed to remain a functioning academic institution.

## II.     SEVP HAS THE ENORMOUS POWER TO GRANT AND REVOKE CERTIFICATION TO ENROLL NONIMMIGRANT STUDENTS.

25.     On behalf of the DHS, SEVP manages schools and nonimmigrant students in the F visa classification.  SEVP uses the online Student and Exchange Visitor Information System ("SEVIS") to track and monitor schools and F-classified nonimmigrants while they visit the United States and participate in the United States education system.  SEVP provides approval and oversight to schools authorized to enroll nonimmigrant students and gives guidance to both schools and students about the requirements for maintaining their status.  As a part of ICE, SEVP works closely with its government partners involved in the international student process, including U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection and the U.S. Department of State.

26.     Under 8 C.F.R. § 214.3, a "school or school system seeking initial or continued authorization for attendance by nonimmigrant students . . . must file a petition for certification or recertification with SEVP."  Eligibility for SEVP certification requires that a school must, among other things, be a bona fide established place of learning with commensurate facilities and instruction.  *See* 8 C.F.R. § 214.3(a)(3).  To remain eligible for recertification, a school typically must establish that it is has complied with certain recordkeeping and reporting requirements.  *Id.* Schools are "subject to on-site review, at the discretion of SEVP." *Id.*

27.     SEVP has great power to grant and revoke certification.  Indeed, "SEVP may review a school's certification at any time to verify the school's compliance with [] recordkeeping, retention, reporting and other requirements . . . to verify the school's continued eligibility for SEVP certification." In addition, "SEVP may initiate remedial action with the school, as appropriate, and may initiate withdrawal proceedings against the school . . . if noncompliance or ineligibility of a school is identified." 8 C.F.R. § 214.3(a)(3).  SEVP can unilaterally initiate proceedings to withdraw certification if SEVP alone concludes that the school is out of compliance.  *Id.*

28.     SEVP is required to issue a Notice of Intent to Withdraw ("Notice of Intent") if it concludes that it "has information that a school or school system may no longer be entitled to SEVP certification prior to the school being due for its two-year recertification." The Notice of Intent must provide the "grounds for withdrawing the SEVP certification," information on pertinent deadlines, and notice of the school's right to a telephonic interview in support of its response to the Notice of Intent.

29.     A school on the receiving end of a Notice of Intent is permitted to submit evidence rebutting the grounds for withdrawal of certification.  8 C.F.R. § 214.4(b)(2).  If SEVP rejects the evidence submitted by the school in the response to the Notice of Intent, SEVP will issue a Withdrawal on Notice ("Withdrawal"), which has the effect of withdrawing SEVP certification. "The school must wait at least one calendar year from the date of denial of recertification or withdrawal on notice before being eligible to petition again for SEVP certification." *Id.* at § (a)(2).

### III. ITU RECEIVED A PRIVILEGED REPORT FROM ITS COUNSEL AFTER A PROACTIVE INTERNAL INVESTIGATION RELATED TO STUDENT RECORDS.

30.     In May 2014, ITU engaged the law firm of Nolan, Barton & Olmos LLP (the "Nolan Law Firm") to investigate concerns related to ITU's student records.  A Nolan Law Firm attorney, David Olmos, led this internal investigation, with support from his colleagues.  Upon completion of the internal investigation in September 2014, Olmos authored a memorandum to ITU, the final version of which is dated October 6, 2014 (the "Privileged Report").  The Privileged Report contains the Nolan Law Firm's thoughts and impressions as counsel to ITU.  Moreover, the privileged character of the Privileged Report is apparent on the face of the document:



Nolan, Armstrong & Barton, LLP

To:     Rebecca Choi
        Chief Operating Officer
        International Technological University

        Mikel Duffy
        Associate Director of Innovation
        International Technological University

From:   Daniel Olmos
        Nolan, Armstrong & Barton, LLP

Date:   October 6, 2014

Re:     Updated Summary of Investigation Regarding ITU Response to January 2014 Student
        and Exchange Visitor Program Request for Evidence, Including History of Related
        Conduct

INTRODUCTION

31.     During and after the internal investigation, the Nolan Law Firm advised ITU regarding its SEVP certification.  While the Nolan Law Firm was investigating and advising ITU, ITU understood that the investigation, the Privileged Report, and the related legal advice that the Nolan Law Firm provided to ITU involved confidential attorney-client communications subject to

the protections of the attorney-client privilege.  ITU further understood that the Privileged Report constituted confidential attorney work product.  ITU never authorized the production of the Privileged Report to any third party.

