1   JOSHUA HILL JR. (SBN 250842)
    JHill@mofo.com
2   RACHEL J. MOROSKI (SBN 286805)
    RMoroski@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone: 415.268.7000
5   Facsimile: 415.268.7522

6   JANIE F. SCHULMAN (SBN 130461)
    JSchulman@mofo.com
7   NILES A. PIERSON (SBN 307115)
    NPierson@mofo.com
8   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
9   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
10  Facsimile: 213.892.5454

11
    Attorneys for Plaintiff
12  INTERNATIONAL TECHNOLOGICAL
    UNIVERSITY FOUNDATION, INC.
13
                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15
                         SAN JOSE DIVISION
16

| | |
|---|---|
| 17 INTERNATIONAL TECHNOLOGICAL<br>UNIVERSITY FOUNDATION, INC.,<br><br>18          Plaintiff,<br><br>19     v.<br><br>20 KIRSTJEN M. NIELSEN, in her official<br>capacity as Secretary of the Department of<br>21 Homeland Security, UNITED STATES OF<br>AMERICA, UNITED STATES<br>22 DEPARTMENT OF HOMELAND<br>SECURITY, UNITED STATES<br>23 IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, STUDENT AND<br>24 EXCHANGE VISITOR PROGRAM, and<br>DOES 1 through 10, inclusive,<br><br>25          Defendants.<br>26 | Case No.    18-CV-06228-EJD<br><br>Judge:  Hon. Edward J. Davila<br><br>**INTERNATIONAL<br>TECHNOLOGICAL UNIVERSITY<br>FOUNDATION, INC'S NOTICE OF<br>MOTION; MOTION FOR<br>PRELIMINARY INJUNCTION; AND<br>SUPPORTING MEMORANDUM OF<br>POINTS AND AUTHORITIES**<br><br>Hearing Date:  April 11, 2019<br>Hearing Judge: Hon. Edward J. Davila<br>Time:          9:00 a.m.<br><br>Date Action Filed:  October 11, 2018<br>Trial Date:        None set |

27

28

1

## NOTICE OF MOTION

2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that on April 11, 2019, at 9:00 a.m., in Courtroom 4 of the

4   Honorable Edward J. Davila at the United States District Court for the Northern District of

5   California, 280 S. 1st Street, San Jose, CA 95113, Plaintiff International Technological University

6   Foundation, Inc. ("ITU") shall and hereby does move the Court pursuant to Federal Rule of Civil

7   Procedure 65 for a preliminary injunction against Defendants Kirstjen Nielsen, in her official

8   capacity as Secretary of the Department of Homeland Security, United States of America, U.S.

9   Department of Homeland Security, U.S. Immigration and Customs Enforcement, Student and

10  Exchange Visitor Program, and their officers, agents, servants, employees, and attorneys and any

11  other persons who are in active concert or participation with them (collectively the "Enjoined

12  Parties") to:

13      (1)    prohibit the Enjoined Parties from reviewing the Privileged Report[1] and any other

14             documents discussing or derived from the contents of the Privileged Report;

15      (2)    prohibit the Enjoined Parties from distributing the Privileged Report and any other

16             documents discussing or derived from the contents of the Privileged Report;

17      (3)    prohibit the Enjoined Parties from disclosing the contents of the Privileged Report

18             to any person or entity;

19      (4)    prohibit the Enjoined Parties from citing to or otherwise relying upon the

20             Privileged Report and any other documents discussing the contents of the

21             Privileged Report to support any action or to adjudicate any alleged violations of

22             applicable regulations or laws; and

23      (5)    prohibit the Enjoined Parties from any further adjudication of ITU's certification

24             to enroll nonimmigrant students, including pending administrative proceedings,

25             during the pendency of this action.

26

_____

27      [1] The term "Privileged Report" refers to a memorandum, dated October 6, 2014, authored
by ITU's outside legal counsel, as further discussed in the memorandum of points and authorities
28  filed herewith.

1    This motion is based on this notice of motion and supporting memorandum of points and

2  authorities, the supporting declaration of Gregory O'Brien, and any other written or oral evidence

3  or argument as may be presented at or before the time this motion is taken under submission by

4  the Court.

5    Absent preliminary relief, ITU, its employees, and its students will suffer irreparable harm

6  before a trial on the merits in the form of the ongoing intrusion into ITU's attorney-client

7  privilege and taint of the administrative proceedings involving ITU that are now pending.

8  Dated: December 17, 2018             MORRISON & FOERSTER LLP

9

10

11             _____/s/ Joshua Hill_____
           JOSHUA HILL JR.
12           Attorneys for Plaintiff
           INTERNATIONAL TECHNOLOGICAL
13           UNIVERSITY FOUNDATION, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................... 3

   A.   ITU Is a Non-Profit WASC-Accredited University Offering Technology-Focused Graduate Programs. ................................... 3

   B.   SEVP Manages Schools and Nonimmigrant Students in the F Visa Classification. ............................................................................ 4

   C.   ITU Engages Outside Counsel to Prepare the Privileged Report. ......... 4

   D.   SEVP Improperly Relies on the Privileged Report After Obtaining it Without Authorization. ............................................. 5

   E.   ITU Makes a Final Effort to Alert the Government to Its Constitutional Obligations. ......................................................... 8

   F.   SEVP's Administrative Appeals Team Will Be Exposed to the Privileged Report. ..................................................................... 8

   G.   SEVP's Continued Possession, Use, and Reliance on the Privileged Report Will Continue to Harm ITU. .......................... 9

III. ARGUMENT .................................................................................... 10

   A.   ITU Is Likely to Succeed on the Merits. ......................................... 10

      1.   The Privileged Report Is Protected by the Attorney-Client Privilege, and There Has Been No Waiver. .......................... 11

      2.   ITU Is Likely to Prevail on Its Claims for Relief for Violations of the Fifth Amendment and the Administrative Procedures Act. ......... 13

   B.   ITU Will Suffer Irreparable Harm Without Preliminary Injunctive Relief. ......... 16

   C.   The Balance of Hardships Tips Heavily in ITU's Favor. ..................... 19

   D.   The Public Interest Favors Injunctive Relief. ................................... 20

   E.   ITU Should Not Be Required to Post Bond. ..................................... 21

IV.  CONCLUSION ................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Motorcyclist Ass'n v. Watt,*
   714 F.2d 962 (9th Cir. 1983)..................................................................................20

*Ariz. Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014)..........................................................................16, 17

*Barahona-Gomez v. Reno,*
   167 F.3d 1228 (9th Cir. 1999)...............................................................................21

*Blackwell Coll. of Bus. v. Attorney Gen.,*
   454 F.2d 928 (D.D.C. 1971) ......................................................................15 fn. 5, 17

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.,*
   188 F.R.D. 189 (S.D.N.Y. 1999) ...........................................................................12

*Clark v. Super. Ct.,*
   196 Cal. App. 4th 37 (2011) ........................................................................13 fn. 4

*Comet Techs. United States of Am. Inc. v. Beuerman,*
   No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ..........................19, 21

*Commodity Futures Trading Comm'n v. Weintraub,*
   471 U.S. 343 (1985).............................................................................................12

*Dist. of Columbia v. Grp. Ins. Admin.,*
   633 A.2d 2 (D.C. 1993) ...............................................................................11 fn. 3

