JOSHUA HILL JR. (SBN 250842)
JHill@mofo.com
RACHEL J. MOROSKI (SBN 286805)
RMoroski@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JANIE F. SCHULMAN (SBN 130461)
JSchulman@mofo.com
NILES A. PIERSON (SBN 307115)
NPierson@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION, INC.,

Plaintiff,

v.

KIRSTJEN M. NIELSEN, in her official capacity as Secretary of the Department of Homeland Security, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, STUDENT AND EXCHANGE VISITOR PROGRAM, and DOES 1 through 10, inclusive,

Defendants.

Case No. 18-CV-06228-EJD

Judge: Hon. Edward J. Davila

**DECLARATION OF GREGORY O'BRIEN IN SUPPORT OF INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Date Action Filed: October 11, 2018

I, Gregory M. St. L. O'Brien, hereby declare as follows:

1. I am the President of International Technological University Foundation, Inc., a non-profit organization ("ITU"), and a voting member of the Board of Trustees of ITU. I have been President of ITU since February 12, 2015. I submit this Supplemental Declaration in support of ITU's Motion for Preliminary Injunction. I make this declaration of my own personal knowledge and information provided to me. If called to testify, I could and would testify to the matters set forth herein.

## I. INTERNATIONAL TECHNOLOGICAL UNIVERSITY

2. ITU is a private, non-profit university in San Jose, California. ITU offers technology-focused graduate programs in electrical engineering, computer science, software engineering, computer engineering, digital arts, engineering management, cybersecurity, and business administration and conducts independent technology-focused research. ITU seeks to prepare its graduate students to become business and technical leaders in industry around the world, including in Silicon Valley. As a non-profit, ITU must invest its tuition dollars in providing quality educational and career-building experiences, not distributing them among investors. The members of ITU's Board of Trustees are volunteers who serve without compensation.

3. In February 2013, ITU earned accreditation by the Western Association of Schools and Colleges Senior Commission for Universities and Colleges ("WASC"). At the time, I served as a consultant for ITU on accreditation matters and spearheaded ITU's WASC accreditation process. WASC is the accreditation commission that accredits Stanford University, the University of California, University of Southern California, Santa Clara University, University of Hawaii, and all major, largely non-profit doctoral granting universities in California, Hawaii, and the U.S. Pacific Islands.

4. ITU's current student enrollment is approximately 558 total students, down from over a 1,000 students just two years ago. The latest data available to me shows that, of the students registered for study at ITU in the Fall of 2018, 86% are in the United States on an F-1 visa. Approximately 80% of ITU's students have fallen into this category every year since the

first full academic year I served as President. Absent SEVP's efforts to revoke ITU's certification, I anticipate that foreign, nonimmigrant students requiring F-1 visas will continue to make up between 80% and 90% of ITU's student population for the foreseeable future. Over the last two decades, thousands of nonimmigrant students have graduated from ITU, some of whom have gone on to work for some of the most prominent technology companies in Silicon Valley, while some have returned to their home countries to apply what they learned at ITU.

5. ITU has no endowment and is 100% funded by tuition and fees. The school depends on student tuition and fees to fund the day-to-day operations of the school, such as hiring faculty and staff, maintaining its campus in San Jose, enhancing student programs, and partnering with community groups in Silicon Valley. The prior administration leased a new campus in San Jose, California for which it pays about $1.9 million per year.

6. If ITU loses the ability to enroll students with F-1 visas, I do not believe that ITU could survive the loss of over 80% of its student body and the corresponding loss of a critical mass of students for robust classroom discourse and student tuition and fees, while remaining a functioning academic institution. By way of example, since the summer of 2017, when the first Withdrawal was announced (discussed below), ITU's enrollment has declined by 37%, from 883 students to 558 students. If SEVP's efforts to withdraw ITU's certification are permitted, I believe that ITU would very quickly default on its lease. In addition, ITU would no longer be able to afford the salaries of critical faculty and staff. Based on my understanding of the WASC accreditation process, ITU would almost certainly no longer be able to meet WASC requirements with the deep cuts to personnel that would be necessary. All of these factors would force ITU to close. This would be harmful to students, graduates, faculty, staff, and their families.

## II. THE STUDENT AND EXCHANGE VISITOR PROGRAM

7. On behalf of the Department of Homeland Security and Immigration and Customs Enforcement, the Student and Exchange Visitor Program, SEVP, manages schools and nonimmigrant students in the F visa classification. SEVP provides approval and oversight to schools authorized to enroll nonimmigrant students and gives guidance to both schools and students about the requirements for maintaining their status. Schools apply for SEVP

certification by submitting Form I-17, which must be kept up to date in order to ensure that the form reflects the institution's current operating status.