32.    The Nolan Law Firm also understood that the investigation, the Privileged Report, and the related legal advice it provided to ITU involved confidential attorney-client communications subject to the protections of the attorney-client privilege.  The Nolan Law Firm further understood that the Privileged Report constituted confidential attorney work product.  At no time did the Nolan Law Firm have reason to believe or expect that ITU intended to waive attorney-client privilege or work product protections as to the Privileged Report.

## IV.    SEVP INVADED ITU'S ATTORNEY-CLIENT PRIVILEGE TO JUSTIFY ITS INTENT TO REVOKE ITU'S CERTIFICATION TO ENROLL NONIMMIGRANT STUDENTS.

33.    ITU first received SEVP certification in 2003.  As a result of this certification, SEVP permitted ITU to issue Form I-20 "Certificate of Eligibility for Student Status" documents to prospective nonimmigrant students.  ITU also gained access to SEVIS.  SEVP recertified ITU for authorization to admit nonimmigrant students in 2005, 2007, 2009, and 2011.

34.    Despite this history, on July 26, 2016, SEVP served ITU with a Notice of Intent, which described the alleged conduct of former school administrators as grounds for revocation of ITU's certification.  Curiously, the Notice of Intent stated that, "[o]n January 13, 2015, SEVP received a copy of an October 6, 2014 report commissioned by International Technological University on May 2, 2014 summarizing an investigation 'regarding ITU response to January 2014 Student and Exchange Visitor Program Request for Evidence, Including History of Related Conduct.'"  ITU promptly notified SEVP that it intended to contest the Notice of Intent.

35.    Upon ITU's review of the Notice of Intent, it became clear that SEVP's decision to withdraw ITU's certification was grounded almost entirely on uncorroborated information SEVP had learned through its unauthorized possession and review of the Privileged Report prepared by ITU's outside counsel, which was and is protected by the attorney-client privilege and attorney work product doctrine.  Prior to receipt of the Notice of Intent, on July 26, 2016, ITU did not know, and had no reason to know, that SEVP possessed a copy of the Privileged Report.

36. ITU promptly (1) asserted its attorney-client privilege; (2) requested that SEVP return all copies of the Privileged Report; and (3) requested that SEVP not rely upon it in support of any action by SEVP in respect of ITU's certification. Shockingly, SEVP refused to return the Privileged Report and offered various and shifting justifications for its unauthorized possession. Specifically:

a) On August 26, 2016, ITU sent a letter addressed to Timothy Hicks, Chief of SEVP's Analysis and Operations Center, explaining that the Privileged Report was protected by the attorney-client privilege and that ITU had not authorized SEVP to receive a copy. The letter directed SEVP to return the Privileged Report to ITU. ITU copied the United States Attorney's Office for the Northern District of California on the correspondence.

b) On September 6, 2016, ITU received a letter response from SEVP employee Beth Gibble denying that the Privileged Report was an attorney-client privileged document. The letter from Ms. Gibble also asserted, in contradiction of the former point, that any "privilege was waived by its intentional disclosure or lost by ITU's failure to timely assert or reasonably protect the privilege."

c) In response to Ms. Gibble's letter, on September 13, 2016, ITU sent another letter reiterating that the Privileged Report was privileged and requesting that SEVP provide the basis for its understanding that the privilege was waived.

d) On October 3, 2016, ITU received a further response from Ms. Gibble declining to provide any explanation of how or from whom SEVP received the Privileged Report. SEVP copied the United States Attorney's Office for the Northern District of California on the correspondence.

e) On October 21, 2016, in a third letter to SEVP, ITU further explained the basis for its understanding of the privileged nature of the Privileged Report

1     and again asked that SEVP provide support for its position that the

2     privilege had been waived.

3     f)    On October 31, 2016, Lisa Glasoe, the Chief of SEVP's Analysis and

4     Operations Center, responded in a three-sentence letter reasserting the

5     position that the Privileged Report was not privileged and refusing to

6     provide any further details.