*Doran v. Salem Inn Inc.,*
   422 U.S. 922 (1975).............................................................................................18

*E.E.O.C. v. Lutheran Soc. Servs.,*
   186 F.3d 959 (D.C. Cir. 1999) ..............................................................................19

*Gomez v. Vernon,*
   255 F.3d 1118 (9th Cir. 2001)................................................................................11

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.,*
   No. CV 08-1885-GHK, 2013 WL 2278122 (C.D. Cal. May 20, 2013)...........................15, 16

*Hernandez v. Tanninen,*
   604 F.3d 1095 (9th Cir. 2010).................................................................11 fn. 3, 16, 18

*hiQ Labs, Inc. v. LinkedIn Corp.,*
   273 F. Supp. 3d 1099 (N.D. Cal. 2017) .............................................................10, 18

*In re Grand Jury Proceedings*,
   604 F.2d 798 (3d Cir. 1979)................................................................12

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) ................................... 11 fn. 3, 18, 20

*In re Napster, Inc. Copyright Litig.*,
   479 F.3d 1078 (9th Cir. 2007)...........................................................13

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) ..........................................................20

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003)..............................................................21

*Lowry v. Soc. Sec. Admin.*,
   No. CV-99-1210-ST, 2000 WL 730412 (D. Or. June 7, 2000) .......... 11 fn. 3

*Maldonado v. N.J. ex rel. Admin. Office of Courts-Prob. Div.*,
   225 F.R.D. 120 (D.N.J. 2004).............................................................15

*Matter of the Search of 636 S. 66th*
   835 F. Supp. 1304, 1306 ....................................................................17

*Privitera v. Cal. Bd. of Med. Quality Assurance*,
   926 F.2d 890 (9th Cir. 1991)..............................................................18

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991)..............................................................18

*Richards v. Jain*,
   168 F. Supp. 2d 1195 (W.D. Wash. 2001).....................................15, 16

*Rochin v. California*,
   342 U.S. 165 (1952)............................................................................14

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001)..............................................................18

*U.S. EPA v. Envtl. Waste Control, Inc.*,
   917 F.2d 327 (7th Cir. 1990)..............................................................19

*United States v. Chevron Corp.*,
   No. C 94-1885, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996) ...............11, 12

*United States v. Neill*,
   952 F. Supp. 834 (D.D.C. 1997) ........................................................15

*United States v. Schell*,
   775 F.2d 559 (4th Cir. 1985), *cert. denied*, 475 U.S. 1098 (1986)...........14

*United States v. Segal,*
   313 F. Supp. 2d 774 (N.D. Ill. 2004) .................................................................16

*United States v. Stinson,*
   647 F.3d 1196 (9th Cir. 2011)..........................................................................14

*United States v. Voigt,*
   89 F.3d 1050 (3d Cir. 1996), *cert. denied*, 519 U.S. 1047 (1996) ...........................14

*United States v. White,*
   879 F.2d 1509 (7th Cir. 1989)..........................................................................16

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ..................................................................................1, 20

*Washington v. Trump,*
   847 F.3d 1151 (9th Cir. 2017) ..........................................................................10

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..........................................................................................10

**Statutes**

5 U.S.C. § 706(2) ..........................................................................................13

28 U.S.C. §§ 1361 & 1651 ..................................................................... 11 fn. 3

28 U.S.C. §§ 1361, 1651 & 2201 ..........................................................................10

**Other Authorities**

FIFTH AMENDMENT, U.S. CONSTITUTION ...............................................10, 13, 16

Fed. R. Evid. 1101(c) ..........................................................................................12

Fed. R. Civ. Proc. 65(c) ..........................................................................................21

8 C.F.R. § 214.4(f) ..........................................................................................7

*Disclosure of Privileged Material by a Third Party*, District of Columbia Ethics
   Op. 318 (2002) ................................................................................. 13 fn. 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff International Technological University Foundation, Inc. ("ITU") is a non-profit, fully accredited graduate-level university with a mission of sharing the technological and entrepreneurial insights of Silicon Valley with the international community.  ITU brings this motion for a preliminary injunction due to Defendants' disregard for the protections of the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  In particular, the United States Department of Homeland Security's Student and Exchange Visitor Program ("SEVP") is in knowing, continuing, and unauthorized possession of a privileged communication between ITU and its counsel; concealed its possession of the privileged material for more than a year; refused to return the document or reveal how it came into possession of the document; and relied on the document to attempt to revoke ITU's ability to admit nonimmigrant students, a death knell for the school.  SEVP's actions constitute the kind of "outrageous" conduct that the United States Supreme Court has long recognized violates Due Process.  This motion presents an essential, time-sensitive matter for ITU, as well as its students, faculty, and staff, because, without relief, the school will be irreparably harmed by the continued violation of its privileged communications and by the tainted administrative proceedings that have been initiated against the school.

By way of background, to enroll nonimmigrant foreign students, ITU requires certification by SEVP to issue Form I-20s, a prerequisite for applicants seeking an F-1 nonimmigrant student visa.  In July 2016, SEVP sent ITU a Notice of Intent to Withdraw ("Notice of Intent") ITU's certification to issue I-20s.  The Notice of Intent indicated that SEVP had obtained a report prepared by ITU's outside attorneys, which was intended for review by only ITU's staff (the "Privileged Report" or "Report"), and that SEVP intended to withdraw ITU's certification based on the information in the Report.  Upon learning that SEVP possessed this attorney-client privileged document, ITU demanded that SEVP immediately return or destroy it and that SEVP no longer review or rely upon the Privileged Report.  SEVP refused, claiming that the document

1    either was not privileged or that the privilege had been waived.  In subsequent exchanges, SEVP

2    provided no evidence or explanation of how a waiver purportedly occurred (presumably because

3    there was no such waiver).  SEVP has sought twice to revoke ITU's ability to enroll

4    nonimmigrant students in direct reliance on the contents of the Privileged Report.

5         This action is necessary because of the ongoing harm from SEVP's intrusion into ITU's

6    attorney-client communications; harm that is compounded by SEVP's ongoing efforts to turn

7    ITU's lawyers into witnesses against ITU.  As set forth below, SEVP's flagrant disregard of

8    ITU's attorney-client privilege more than satisfies the standard for issuing a preliminary

9    injunction:

10        *First*, ITU is likely to succeed on the merits on its claims for violation of the Due Process

11   Clause of the Fifth Amendment and the Administrative Procedures Act.  The Court need look no

12   further than SEVP's unapologetic embrace of the Privileged Report.  SEVP's possession, review,

13   and use of the Privileged Report have corrupted the administrative process and rise to a Due

14   Process violation.

15        *Second*, courts have long held that the violation of a party's attorney-client privilege alone

16   constitutes irreparable harm.  Without an order precluding SEVP from relying on the Privileged

17   Report, SEVP will be further exposed to the Report, and any decision to withdraw ITU's

18   certification will be tainted by knowledge of and reliance on its privileged contents.