8. ITU first received SEVP certification in 2003. As a result of this certification, SEVP permitted ITU to issue Form I-20 "Certificate of Eligibility for Student Status" documents to prospective nonimmigrant students. SEVP recertified ITU for authorization to admit nonimmigrant students in 2005, 2007, 2009, and 2011. Form I-20 is a necessary prerequisite to obtaining an F-1 visa. Without the ability to issue Form I-20, ITU would not be able to enroll students with F-1 visas.

## III. THE PRIVILEGED REPORT

9. I am informed and believe that in 2014, ITU's prior administration engaged the law firm of Nolan, Armstrong & Barton, LLP to investigate ITU's submissions in response to a Request for Evidence from SEVP in January 2014 and provide legal advice related to the Request for Evidence and ITU's SEVP certification. The investigation was led by attorney Daniel Olmos along with his fellow attorney Tom Nolan. A true and correct copy of the Declaration of Daniel Olmos, originally submitted by ITU to SEVP in August 2017, is attached as **Exhibit A**.

10. At the conclusion of his investigation, Mr. Olmos drafted a confidential memorandum addressed to Rebecca Choi, then the Chief Operating Officer of ITU, and Mikel Duffy, then the Associate Director of Innovation at ITU advising ITU regarding the potential legal consequences of its record keeping practices (the "Privileged Report"). A true and correct copy of the Privileged Report (redacted) is attached as **Exhibit B**.

11. I have spoken with the school's Board of Trustees, faculty, and staff, and based on the information obtained from them, I believe that at all relevant times, ITU understood that the investigation, the Privileged Report, and the related legal advice involved confidential attorney-client communications subject to the protections of the attorney-client privilege and attorney-work product. Based on my communications with these individuals, I also believe that no person with authority to waive ITU's privilege ever authorized the disclosure of the Privileged Report to any person or entity.

12. On July 26, 2016, SEVP served ITU with a Notice of Intent to Withdraw ITU's certification ("Notice of Intent"). The Notice of Intent asserted that, "[o]n January 13, 2015, SEVP received a copy of an October 6, 2014 report commissioned by International Technological University on May 2, 2014 summarizing an investigation 'regarding ITU response to January 2014 Student and Exchange Visitor Program Request for Evidence, Including History of Related Conduct.'" The reference to the October 6, 2014 report is clearly a reference to the Privileged Report. The Notice of Intent indicates that SEVP's decision to withdraw ITU's certification was primarily based on information learned from the Privileged Report. The Notice of Intent did not refer to any evidence or investigation by SEVP corroborating the information contained in the Privileged Report.

13. Prior to receipt of the Notice of Intent, no person with authority to waive ITU's privilege was aware that SEVP was in possession of the Privileged Report. Upon learning that SEVP possessed a copy of the Privileged Report, I authorized counsel for ITU to deliver a letter to SEVP on August 26, 2016 advising it that the Privileged Report was protected by the attorney-client privilege "in its entirety" and requesting that SEVP return all copies of the Privileged Report and not rely on its contents. A true and correct copy of ITU's August 26, 2016 letter to SEVP is attached as **Exhibit C**.

14. On September 6, 2016 the SEVP responded to ITU's August 26, 2016 letter asserting that the privilege had been waived by an intentional disclosure. SEVP's response failed to identify who disclosed the Privileged Report or what authority that individual had to waive ITU's privilege. SEVP refused to return all copies of the Privileged Report and continued to rely on the Privileged Report to support the Notice of Intent. A true and correct copy of SEVP's September 6, 2016 response to ITU is attached as **Exhibit D**.

15. On September 13, 2016, in a further letter to SEVP, ITU, through counsel, reiterated the privileged character of the Privileged Report and asked that SEVP provide support for its position that privilege had been waived, specifically by identifying who disclosed the Privileged Report and the basis of their authority to waive ITU's privilege. A true and correct copy of ITU's September 13, 2016 letter to SEVP is attached as **Exhibit E**.

16. On October 3, 2016, SEVP responded to ITU's September 13, 2016 letter. This response stated that "[g]iven the continuing nature of SEVP's enforcement action and SEVP's commitment to ensuring the fullest protection of whistleblower laws, SEVP will not provide the requested information." The October 3, 2016 letter did not even state whether the newly alleged whistleblower was currently employed by ITU. This letter confirmed that, by acting as whistleblower, whoever disclosed the Privileged Report did so without authority. A true and correct copy of SEVP's October 3, 2016 letter to ITU is attached as **Exhibit F**.