7     37.    On September 26, 2016, after the multiple unsuccessful attempts to prompt SEVP

8 to return the Privileged Report, ITU formally responded to the Notice of Intent in a 33-page letter

9 brief supported by witness declarations and 30 exhibits (the "Response to the Notice of Intent").

10 The Response to the Notice of Intent describes in great detail the reasons why SEVP should not

11 withdraw ITU's certification and instead allow it to continue its educational mission.  Pursuant to

12 8 C.F.R. § 214.4(f), in the Response to the Notice of Intent, ITU requested an interview with

13 SEVP, which is required by the SEVP regulations.

14     38.    Further, in the Response to the Notice of Intent, ITU reiterated its notice to SEVP

15 that it was improperly relying on an attorney-client privileged communication as the basis for its

16 allegations and renewed its request that the Privileged Report be returned.

17     39.    Nearly a year later, on July 18, 2017, SEVP served ITU with a Withdrawal on

18 Notice (the "2017 Withdrawal") in which SEVP announced that ITU's certification was being

19 withdrawn.  The 2017 Withdrawal was riddled with constitutional, legal, and procedural defects.

20 As a threshold matter, SEVP never responded to ITU's request for a mandatory interview before

21 serving the Withdrawal, as required by 8 C.F.R. § 214.4(f).  Further, SEVP failed to consider the

22 significant evidence that ITU had overhauled its leadership and academic programs and adopted

23 best practices with regard to recordkeeping.  Stunningly, despite ITU's repeated efforts to claw

24 back the Privileged Report, SEVP explicitly based the withdrawal of certification on the

25 privileged, hearsay statements contained in the Privileged Report.

26     40.    ITU appealed the 2017 Withdrawal, in part, on the grounds that SEVP had denied

27 ITU's request for a mandatory interview and that SEVP's decision to possess, conceal, review,

28

and use the Privileged Report was and remained outrageous and a violation of ITU's Due Process rights.

41.     On September 28, 2017, SEVP rescinded the 2017 Withdrawal and reopened the proceedings because it had denied ITU its requested mandatory interview.  A telephonic interview was conducted on October 18, 2017 to allow ITU to address grounds for withdrawal raised in the Notice of Intent.  During the interview, SEVP failed to present any of its own evidence, did not indicate whether it would continue to rely on the Privileged Report, did not disclose how it obtained the Report, and, indeed, SEVP failed to ask a single question of ITU.

42.     After granting ITU a perfunctory interview, SEVP plowed forward to issue a new Withdrawal on Notice, on April 18, 2018, announcing again that it was withdrawing ITU's SEVP certification (the "2018 Withdrawal").

43.     Incredibly, SEVP doubled-down on the use of the Privileged Report as a basis for withdrawing ITU's certification.  SEVP expressed no remorse about its reliance on the Privileged Report and unilaterally declared in the 2018 Withdrawal that ITU's privilege assertion is invalid. SEVP stated that ITU had waived the privilege. SEVP failed to provide any facts or evidence supporting such sweeping assertions.  SEVP summarily dismissed ITU's arguments regarding the Privileged Report and explicitly indicated that SEVP was, in fact, relying on the contents of the Privileged Report in seeking to withdraw ITU's certification.  ITU appealed the 2018 Withdrawal, arguing, in part, that SEVP improperly relied on the Privileged Report as evidence.

44.     On August 6, 2018, ITU alerted Ms. Glasoe to the continued violation of ITU's attorney-client privilege and her constitutional and ethical obligations to ensure that all copies of the Privileged Report were returned or destroyed.  ITU copied ICE's Principal Legal Advisor, Tracy Short; ICE's Associate Director of its Office of Professional Responsibility, Waldemar Rodriguez; and the United States Attorney's Office for the Northern District of California on the correspondence.

45.     The federal government itself has pioneered the use of so-called "taint teams" to guard against the very conduct in which SEVP has engaged in this case.  For example, when government agents search files that may contain privileged information, a "team of prosecutors or

agents who are *not* working on the case may form a 'filter team' or 'taint team'" to conduct the search and to "permit[ ] only unprivileged files" to be used by the prosecution team. *See* UNITED STATES DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, COMPUTER CRIME AND INTELLECTUAL PROPERTY SECTION, SEARCHING AND SEIZING COMPUTERS AND OBTAINING ELECTRONIC EVIDENCE IN CRIMINAL INVESTIGATIONS, at 110 (2009) (emphasis added). The reason for such taint teams is the universally-accepted proposition that the government cannot use privileged information against the holder of the privilege.