19        *Third*, the balance of the hardships tips heavily in ITU's favor.  The hardship to ITU

20   includes continued prejudice from SEVP's exposure to the contents of the Privileged Report and,

21   ultimately, the likely shutdown of the school if SEVP is allowed to rely on the Report.  On the

22   other hand, the government will suffer little to no hardship if it is denied access to privileged

23   materials because it can, and should be required to, turn to other untainted sources to obtain

24   evidence – and, in fact, never should have been in the possession of the Privileged Report, from

25   the outset.

26        *Fourth*, the public interest favors strong protection of the attorney-client privilege.  Courts

27   have recognized this privilege in order to encourage full and frank conversations between

28   attorneys and their clients so as to facilitate compliance with the law.  Failure to protect the

1   privilege would undermine public confidence in the ability to disclose information to counsel,

2   potentially inhibiting efforts at voluntary compliance.

3       ITU respectfully urges the Court to act.  Absent preliminary injunctive relief through a

4   trial on the merits, Defendants' conduct will cause irreversible harm to ITU, its students, and its

5   staff.

6   **II.     STATEMENT OF FACTS**

7       **A.     ITU Is a Non-Profit WASC-Accredited University Offering
            Technology-Focused Graduate Programs.**

8

9       ITU is a non-profit university accredited by the Western Association of Schools and

10  Colleges Senior Commission for Universities and Colleges ("WASC") with a mission of sharing

11  the insight of Silicon Valley with the world at large.  (Declaration of Gregory O'Brien in Support

12  of ITU's Motion for Preliminary Injunction ("O'Brien Decl.") ¶¶ 2-3.)  ITU offers

13  technology-focused graduate programs in electrical engineering, computer science, software

14  engineering, computer engineering, digital arts, engineering management, cybersecurity, and

15  business administration, and it conducts independent high-technology research.  (*Id.* ¶ 2.)  ITU

16  seeks to prepare its students to become business and technical leaders in the tech industry.  (*Id.*)

17      A substantial majority of ITU's students are non-American citizens who have obtained

18  F-1 visas, which allow them to travel lawfully to the United States to pursue academic studies.

19  (O'Brien Decl. ¶ 4.)  Of the students registered for study at ITU in the fall of 2018, 86% are in the

20  United States on an F-1 visa.  (*Id.*)  Although the percentage fluctuates from year to year,

21  nonimmigrant students who have obtained F-1 visas comprised approximately 80% of ITU's

22  students during the 2016, 2017, and 2018 academic years.  (*Id.*)  Over the last two decades,

23  thousands of nonimmigrant students have graduated from ITU, some of whom have gone on to

24  work for prominent technology companies in Silicon Valley, while some have returned to their

25  home countries to apply what they learned at ITU.  (*Id.*)

26      Unlike many larger universities also accredited by WASC, ITU does not yet benefit from

27  an endowment to fund its academic programs.  (O'Brien Decl. ¶ 5.)  Instead, ITU is reliant on

28  revenue from student tuition and fees to fund the day-to-day operations of the school, such as

1   hiring faculty and staff, maintaining its campus in San Jose, enhancing student programs, and

2   partnering with community groups in Silicon Valley.  (*Id*.)  If ITU's SEVP certification is

3   withdrawn, and ITU loses its authority to issue Form I-20s to prospective nonimmigrant students,

4   ITU would not survive the corresponding loss of student tuition and fees and remain a functioning

5   academic institution.  (*Id*. ¶ 6.)

6         **B.     SEVP Manages Schools and Nonimmigrant Students in the F Visa**
          **Classification.**

7

8         On behalf of the Department of Homeland Security and Immigration and Customs

9   Enforcement, SEVP manages schools and nonimmigrant students in the F visa classification.

10  (O'Brien Decl. ¶ 7.)  F-classified students are nonimmigrants whose primary purpose is to

11  complete an academic course of study at a SEVP-certified school or program.  SEVP provides

12  approval and oversight to schools seeking to enroll nonimmigrant students and gives guidance to

13  both schools and students about the requirements for maintaining their status.  (*Id*.)  Schools

14  seeking certification to issue Form I-20 to prospective students must apply to SEVP by

15  submitting Form I-17.  (*Id*.)  ITU first received SEVP certification in 2003.  (*Id*. ¶ 8.)  As a result

16  of this certification, SEVP permitted ITU to issue Form I-20s "Certificate of Eligibility for

17  Student Status" documents to prospective nonimmigrant students.  ITU has been recertified

18  continuously from 2003 until the SEVP review giving rise to this litigation.  (*Id*.)

19        **C.     ITU Engages Outside Counsel to Prepare the Privileged Report.**

20        In 2014, ITU engaged the law firm of Nolan, Barton & Olmos LLP (the "Nolan Law

21  Firm") to investigate concerns arising out of ITU's response to a Request for Evidence received

22  from SEVP in January of that year.  (O'Brien Decl. ¶ 9.)  A Nolan Law Firm attorney, Daniel

23  Olmos, led this internal investigation, with support from his colleagues.  (*Id*.)  Upon completion

24  of the internal investigation in September 2014, Olmos authored a memorandum to ITU.  (*Id*.

25  ¶ 10.)  The final version of the memorandum is dated October 6, 2014 (the "Privileged Report").

26  (*Id*.)  The Privileged Report contains the Nolan Law Firm's thoughts and impressions as counsel

27  to ITU.  Moreover, the privileged character of the Privileged Report is apparent on the face of the

28  document.  (*Id*.)

During and after the internal investigation, the Nolan Law Firm advised ITU regarding its SEVP certification.  (O'Brien Decl. ¶ 9.)  While the Nolan Law Firm was investigating and advising ITU, both ITU and the Nolan Law Firm understood that the investigation, the Privileged Report, and the related legal advice involved confidential attorney-client communications subject to the protections of the attorney-client privilege.  (*Id.* ¶ 11, Ex. A.)  Both ITU and the Nolan Law Firm further understood that the Privileged Report constituted confidential attorney work product.  (*Id.*)  ITU never authorized the production of the Privileged Report to any third party.  (*Id.*)  At no time did the Nolan Law Firm have reason to believe or expect that ITU intended to waive attorney-client privilege or work product protections as to the Privileged Report.  (*Id.* Ex. A.)

**D.      SEVP Improperly Relies on the Privileged Report After Obtaining It Without Authorization.**

On July 26, 2016, SEVP served ITU with a Notice of Intent to Withdraw ITU's certification ("Notice of Intent").  (O'Brien Decl. ¶ 12.)  The Notice of Intent asserted that, "[o]n

1   January 13, 2015, SEVP received a copy of an October 6, 2014 report, commissioned by

2   International Technological University on May 2, 2014, summarizing an investigation 'regarding

3   ITU response to January 2014 Student and Exchange Visitor Program Request for Evidence,

4   Including History of Related Conduct.'"  (*Id.*)  Upon ITU's review of the Notice of Intent, it

5   became clear that SEVP's decision to withdraw ITU's certification was primarily based on

6   uncorroborated information SEVP had learned through its unauthorized possession and review of

7   the Privileged Report.  (*Id.*)  Prior to receipt of the Notice of Intent on July 26, 2016, ITU did not

8   know, and had no reason to know, that SEVP possessed a copy of the Privileged Report for the

9   prior year and a half.  (*Id.* ¶ 13.)  ITU promptly (1) asserted its attorney-client privilege, (2)

10  requested that SEVP return all copies of the Privileged Report, and (3) requested that SEVP not

11  rely upon it in support of any action by SEVP with respect to ITU's certification.  (*Id.*)  In

12  response, SEVP refused to return the Privileged Report and offered various and shifting

13  justifications for its unauthorized possession.  (*Id.* ¶¶ 14, 16, 18.)  Specifically:

14        a)      On August 26, 2016, ITU sent a letter addressed to Timothy Hicks, Chief of

15                    SEVP's Analysis and Operations Center, explaining that the Privileged Report was

16                    protected by the attorney-client privilege and that ITU had not authorized SEVP to

17                    receive a copy.  (*Id.* ¶ 13.)