17. On October 21, 2016, in a third letter to SEVP, ITU, through counsel, further explained the basis for its understanding of the privileged nature of the Privileged Report and again asked that SEVP provide support for its position that privilege had been waived. A true and correct copy of ITU's October 21, 2016 letter to SEVP is attached as **Exhibit G**.

18. On October 31, 2016, SEVP responded to ITU's October 21, 2016 letter, SEVP asserted that "SEVP maintains that the document is not privileged and, even if it were, the privilege was not adequately protected and was waived. Moreover given the continuing nature of SVEP's enforcement action and the potential applicability of whistleblower protections, SEVP is unable to provide details concerning the disclosure of the 2014 report." The letter provided no further support for the contentions either that the Privileged Report was not privileged or that the privilege had been waived. A true and correct copy of SEVP's October 31, 2016 letter to ITU is attached as **Exhibit H**.

## IV. WITHDRAWAL OF ITU'S SEVP CERTIFICATION

19. On September 26, 2016, ITU formally responded to the Notice of Intent (the "Response to the Notice of Intent"). Pursuant to 8 C.F.R. § 214.4(f), in the Response to the Notice of Intent, ITU requested a mandatory interview prior to SEVP's final determination on ITU's certification. In the Response to the Notice of Intent, ITU again notified SEVP that it was improperly relying on an attorney-client privileged communication as the basis for its allegations and renewed its request that the Privileged Report be returned.

20. Without responding to ITU's request for an interview, on July 18, 2017, SEVP

served ITU with a Withdrawal on Notice (the "2017 Withdrawal") in which SEVP announced that ITU's certification was being withdrawn. Though the Notice of Intent had identified three issues upon which withdrawal might be based, the 2017 identified only two such issues, both of which identified the Privileged Report as supporting evidence. The Privileged Report was not only cited and quoted throughout the 2017 Withdrawal, the entire Report was attached as Addendum A.

21. ITU appealed on several grounds, including that no interview had been granted and that the 2017 Withdrawal improperly relied on the Privileged Report. On September 28, 2017, SEVP reopened proceedings on its own Motion by Service Officer pursuant to 8 CFR § 103.5(a)(5). SEVP granted ITU's request for an interview. A true and correct copy of SEVP's Motion by Service Officer is attached as **Exhibit I**.

22. A telephonic interview took place on October 18, 2017 beginning at 10:00 a.m. Pacific Standard Time and ending at approximately 1:00 p.m. that day. Attorney Amber Napolitano led the interview on behalf of SEVP. Investigator Jason Kanno was also present on behalf of SEVP. Provost Barry Ryan, General Counsel David Johnson, Outside Counsel Joshua Hill, and I were present on behalf of ITU.

23. During the course of interview, ITU provided information regarding its significant reforms and improvements since the time of the conduct alleged in the Notice of Intent. SEVP's representatives failed to present any evidence or call any witnesses and failed to ask any substantive questions of ITU. At no point during the interview did SEVP present any evidence or testimony authenticating or corroborating the memorandum from Daniel Olmos of Nolan, Armstrong & Barton to ITU (the "Privileged Report"), nor did SEVP disclose from whom it received the report.

24. SEVP's representatives also failed to indicate at that time what their final determination might be, whether ITU would be permitted or required to provide additional documentation to verify the evidence presented during the interview or in the Notice of Intent response or in support of the appeal of 2017 Withdrawal, or whether SEVP would conduct any further investigation. To date, ITU has not received a summary of the information provided

during the interview, as required by 8 CFR § 214.4(f)(2). After the interview, ITU received no further communications from SEVP for 6 months, until it received a second Withdrawal, discussed below.

25. After the telephonic interview, SEVP issued a new Withdrawal on Notice, on April 18, 2018, announcing again that it was withdrawing ITU's SEVP certification (the "2018 Withdrawal"). The 2018 Withdrawal repeats the same bases for withdrawal as the 2017 Withdrawal and relies upon the same evidence, specifically, the Privileged Report. The 2018 Withdrawal continues to reject ITU's assertion of privilege and fails to describe any facts or circumstances that would support a claim of waiver. The 2018 Withdrawal repeatedly cites to and quotes from the Privileged Report, and it attaches the Privileged Report as Addendum A. A true and correct copy of the 2018 Withdrawal (redacted) is attached as **Exhibit J**.

26. Because SEVP has refused to provide any information about how it obtained the Privileged Report, to date ITU still does not know how the Privileged Report was disclosed to SEVP.

**V. HARM TO ITU**

27. ITU submitted notice of its appeal of the 2018 Withdrawal on May 5, 2018. ITU submitted a brief in support of that appeal on July 16, 2018. Among other concerns raised by the appeal, ITU continued to assert that the 2018 Withdrawal improperly relied upon the privileged report.