## V.     ITU HAS BEEN, AND WILL BE, SEVERELY HARMED BY DEFENDANTS' INTRUSION INTO ITU'S ATTORNEY-CLIENT RELATIONSHIP AND VIOLATION OF ATTORNEY WORK PRODUCT PROTECTIONS.

46.     The attorneys and all other SEVP employees who have accessed and reviewed the Privileged Report are now incurably prejudiced against ITU and cannot be permitted to stand in judgment of ITU's certification. A unilateral decision on the part of the government to rely on improperly-obtained privileged material "constitutes a *per se* intentional intrusion" into the attorney-client relationship. *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997); *see also United States v. Danielson*, 325 F.3d 1054, 1072 (9th Cir. 2003) (noting that the government "can do a number of things to insulate itself from privileged trial strategy information," including "shield[ing] itself and its case agents from any attorney-client conversations") (citing *United States v. Noriega*, 764 F. Supp. 1480, 1483 (S.D. Fla. 1991)).

47.     As required, upon receipt of the 2017 Withdrawal, ITU called a special town hall meeting of faculty, staff, and students to announce that SEVP intended to withdraw ITU's certification. Despite assurances from senior leadership of ITU that ITU intended to appeal the 2017 Withdrawal and pursue all available legal remedies, the reaction was swift and immediate. Even though ITU was authorized to enroll nonimmigrant students during the pendency of the appeal, enrollment began to decline and the decline has continued.

48.     Since the summer of 2017, when the first Withdrawal was announced (discussed below), ITU's enrollment has declined from 883 students to 558 students, or by 37%. ITU is entirely funded by student tuition and fees. If SEVP's efforts to withdraw ITU's certification based on information it learned from the Privileged Report are permitted to continue, the loss of

1  students will accelerate and ITU will no longer be able to afford the salaries of critical faculty and

2  staff.  ITU would almost certainly no longer be able to meet WASC requirements with the deep

3  cuts to personnel that would be necessary.  All of these factors would force ITU to close.  This

4  would be harmful to students, graduates, faculty, staff, and their families.

5  49.  On July 16, 2018, ITU submitted its brief in support of the appeal of the 2018

6  Withdrawal.  The SEVP appeals process does not require that SEVP or any of its representatives

7  file any sort of opposition brief, and it does not provide ITU with any further opportunities to

8  reply to any arguments presented by SEVP's staff.  An Administrative Appeals Team adjudicator

9  is responsible for the case and, absent an order directing SEVP not to review or rely on the

10  Report, will be tainted by exposure to the Privileged Report because the 2018 Withdrawal

11  explicitly refers to, quotes from, and attaches the Privileged Report, all of which will result in

12  further harm to ITU.

13  50.  While the final adjudication of ITU's certification is not yet complete, Defendants'

14  acts and omissions, as alleged herein, taken singularly and/or collectively, have resulted in a

15  deprivation of property and liberty interests of ITU, including past and future lost revenue from

16  the decline in student enrollment, the repeated attempts to strip ITU of its certification to enroll

17  nonimmigrant students, the potential loss of said certification, and the violation of confidentiality

18  that should be afforded its communications with counsel, all of which are guaranteed under the

19  Due Process Clause of the Fifth Amendment of the U.S. Constitution.  This deprivation of liberty

20  and property interests was without due process of law.  The harm to ITU from SEVP's

21  unauthorized possession, review, and use of the Privileged Report continues unabated.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief for Violation of Fifth Amendment Due Process Rights and Federal**

**Common Law under 28 U.S.C. 2201)**

25  51.  Plaintiff re-alleges and incorporates by reference the allegations set forth in each

26  of the preceding paragraphs of this Complaint.

27  52.  Under federal common law, Plaintiff has a right to be free from intrusion into the

28  attorney client privilege.

53.     The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the Government from depriving any person of life, liberty, or property without due process of law.  The Due Process Clause requires that administrative enforcement actions taken by the federal government be fundamentally fair and neither arbitrary nor capricious.  The Due Process Clause also prohibits outrageous governmental intrusion into another person's attorney-client relationship.