18        b)      On September 6, 2016, ITU received a letter response from SEVP employee Beth

19                    Gibble denying that the Privileged Report was an attorney-client privileged

20                    document.  (*Id.* ¶ 14.)

21        c)      In response to Ms. Gibble's letter, on September 13, 2016, ITU sent another letter

22                    reiterating that the Privileged Report was privileged and requesting that SEVP

23                    provide the basis for its understanding that the privilege was waived.  (*Id.* ¶ 15.)

24        d)      On October 3, 2016, ITU received a further response from Ms. Gibble declining to

25                    provide any explanation of how or from whom SEVP received the Privileged

26                    Report.  (*Id.* ¶  16.)

27        e)      On October 21, 2016, in its third letter to SEVP, ITU further explained the basis

28                    for its understanding of the privileged nature of the Privileged Report and again

1           asked that SEVP provide support for its position that privilege had been waived.

2           (*Id.* ¶ 17.)

3       f)     On October 31, 2016, Lisa Glasoe, the Chief of SEVP's Analysis and Operations

4           Center, responded in a three-sentence letter reasserting the position that the

5           Privileged Report was not privileged and refusing to provide any further details.

6           (*Id.* ¶ 18.)

7           On September 26, 2016, after the multiple unsuccessful attempts to prompt SEVP to

8   return the Privileged Report, ITU formally responded to the Notice of Intent (the "Response to

9   the Notice of Intent"). (O'Brien Decl. ¶ 19.) Pursuant to 8 C.F.R. § 214.4(f), in the Response to

10   the Notice of Intent, ITU requested a mandatory interview prior to SEVP's final determination on

11   ITU's certification. (*Id.*) In the Response to the Notice of Intent, ITU again notified SEVP that it

12   was improperly relying on an attorney-client privileged communication as the basis for its

13   allegations and again asked SEVP to return the Privileged Report. (*Id.*)

14           Without responding to ITU's request for an interview, on July 18, 2017, SEVP served ITU

15   with a Withdrawal on Notice (the "2017 Withdrawal") in which SEVP announced that ITU's

16   certification was being withdrawn. (O'Brien Decl. ¶ 20.) Despite ITU's repeated efforts to claw

17   back the Privileged Report, SEVP explicitly based the withdrawal of certification on the

18   privileged, hearsay statements contained in the Privileged Report. (*Id.*) ITU appealed on several

19   grounds, including that no interview had been granted and that the 2017 Withdrawal improperly

20   relied on the Privileged Report. (*Id.* ¶ 21.)

21           On September 28, 2017, SEVP rescinded the 2017 Withdrawal and reopened the

22   proceedings because it had failed to provide the mandatory interview. (O'Brien Decl. ¶ 21.) A

23   telephonic interview was conducted on October 18, 2017, to allow ITU to address grounds for

24   withdrawal raised in the Notice of Intent. (*Id.* ¶ 22.) During the interview, SEVP failed to

25   present any of its own evidence, did not indicate whether it would continue to rely on the

26   Privileged Report, did not disclose how it obtained the Report, and failed to ask ITU a single

27   substantive question. (*Id.* ¶¶ 23-24.)

28

1    After granting ITU the perfunctory interview, SEVP issued a new Withdrawal on Notice,

2    on April 18, 2018, announcing again that it was withdrawing ITU's SEVP certification (the "2018

3    Withdrawal").  (O'Brien Decl. ¶ 25.)  SEVP doubled-down on the use of the Privileged Report as

4    a basis for withdrawing ITU's certification.  (*Id.*)  SEVP stated that ITU had waived the privilege,

5    but SEVP failed to provide any facts or evidence supporting that conclusion.  (*Id.* Ex. J.)  SEVP

6    summarily dismissed ITU's arguments regarding the Privileged Report and explicitly indicated

7    that SEVP was, in fact, relying on the contents of the Privileged Report in seeking to withdraw

8    ITU's certification.  (*Id.*)  To date, ITU still does not know how SEVP obtained the Privileged

9    Report, because SEVP has never provided any evidence regarding the circumstances of its

10    disclosure.  (*Id.* ¶ 26.)

11        **E.    ITU Makes a Final Effort to Alert the Government to Its Constitutional
                Obligations.**

12
            On August 6, 2018, ITU wrote yet another letter to SEVP to alert its staff to the continued

13
     violation of ITU's attorney-client privilege and its constitutional obligation to ensure that all

14
     copies of the Privileged Report be returned or destroyed.  (O'Brien Decl. ¶ 34.)  ITU copied

15
     ICE's Principal Legal Advisor Tracy Short, ICE's Associate Director of its Office of Professional

16
     Responsibility, Waldemar Rodriguez, and the United States Attorney's Office for the Northern

17
     District of California on the correspondence.  (*Id.*)  None of the recipients of the letter responded,

18
     and ITU was left with no choice but to initiate the current action.  (*Id.*)

19

20        **F.    SEVP's Administrative Appeals Team Will Be Exposed to the Privileged
                Report.**

21
            On July 16, 2018, ITU submitted its brief in support of the appeal of the 2018 Withdrawal.

22    (O'Brien Decl. ¶ 27.)  The SEVP appeals process does not require that SEVP or any of its

23    representatives file any sort of opposition brief, and it does not provide ITU with any further

24    opportunities to reply to any arguments presented by SEVP's staff.  (*Id.* ¶ 31.)  SEVP provides an

25    online appeal process tracking system.  (*Id.* ¶ 28.)  The first stage of the appeal is reviewed by the

26    officer issuing that decision.  (*Id.* ¶¶ 28-29, Ex. K.)  As of the date the Complaint in this case was

27    filed, the online tracking system showed that this first stage of review had been completed, and

28    the appeal sat "In Queue" to be picked up by an Administrative Appeals Team adjudicator.  (*Id.*

1   ¶ 32.)  At that time, ITU prepared to move for a Temporary Restraining Order ("TRO") because

2   an adjudicator could have taken on the case at any moment with nothing to prevent SEVP from

3   reviewing or relying on the information derived from the Privileged Report.  (*Id* ¶ 30.)  Moreover,

4   because the 2018 Withdrawal explicitly and expansively refers to, quotes from, and attaches the

5   Privileged Report, as soon as an adjudicator takes on the appeal, SEVP's Administrative Appeals

6   Team will be exposed to the contents of the Privileged Report.  (*Id.* ¶ 33.)  However, the parties

7   entered into a stipulation whereby Defendants agreed to stay any further review, processing, or

8   adjudication of ITU's certification to enroll nonimmigrant students, including, but not limited to,

9   any and all pending administrative proceedings related to the 2018 Withdrawal pending the