28. SEVP provides an overview of its appeals process in a document posted online entitled "General Appeals Process Information." A true and correct copy of the "General Appeals Process Information" sheet is attached as **Exhibit K**.

29. As the General Appeal Process Information sheet explains, the appeal process commences after receipt of the appeal and supporting evidence and proceeds through 8 steps. In the first step, the official who made the unfavorable decision reviews the appeal and decides whether favorable action is warranted. If favorable action is warranted, the school will be contacted and the case will no longer be tracked on SEVP's online Appeal Status Tracker.

30. If the official who made the unfavorable decision does not determine that favorable action is warranted, the official forwards the appeal and the record to the Administrative Appeals Team ("AAT"). In the second step of the appeals process, the case sits "in queue" while it waits for an AAT Adjudicator to take it on. In steps 3 through 8 of the appeals process, an adjudicator reviews the appeal, drafts an initial decision, submits that decision for review by ICE, reviews any comments from ICE, resubmits the decision to a Final Appeals Authority, addresses any comments by that authority, and then the review is finalized. The General Appeals Process Information sheet indicates that the time to complete steps 3 through 8 is approximately 60 days.

31. After submitting its initial appeal brief and evidence, the appellant has no further opportunity for input into the appeals process. No step in the appeals process requires the officer who made the initial decision, or anyone else, to submit any evidence or argument opposing the appeal. The appellant will not even be informed of any such arguments if they are made, and the appellant is given no opportunity to reply.

32. As of the date of the filing of ITU's Complaint in this case, the status of ITU's appeal to the AAT was in Step 2 "In Queue." This indicates that the official who made the unfavorable decision has already reviewed the appeal and did not find favorable action was warranted. A true and correct copy of a print out of the online Appeal Status Tracker showing the status of ITU's appeal at the time the Complaint was filed is attached as **Exhibit L**.

33. Because the 2018 Withdrawal explicitly references and quotes from the Privileged Report and attached the full report as Addendum A, once the appeal moves beyond Step 2, the AAT will be exposed to the contents of the privileged report.

34. On August 6, 2018, ITU alerted SEVP to the continued violation of ITU's attorney-client privilege and the ethical obligation to ensure that all copies of the Privileged Report were returned or destroyed. ITU copied ICE's Principal Legal Advisor Tracy Short, ICE's Associate Director of its Office of Professional Responsibility, and United States Attorney's Office for the Northern District of California on the correspondence. None of the

recipients responded to the correspondence. A true and correct copy of ITU's August 6, 2018 letter to SEVP (excluding exhibits) is attached as **Exhibit M.**

35. The government's lawyers, investigative agents, and staff have been in continuous possession of the Privileged Report since 2015. This intrusion into ITU's attorney-client privilege constitutes an ongoing harm to ITU.

36. We have no ability to know whether additional AAT adjudicators have been exposed to the Privileged Report. However, given the hearsay allegations found within the Privileged Report, SEVP will likely uphold the Withdrawal of ITU's certification on the basis of it, and ITU will no longer be able to issue Forms I-20. Without the ability to issue Forms I-20, ITU will no longer be able to enroll nonimmigrant foreign students who obtain F-1 Visas.

37. Because the large majority of ITU's students require F-1 Visas in order to study in the United States, without the ability to enroll these students, ITU will not have sufficient financial resources to continue its operations. ITU will quickly default on its lease of its facilities and would not be able to employ the majority of its staff. The loss of the facilities and staff would render ITU no longer eligible for accreditation. In sum, the combination of these factors would require a full closure of the school.

38. Of course, if ITU is forced to close then all of its current employees will lose the income they receive from ITU.

39. Moreover, if ITU is forced to close, then all of ITU's current students may no longer be able to complete their degree programs at ITU. Though some of these students may be able to transfer to other schools, there is no guarantee that they will be able to attend a school with the same quality or type of programs offered by ITU, a WASC-accredited school. As a matter of policy, many graduate schools refuse to accept more than a limited number of transfer credits—usually, the equivalent of one academic term—from other institutions. This has the potential to make transferring financially disastrous, because students who have completed credits in excess of the cap will not be able to apply those credits at their new school and will have to pay more in obtain the required number of credits for graduation from the institution to which they transfer.

40. Furthermore, the value of the degrees held by ITU's alumni will be greatly diminished because, generally speaking, a degree from a school that is no longer in operation is not as highly esteemed as a degree from a school that is currently operating, and employers may have difficulty verifying the validity of the degrees.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of December, 2018, in San Jose, California.

GREGORY M. ST. L. O'BRIEN