54.     Defendants deliberately concealed their possession, review, and use of the Privileged Report notwithstanding Defendants' knowledge that the Privileged Report contained confidential communications between ITU and its outside lawyers for the purposes of obtaining legal advice.

55.     Defendants announced their intention to withdraw ITU's SEVP certification based on information gained from their unauthorized and secretive possession, review, and use of the Privileged Report, thereby leading to immediate declines in student enrollment and the potential revocation of ITU's ability to enroll nonimmigrant students.

56.     Defendants have violated the Due Process Clause by failing to promptly return the Privileged Report to ITU and by further possessing, concealing, reviewing, and using the Privileged Report in the adjudication of ITU's SEVP certification.

57.     Defendants' unauthorized possession, review, and use of the Privileged Report causes ongoing harm to ITU.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief under the Administrative Procedures Act – 5 U.S.C. § 706)

58.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

59.     Section 706 of the Administrative Procedures Act provides that courts "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise [contrary to] law; [or] contrary to constitutional right, power, privileged, or immunity; [or] without observance of procedure required by law; [or] unsupported by substantial evidence…." 5 U.S.C. § 706(2).

60.     Under federal common law, Plaintiff has a right to be free from intrusion into the attorney client privilege.

61.     The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the Government from depriving any person of life, liberty, or property without due process of law.  The Due Process Clause requires that administrative enforcement actions taken by the federal government be fundamentally fair and neither arbitrary nor capricious.  The Due Process Clause also prohibits outrageous governmental intrusion into another person's attorney-client relationship.

62.     Defendants deliberately concealed their possession, review, and use of the Privileged Report notwithstanding Defendants' knowledge that the Privileged Report contained confidential communications between ITU and its outside lawyers for the purposes of obtaining legal advice.  Defendants' possession, review, and use of the Privileged Report constitutes agency action for which there are no administrative remedies or appeal rights.

63.     Defendants announced their intention to withdraw ITU's SEVP certification based on information gained from their unauthorized and secretive possession, review, and use of the Privileged Report, thereby leading to immediate declines in student enrollment and the potential revocation of ITU's ability to enroll nonimmigrant students.

64.     Defendants have violated the Due Process Clause by failing to promptly return the Privileged Report to ITU and by further possessing, concealing, reviewing, and using the Privileged Report in the adjudication of ITU's SEVP certification.

65.     Defendants' unauthorized possession, review, and use of the Privileged Report causes ongoing harm to ITU.

66.     Notwithstanding common law requirements and the obligations of government counsel to return and cease all use of the Privileged Report, Defendants have continued to possess, review, and use the Privileged Report in their adjudication of ITU's SEVP certification.

67.     ITU seeks a declaration that Defendants may not use the Privileged Report, or any information learned as a result of Defendants' unauthorized possession, review, and use of the Privileged Report, in the adjudication of ITU's SEVP certification.

68.     ITU also seeks a declaration that any and all individual employees of DHS, ICE, or SEVP who have been exposed to the Privileged Report, or to any information derived from the Privileged Report, are prohibited from participating in any aspect of the adjudication of ITU's SEVP certification.

## THIRD CLAIM FOR RELIEF

### (Injunctive Relief under the Administrative Procedures Act – 5 U.S.C. § 706)

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

70.     Section 706 of the Administrative Procedures Act provides that courts "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise [contrary to] law; [or] contrary to constitutional right, power, privileged, or immunity; [or] without observance of procedure required by law; [or] unsupported by substantial evidence…." 5 U.S.C. § 706(2).

71.     Under federal common law, Plaintiff has a right to be free from intrusion into the attorney client privilege.

72.     The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the Government from depriving any person of life, liberty, or property without due process of law.  The Due Process Clause requires that administrative enforcement actions taken by the federal government be fundamentally fair and neither arbitrary nor capricious.  The Due Process Clause also prohibits outrageous governmental intrusion into another person's attorney-client relationship.

73.     Defendants deliberately concealed their possession, review, and use of the Privileged Report notwithstanding Defendants' knowledge that the Privileged Report contained confidential communications between ITU and its outside lawyers for the purposes of obtaining legal advice.  Defendants' possession, review, and use of the Privileged Report constitutes agency action for which there are no administrative remedies or appeal rights.