10  Court's ruling on this Motion.  (*See* Docket No. 22.)

11          **G.      SEVP's Continued Possession, Use, and Reliance on the Privileged Report
                      Will Continue to Harm ITU.[2]**

12

13          ITU is harmed by SEVP's continued intrusion into ITU's attorney-client privilege.

14  (O'Brien Decl. ¶ 35.)  ITU will be further harmed by SEVP's possession, use, and reliance on the

15  Privileged Report in the adjudication of ITU's certification.  (*Id.* ¶ 25.)  If any member of the

16  Administrative Appeals Team is permitted to review the case before an injunction is issued, she

17  will be exposed to the contents of the Privileged Report.  (*Id.* ¶ 33)  Just as the administrative

18  proceedings to date have been tainted by SEVP's possession of the Privileged Report, any further

19  adjudicative process will be prejudiced by knowledge of the contents of the Report.  (*Id.*)

20          ITU's current student enrollment is approximately 558 total students, down from over a

21  1,000 students just two years ago.  (O'Brien Decl. ¶ 4.)  Of the students registered for study at

22  ITU in the fall of 2018, 86% are in the United States on an F-1 visa.  Approximately 80% of

23  ITU's students have fallen into this category in the combined 2016, 2017, and 2018 academic

24  years.  (*Id.*)  Absent SEVP's efforts to revoke ITU's certification on the basis of the Privileged

25  ────────────────────

26          [2] As discussed above, after ITU filed the operative Complaint, the parties entered into a
    joint stipulation in which Defendants agreed to stay any further review, processing, or
27  adjudication of ITU's certification to enroll nonimmigrant students, including, but not limited to,
    any and all pending administrative proceedings related to the Withdrawal on Notice, dated
    April 17, 2018, until the Court enters an order on the instant Motion.

28

1  Report, foreign, nonimmigrant students requiring F-1 visas would continue to make up between

2  80% and 90% of ITU's student population for the foreseeable future.  (*Id*.)  Since the summer of

3  2017, when the 2017 Withdrawal was announced, ITU's enrollment has declined by 37%, from

4  883 students to 558 students.  (*Id.* ¶ 6.)  Because nonimmigrant students comprise over 80% of

5  ITU's student body, without the tuition revenue from enrolling these students, ITU would not

6  have sufficient funds to continue its operations, and it would be forced to shut down.  (*Id.* ¶¶ 5-6,

7  37.)  If ITU is forced to close, ITU's faculty and staff will lose their employment, ITU's current

8  students will have to halt their educations, and the value of the degrees ITU has issued to prior

9  students will be substantially diminished.  (*Id.* ¶¶ 37-40.)

10  **III.   ARGUMENT**

11       Preliminary injunctive relief requires a showing (1) that a plaintiff "is likely to succeed on

12  the merits," (2) that a plaintiff "is likely to suffer irreparable harm in the absence of preliminary

13  relief," (3) that "the balance of equities tips in [plaintiff's] favor," and (4) "that an injunction is in

14  the public interest."  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  "In evaluating

15  these factors, courts in the Ninth Circuit employ a 'sliding scale' approach, according to which

16  'the elements of the preliminary injunction test are balanced, so that a stronger showing of one

17  element may offset a weaker showing of another.  For example, a stronger showing of irreparable

18  harm to plaintiff might offset a lesser showing of likelihood of success on the merits.'"  *hiQ Labs,*

19  *Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1105 (N.D. Cal. 2017) (quoting *All. for the Wild*

20  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

21       **A.   ITU Is Likely to Succeed on the Merits.**

22       "It is the role of the judiciary to interpret the law, a duty that will sometimes require the

23  '[r]esolution of litigation challenging the constitutional authority of one of the three branches.'"

24  *Washington v. Trump*, 847 F.3d 1151, 1161-62 (9th Cir. 2017) (quoting *Zivotofsky ex rel.*

25  *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)).  SEVP's continued possession, review, and use

26  of the Privileged Report violates federal law regarding attorney-client privilege and violates the

27  Due Process Clause of the Fifth Amendment.  On that basis, ITU seeks declaratory and injunctive

28  relief pursuant to 28 U.S.C. §§ 1361, 1651 & 2201.  ITU is likely to succeed on the merits

because (1) the Privileged Report is protected by attorney-client privilege, and ITU has not waived the privilege, and (2) SEVP's unauthorized possession and use of the Privileged Report rise to the level of a Due Process violation.  Both the federal common law of privilege and constitutional law represent separate and independent reasons why the preliminary injunction should be granted.[3]

### 1.   The Privileged Report Is Protected by the Attorney-Client Privilege, and There Has Been No Waiver.

It is a bedrock principle of American law that confidential communications between an attorney and his or her client regarding legal advice are privileged and shielded from disclosure to third parties.  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) ("Federal common law recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential.").  Though the party asserting privilege has the ultimate burden of persuasion, after a prima facie showing of privilege, the party claiming waiver has a burden to produce some evidence of waiver.  *United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996) ("the party asserting the attorney-client privilege bears the initial burden of proving that the communication in question is privileged.  If the party seeking discovery asserts that the privilege which initially attached to the communication in question was subsequently waived, that party must bear the burden of *production* on the issue of waiver.") (citation omitted).  If no evidence of

---

[3] As a preliminary matter, pursuant to the Mandamus and Venue Act and the All Writs Act, federal district courts may provide emergency relief from pending administrative proceedings.  28 U.S.C. §§ 1361 & 1651; *see, e.g.*, *Dist. of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 15 (D.C. 1993) (holding that under the All Writs Act, all courts "created by congress" have "power to issue emergency relief pending the completion of administrative proceedings in cases where, in the first instance, review would lie" with them).  The Ninth Circuit has explained that "[m]andamus is appropriate to review discovery orders when particularly important interests are at stake."  *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) (citation omitted).  Relief in the nature of mandamus is available when (1) the claim is "clear and certain," (2) the duty is "ministerial and so plainly prescribed as to be free from doubt," and (3) no other adequate remedy is available.  *Lowry v. Soc. Sec. Admin.*, No. CV-99-1210-ST, 2000 WL 730412, at *20 (D. Or. June 7, 2000).  Intrusions into the attorney-client privilege are particularly appropriate for mandamus relief.  *See, e.g.*, *Hernandez*, 604 F.3d at 1099; *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761-63 (D.C. Cir. 2014).

1  waiver exists, then the privilege should be upheld.  *Id.*  Privileged communications are not

2  admissible as evidence at *any* stage in *any* proceeding.  Fed. R. Evid. 1101(c); *Bristol-Myers*

3  *Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 188 F.R.D. 189, 199-200 (S.D.N.Y. 1999) ("under the

4  law of this country a communication covered by attorney-client privilege is entitled to protection

5  regardless of whether the proceeding is civil, criminal or administrative, whether the question

6  arises in grand jury, in discovery or at trial, unless the client has waived the privilege . . ."); *see*

7  *also In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (holding that documents

8  prepared during EPA hearing were protected by work-product doctrine).  SEVP has sought to turn

9  this fundamental premise of law on its head through its open and flagrant violation of ITU's

10  rights.