74.     Defendants announced their intention to withdraw ITU's SEVP certification based on information gained from their unauthorized and secretive possession, review, and use of the

Privileged Report, thereby leading to immediate declines in student enrollment and the potential revocation of ITU's ability to enroll nonimmigrant students.

75.     Defendants have violated the Due Process Clause by failing to promptly return the Privileged Report to ITU and by further possessing, concealing, reviewing, and using the Privileged Report in the adjudication of ITU's SEVP certification.

76.     Defendants' unauthorized possession, review, and use of the Privileged Report causes ongoing harm to ITU.

77.     Notwithstanding common law requirements and the obligations of government counsel to return and cease all use of the Privileged Report, Defendants have continued to possess, review, and use the Privileged Report in their adjudication of ITU's SEVP certification.

78.     ITU seeks a permanent injunction prohibiting Defendants from reviewing, disclosing, distributing, or relying upon the Privileged Report, or any information learned as a result of Defendants' unauthorized possession, review, and use of the Privileged Report, in the adjudication of ITU's SEVP certification.

## FOURTH CLAIM FOR RELIEF

**(Relief under the Mandamus and Venue Act and All Writs Act – 28 U.S.C. §§ 1361 & 1651)**

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

80.     Under federal common law and the Due Process Clause of the Fifth Amendment to the United States Constitution, Plaintiff has a clear and certain right to be free from intrusions into the attorney-client privilege.  Defendants have violated this right by their possession, review, and use of the Privileged Report.

81.     Defendants have a ministerial duty to refrain from reviewing, distributing, relying on, or disclosing the contents of attorney-client privileged communications.

82.     Plaintiff has no other adequate remedy because once additional staff within Defendants' offices become exposed to the contents of the Privileged Report, Plaintiff will suffer prejudice.

83.     ITU seeks a writ ordering Defendants to return or destroy all copies of the Privileged Report and other documents disclosing the contents of the Privileged Report in their possession, custody, or control and to refrain from review, disclosure, distribution or reliance upon the Privileged Report or any such documents in any further proceedings.

## PRAYER FOR RELIEF

WHEREFORE, International Technological University Foundation, Inc. prays that this Court grant the following relief:

a)     Declare that Defendants' possession, review, and, use of the Privileged Report are unauthorized by and contrary to the Constitution and laws of the United States;

b)     Declare that Defendants' possession, review, and, use of the Privileged Report are fundamentally unfair and arbitrary and capricious, and are unlawful under the APA;

c)     Enjoin Defendants from any further adjudication of ITU's certification to enroll nonimmigrant students, including pending administrative proceedings, so long as Defendants possess the Privileged Report and rely on the Privileged Report in said adjudication;

d)     Enjoin Defendants from reviewing, distributing or disclosing the contents of the Privileged Report, and any documents discussing the contents of the Privileged Report, to any person or entity;

e)     Enjoin Defendants from citing to, relying upon, or otherwise using information obtained from the Privileged Report, or information derived from information obtained from the Privileged Report, in any action or proceedings or to otherwise adjudicate any disputes, including, but not limited to, the adjudication of ITU's SEVP certification;

f)     Enjoin any person employed by DHS, ICE, or SEVP who has had any exposure to the Privileged Report from any involvement in the adjudication of ITU's SEVP certification;

1    g)    Award ITU reasonable costs and attorneys' fees; and

2    h)    Grant any other and further relief that this Court deems fit and proper.

3

4    Dated: October 11, 2018                    Respectfully submitted,

5

6                                              */s/ Joshua Hill.*

7                                              JOSHUA HILL JR. (SBN 250842)
                                               RACHEL J. MOROSKI (SBN 286805)
8                                              MORRISON & FOERSTER LLP
                                               425 Market Street
9                                              San Francisco, California  94105-2482
                                               Telephone: 415.268.7000
10                                             JHill@mofo.com
                                               RMoroski@mofo.com

11                                             JANIE SCHULMAN (SBN 130461)
                                               NILES PIERSON (SBN 307115)
12                                             MORRISON & FOERSTER LLP
                                               707 Wilshire Boulevard, Suite 6000
13                                             Los Angeles, California  94105-2482
                                               Telephone: 213.892.5200
14                                             JSchulman@ mofo.com
                                               NPierson@mofo.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. 18-CV-6228
sf-3912627

20