11          The Privileged Report is a confidential communication on law firm letterhead from ITU's

12  outside counsel to then-current employees of ITU related to confidential legal advice and other

13  legal matters.  The document was addressed only to ITU's personnel, and ITU has never

14  authorized its disclosure to any third party.  SEVP concealed its possession of the Privileged

15  Report for over a year, and ITU had no way of knowing that SEVP was in possession of the

16  Report until it received the Notice of Intent.  Thereafter, ITU promptly asserted its privilege,

17  requested the return or destruction of all copies, and demanded that SEVP no longer rely on any

18  information obtained from the Privileged Report.  SEVP responded by claiming that the privilege

19  had been waived, but it has not produced a shred of evidence that any waiver took place.  ITU

20  knows that no such evidence could exist because ITU never authorized any such waiver.  *See*

21  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) ("[T]he power

22  to waive the corporate attorney-client privilege rests with the corporation's management . . .

23  [who] must exercise the privilege in a manner consistent with their fiduciary duty to act in the

24  best interests of the corporation and not of themselves as individuals.").  Given the undisputed

25  facts in this case, SEVP should immediately cease all review, distribution, disclosures, and

26  reliance upon the contents of the Privileged Report.[4]

27  

28          [4] Furthermore, under California law and pursuant to the ethical rules of the District of
Columbia, lawyers have a duty to refrain from reviewing materials that they have reason to know

1

2

**2.      ITU Is Likely to Prevail on Its Claims for Relief for Violations of the Fifth Amendment and the Administrative Procedures Act.**

3       SEVP's possession, review, and use of the Privileged Report have violated, and continue

4    to violate, ITU's Due Process rights.  This violation of ITU's constitutional rights forms the

5    predicate for claims for relief for violation of the Fifth Amendment, *see* FIFTH AMENDMENT, U.S.

6    CONSTITUTION, and the claim for violation of the APA, which states that this Court shall "hold

7    unlawful and set aside agency action . . . found to be . . . (B) contrary to constitutional right,

8    power, privilege, or immunity."  5 U.S.C. § 706(2).  Defendants' acts and omissions, taken

9    singularly or collectively, have resulted in a deprivation of property and liberty interests of ITU,

10   including the violation of confidentiality that should be afforded its communications with

11   counsel, past and future lost revenue from the decline in student enrollment, and the potential loss

12   of its certification to enroll nonimmigrant students, all of which are protected under the Due

13   Process Clause of the Fifth Amendment of the U.S. Constitution.  *See In re Napster, Inc.*

14   *Copyright Litig.*, 479 F.3d 1078, 1093 (9th Cir. 2007) (noting that

15   "[t]he attorney-client privilege protects fundamental liberty interests" and holding that due

16   process requires that "in a civil case the party resisting an order to disclose materials allegedly

17   protected by the attorney-client privilege must be given the opportunity to present evidence and

18   argument in support of its claim of privilege"), *abrogated on other grounds by Mohawk Indus.,*

19   *Inc. v. Carpenter*, 558 U.S. 100 (2009).

20       The Supreme Court has long recognized that "outrageous" government conduct can rise to

21   are privileged and may be disqualified from litigating against those whose privilege they violate.

22   *See Clark v. Super. Ct.*, 196 Cal. App. 4th 37, 53 (2011) ("'a lawyer who receives materials that
obviously appear to be subject to an attorney-client privilege [must (1)] refrain from examining
the materials any more than is essential to ascertain if the materials are privileged, and [(2)]

23   immediately notify the sender if he or she possesses material that appears to be privileged.'")
(quoting *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 656 (1999)) (emphasis

24   omitted); *Disclosure of Privileged Material by a Third Party*, District of Columbia Ethics Op.
318 (2002)("When counsel in an adversary proceeding receives a privileged document from a

25   client or other person that may have been stolen or taken without authorization from an opposing
party, Rule 1.15(b) requires the receiving counsel to refrain from reviewing and using the

26   document . . . Receiving counsel may violate the provisions of Rule 8.4(c) by reviewing and
using the document in an adversary proceeding under such circumstances and should either return

27   the document to opposing counsel or make inquiry of opposing counsel about its status prior to
determining what course of action to take.").

28

1    the level of a due process violation.  *Rochin v. California*, 342 U.S. 165 (1952); *United States v.*

2    *Schell*, 775 F.2d 559, 562-63, 566 (4th Cir. 1985) (defendants' due process rights were violated

3    when their attorney represented them during grand jury proceedings, then participated in their

4    prosecution in the same matter), *cert. denied*, 475 U.S. 1098 (1986).  The violation of a party's

5    attorney-client privilege will violate due process rights if the violation was caused by serious

6    governmental misconduct that is outrageous enough to shock the judicial conscience.

7    *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (district court should have conducted

8    evidentiary hearing on whether government engaged in outrageous conduct by using attorney as

9    an informant when she was allegedly representing defendant), *cert. denied*, 519 U.S. 1047 (1996).

10           Under the test articulated in *Voigt*, a party must establish three elements "to raise a

11   colorable claim of outrageousness pertaining to alleged governmental intrusion into the

12   attorney-client relationship":  "(1) the government's objective awareness of an ongoing, personal

13   attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into

14   that relationship; and (3) actual and substantial prejudice."  *Voigt*, 89 F.3d at 1067 (footnote and

15   citation omitted).  The Ninth Circuit has described outrageous conduct as that which "violates due

16   process in such a way that it is 'so grossly shocking and so outrageous as to violate the universal

17   sense of justice.'"  *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (quoting

18   *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)).

19           In this case, the government's conduct has been outrageous and offends all notions of

20   fundamental fairness.  First, SEVP was aware that the Nolan Law Firm had an attorney-client

21   relationship with ITU at the time it came into possession of the Privileged Report.  Indeed, it is

22   apparent on the face of the Privileged Report that it is an attorney-client communication

23   containing legal advice.  Moreover, ITU notified SEVP of the document's privileged nature in

24   *multiple* correspondences after ITU received the Notice of Intent and, thereby, first realized that

25   the government had been concealing its possession of the Privileged Report.  Second, SEVP

26   deliberately intruded into ITU's attorney-client relationship by relying on the Privileged Report as

27

28

1   evidence in support of the 2017 and 2018 Withdrawals, notwithstanding its privileged status.[5]  It

2   is evident from SEVP's own words, first in the Notice of Intent and then in the Withdrawals, that

3   SEVP fully intended to and, in fact, did turn ITU's own lawyers into witnesses *against* ITU.  A

4   unilateral decision on the part of the government to rely on improperly obtained privileged

5   material "constitutes a *per se* intentional intrusion" into the attorney-client relationship.

6   *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997).

7          Lastly, SEVP's possession, review, and use of the Privileged Report actually,

8   substantially, and irreversibly prejudiced ITU.  The ongoing intrusion into ITU's confidential

9   relationship with counsel constitutes prejudice.  *See, e.g.*, *Richards v. Jain*, 168 F. Supp. 2d 1195,

10  1207 (W.D. Wash. 2001) (disqualifying counsel and finding prejudice when privileged

11  documents were "relevant to the factual predicate" of claim against the privilege holder);

12  *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK (AGRx), 2013 WL

13  2278122, at *3 (C.D. Cal. May 20, 2013) (finding prejudice where "counsel not only used

14  privileged materials to craft their claims, but incorporated verbatim content from those materials

15  in the pleadings"); *Maldonado v. N.J. ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120,

16  140 (D.N.J. 2004) (holding that disclosure of a letter "meant to be used . . . for [a party's]

17  attorney . . . to prepare their defense, either in the [administrative] proceeding, or in a future civil

18  action" and that served as "a blue print to merits of Plaintiff's case, as well as Defendants'

19  defenses" constituted prejudice).  The Notice of Intent and both Withdrawals rely on the

20  Privileged Report to support the withdrawal, to ITU's significant detriment.  (O'Brien Decl. ¶¶

21  12, 20, 25, 33.)  The fact that the Privileged Report was attached in full to the 2018 Withdrawal is

22  evidence enough that it was relevant and substantially relied on by Defendants.  (*Id.*, Ex. J at p. 3

23  n.9 (referring to the Privileged Report as a "Summary of Investigation" and attaching it as

24  "Addendum A").  The *Kinetic Concepts* court condemned behavior as egregious as Defendants'

25

26          [5] While the focus of this proceeding is ITU's objection to SEVP's reliance on the
     Privileged Report, ITU also disputes the improper evidentiary weight that SEVP has given the

27   hearsay contained in Privileged Report.  *Blackwell Coll. of Bus. v. Attorney Gen.*, 454 F.2d 928,
     936 (D.D.C. 1971) (noting that the school had a right to challenge hearsay evidence).

28

1   conduct in this case where counsel continued to quote "in the pleadings portions of privileged

2   documents" even after having been put on notice of the privilege concerns.  *Kinetic Concepts,*

3   *Inc.*, 2013 WL 2278122, at *2.

4          Moreover, the facts of this case are readily distinguishable from cases where courts have

5   rejected claims of outrageous conduct based on an intrusion into the attorney-client relationship.

6   *E.g.*, *United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004) (finding no "evidence that

7   the Government deliberately read communications that it affirmatively knew were protected by

8   Defendants' attorney-client privilege"); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir.

9   1989) (finding that the privileged materials were not actually entered into evidence).  Unlike

10  those cases, here, SEVP *did* "deliberately read communications that it affirmatively knew were

11  protected by Defendants' attorney-client privilege" and *did* enter the Privileged Report into

12  evidence in the administrative proceedings.  For all of the reasons discussed above, SEVP's

13  unauthorized possession, review, and use of the Privileged Report is contrary to the

14  Fifth Amendment.  Thus, ITU is likely to succeed on the merits of its claims.

15          **B.      ITU Will Suffer Irreparable Harm Without Preliminary Injunctive Relief.**

16          The second factor for this Court's consideration is whether ITU will suffer irreparable

17  harm.  "Irreparable harm is traditionally defined as harm for which there is no adequate legal

18  remedy, such as an award of damages."  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068

19  (9th Cir. 2014).  ITU will suffer irreparable harm if the Court fails to grant this motion, for at

20  least two reasons: (1) the prolonged loss of confidentiality of its attorney-client communication

21  and (2) the ongoing tainted adjudicatory proceedings.  *See, e.g.*, *Richards*, 168 F. Supp. 2d at

22  1200 ("No matter through which ethical lens the possession and review of [privileged material] is

23  viewed, it is apparent that eleven months of access to privileged materials creates an appearance

24  of impropriety and so taints the proceedings that the harsh remedy of disqualification is

25  justified.")

26          First, courts have specifically held that the loss of confidentiality of attorney-client

27  privileged documents is an irreparable injury thus warranting the exercise of the court's equitable

28  powers.  *See, e.g.*, *Hernandez*, 604 F.3d at 1101 ("[A]n appeal after disclosure of the privileged

communication is an inadequate remedy for the irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications.") (quoting *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1491 (9th Cir. 1989)); *Matter of the Search of 636 S. 66th Terrace, Kan. City, Kan.*, 835 F. Supp. 1304, 1306 (D. Kan. 1993) ("If the privileged communications materials are permitted to remain in the hands of the government it is apparent to the court that any confidentiality of the communications involved may well be lost, and the movants will be effectively denied the protection of the privilege. Once lost, confidentiality cannot be restored. Movants have no other remedy, and their injury is irreparable."). Here, the record is clear that SEVP is in possession of the Privileged Report and *refuses* to return it. For that reason alone, ITU will suffer (and, indeed, continues to suffer) irreparable harm.

Second, the cascading harm from SEVP's possession, use, and reliance on the Privileged Report, including the inherent taint of the current administrative proceedings, the revocation of SEVP certification based on the Privileged Report, and the likely closure of the school, are irreparable and warrant preliminary relief. A school's "approved status" to admit nonimmigrant students is a "valuable asset in the nature of a license," *Blackwell Coll.*, 454 F.2d at 932, and, generally speaking, intangible injuries, such as precluding an individual from obtaining a license, are also considered irreparable. *Ariz. Dream Act Coal.*, 757 F.3d at 1068. ITU has no further means of limiting the damage that will be done if the Administrative Appeals Team is allowed to review and rely upon the Privileged Report. Unless SEVP is ordered to stop reviewing and relying upon the Privileged Report, SEVP's Administrative Appeals Team will be exposed to the Privileged Report's contents, further contaminating the administrative process.

In addition to being prejudiced by SEVP's improper reliance on the Privileged Report, if SEVP withdraws ITU's certification, the school will no longer be able to enroll sufficient students to continue its operations. As a result, all of the school's faculty and staff will lose gainful employment, all of the school's current students could be forced to halt their educations, and all of ITU's former students will see the value of their degrees substantially diminished. Courts have held that "damage to ongoing recruitment efforts and goodwill" are also intangible injuries that

1    are considered irreparable.  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,

2    944 F.2d 597, 603 (9th Cir. 1991); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d

3    832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill

4    certainly supports a finding of the possibility of irreparable harm").

5              As discussed above, of the students registered for study at ITU in the fall of 2018, 86% are

6    in the United States on an F-1 visa.  Approximately 80% of ITU's students have fallen into this

7    category in the combined 2016, 2017, and 2018 academic years.  Absent SEVP's efforts to

8    revoke ITU's certification, foreign, nonimmigrant students requiring F-1 visas would continue to

9    make up between 80% and 90% of ITU's student population for the foreseeable future.  Since the

10   summer of 2017, when the 2017 Withdrawal was announced, ITU's enrollment has declined by

11   37%, from 883 students to 558 students.  Because nonimmigrant students comprise over 80% of

12   ITU's student body and ITU is entirely funded by student tuition and fees, the revocation of its

13   ability to enroll nonimmigrant students will cause the school to default on its payment obligations

14   and lead to the closure of the school.  As courts have routinely found, "[t]he threat of being driven

15   out of business is sufficient to establish irreparable harm."  *hiQ Labs, Inc.*, 273 F. Supp. 3d at

16   1105 (quoting *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir.

17   1985)); *see also Doran v. Salem Inn  Inc.*, 422 U.S. 922, 932 (1975) (holding that "a

18   substantial loss of business and perhaps even bankruptcy" constitutes irreparable harm sufficient

19   to warrant interim relief).

20             Finally, that an appeal of the 2018 Withdrawal is currently pending is of no moment.

21   Intrusions into the attorney-client privilege are particularly appropriate for preliminary relief.

22   *See, e.g.*, *Hernandez*, 604 F.3d at 1099; *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761-63

23   (D.C. Cir. 2014); *supra* p. 11 n.4.  In fact, ITU has already been prejudiced by SEVP's possession

24   of the Privileged Report because SEVP relied on the Report to withdraw ITU's certification to

25   issue I-20s.  Moreover, per the parties' stipulation, the appeal currently remains in equipoise only

26   until a ruling on this motion, and, absent relief from this Court, an Administrative Appeals Team

27   adjudicator could pick up the file and be exposed to ITU's privileged information, thereby further

28   tainting the administrative proceedings.  *See Privitera v. Cal. Bd. of Med. Quality Assurance*,

926 F.2d 890, 897 (9th Cir. 1991) (holding that a court may enjoin a licensing hearing three months prior to the hearing date and reversing denial of a preliminary injunction because the lower court did not consider the hearing "immediate").

For all of these reasons, ITU has made a showing of irreparable harm.

### C.   The Balance of Hardships Tips Heavily in ITU's Favor.

SEVP's unlawful conduct is compounded by the fact that it has acted willfully, a fact that decisively tips the balance of equities in ITU's favor.  "It is an accepted equitable principle that a court does not have to balance the equities in a case where the defendant's conduct has been willful."  *U.S. EPA v. Envtl. Waste Control, Inc.*, 917 F.2d 327, 332 (7th Cir. 1990) (affirming grant of injunctive relief) (citing *Guam Scottish Rite Bodies v. Flores*, 486 F.2d 748, 749 (9th Cir. 1973)).  Here, SEVP knowingly and intentionally relied upon the contents of the Privileged Report despite ITU's multiple demands that it return or destroy the Report and cease relying upon it.  The Court therefore need not even reach the balance of hardships issue.

The injury that ITU may suffer at the hands of Defendants far outweighs any harm a preliminary injunction might cause Defendants.  *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (finding that the balance tipped in the plaintiff's favor because the plaintiff would be harmed by disclosure of confidential information though the defendant would not be harmed if restrained from disclosing that information).  As explained above, those injuries include the loss of confidentiality and prejudice to ITU in all further proceedings before SEVP.

On the other hand, SEVP will not suffer any meaningful hardship from having to respect ITU's attorney-client privilege.  As the D.C. Circuit has explained when the federal government sought to invade another party's attorney-client privilege:

> [R]ejecting the [Government's] waiver claim will not deny it access to any sources of possible evidence of [wrongdoing]. The [Government] can easily obtain whatever evidence of [wrongdoing] appears in the lawyers' witness summaries by interviewing the witnesses itself. The only information that the [Government] would be unable to obtain from other sources is [the attorney's] legal advice.

*E.E.O.C. v. Lutheran Soc. Servs.*, 186 F.3d 959, 966 (D.C. Cir. 1999).  As the circuit court also

elaborated in another case, undermining the attorney-client privilege would actually do significant

harm to the government in the long run:

> The government might gain some short-term benefit by obtaining the documents in
> this case, but the long-range consequences could be quite damaging. Weakening the
> ability of lawyers to represent clients at the pre-claim stage of anticipated litigation
> would inevitably reduce voluntary compliance with the law, produce more
> litigation, and increase the workload of government law-enforcement agencies.

*In re Sealed Case,* 146 F.3d 881, 887 (D.C. Cir. 1998).

Because, as courts agree, both ITU and the government will be harmed if the

attorney-client privilege is not properly protected, the balance of the hardships tips heavily in

favor of granting ITU's requests for a preliminary injunction.  On this basis alone, the Ninth

Circuit's "sliding scale" approach compels a ruling in favor of ITU.

### D.	The Public Interest Favors Injunctive Relief.

"[T]he public interest is a factor which courts must consider in any injunctive action in

which the public interest is affected."  *Am. Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 967

(9th Cir.1983) (citation omitted).  As the United States Supreme Court has explained, the

attorney-client privilege serves a public purpose because it "encourage[s] full and frank

communication between attorneys and their clients and thereby promote[s] broader public

interests in the observance of law and administration of justice."  *Upjohn Co.*, 449 U.S. at 389.

Upholding the privilege "recognizes that sound legal advice or advocacy serves public ends and

that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Id*.

As explained above, circuit courts have recognized that, without the privilege, there would be less

voluntary compliance with the law and more litigation would likely result.  *In re Sealed Case,*

146 F.3d at 887.  Here, ITU sought the advice of counsel to investigate its own concerns

regarding student records, an important inquiry.  The government's conduct – if allowed to stand

uncorrected – would chill the use of proactive internal investigations conducted to foster

compliance with applicable laws, regulations, and rules.  *Id.*; *see also Kellogg*, 756 F.3d at 760-61

(discussing the importance of confidential internal investigations in heavily regulated industries).

The public interest heavily supports strong protections for attorney-client privileged

1    communications.

2           **E.      ITU Should Not Be Required to Post Bond.**

3           Last, whether to impose a bond rests in the Court's sound discretion, and none should be

4    required in this instance.  Courts in the Ninth Circuit have imposed only a nominal bond, or

5    dispensed with the requirement altogether, where, as here, there is little or no likelihood of harm

6    to the party enjoined.  *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)

7    (recognizing that Rule 65(c) "invest[s] the district court with discretion as to the amount of

8    security required, if any"); Civil L.R. 65.1-1(a) (a bond is required only "[u]pon demand of any

9    party, where authorized by law and for good cause shown").  Indeed, a court "may dispense with

10   the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant

11   from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

12          Because this preliminary injunction seeks only to restrict SEVP's use of information that

13   it was not entitled to possess, SEVP is not likely to suffer any harm.  For example, in a recent

14   decision granting a temporary restraining order seeking to prohibit the use or distribution of trade

15   secrets, a Northern District court declined to require a bond because "there is no realistic

16   likelihood of harm to Defendant because Defendant was never entitled to disclose or use the

17   information he took from Plaintiff."  *Comet Techs.*, 2018 WL 1990226, at *6.  As that court put

18   it, "there is no likelihood of harm because the TRO would simply enjoin Defendant from doing

19   something Defendant never had a right to do in the first place."  *Id.*  Here, because the Privileged

20   Report was protected by the attorney-client privilege, SEVP was not entitled to rely on it, and the

21   injunctive relief sought seeks only to prevent it from doing something it never had the right to do

22   in the first place.  Even to the extent that resolution of this dispute may cause a delay in SEVP's

23   processing of ITU's appeal, there would be no harm to SEVP.  Indeed, Defendants sought and the

24   parties jointly stipulated to a stay of proceedings, including a stay of any further review or

25   distribution of the Privileged Report by Defendants for more than five months.  There is no basis

26   for concluding that SEVP would now incur any additional costs by awaiting this Court's ultimate

27   determination.

28

IV.     **CONCLUSION**

For the foregoing reasons, a preliminary injunction should issue to protect ITU from irreparable harm through a trial on the merits.

Dated: December 17, 2018                    MORRISON & FOERSTER LLP


_____*/s/ Joshua Hill*_____
JOSHUA HILL JR.
Attorneys for Plaintiff
INTERNATIONAL TECHNOLOGICAL
UNIVERSITY FOUNDATION, INC.