1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   SARA WINSLOW (DCBN 457643)
3  Chief, Civil Division

4  REBECCA A. FALK (CABN 226798)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7022
7       FAX: (415) 436-6745
        Rebecca.Falk@usdoj.gov
8
   Attorneys for Federal Defendants
9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN JOSE DIVISION
12

13  INTERNATIONAL TECHNOLOGICAL           )  CASE NO.      18-CV-06228 EJD
    UNIVERSITY FOUNDATION, INC.,          )
14                                        )  MEMORANDUM IN OPPOSITION TO
            Plaintiff,                    )  PLAINTIFF'S MOTION FOR A PRELIMINARY
15                                        )  INJUNCTION
            V.                            )
16                                        )  Date:  June 13, 2019
    KIRSTJEN M. NIELSEN, in her official  )  Time:  9 a.m.
17  capacity as SECRETARY OF THE          )
    DEPARTMENT OF HOMELAND               )
18  SECURITY, UNITED STATES OF            )
    AMERICA, UNITED STATES                )
19  DEPARTMENT OF HOMELAND               )
    SECURITY, UNITED STATES               )
20  IMMIGRATION AND CUSTOMS               )
    ENFORCEMENT, STUDENT EXCHANGE         )
21  AND VISITOR PROGRAM, and DOES 1       )
    THROUGH 10, INCLUSIVE,                )
22                                        )
            Defendants.                   )
23  _____  )

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………………iii

I.    INTRODUCTION ...................................................................................................................1

II.   BACKGROUND ....................................................................................................................2

      A.    Statutory and Regulatory Framework ........................................................................2

            1.    Nonimmigrant Student Status ..........................................................................2

            2.    SEVP Certification and Withdrawal of Certification .......................................2

      B.    SEVP's Administrative Action to Withdraw ITU's Certification ...........................4

            1.    SEVP's 2010 Out-Of-Cycle Review of ITU .................................................4

            2.    Nearly Five Years Later, SEVP Received The Nolan Memorandum
                  Via An Unsolicited Communication from a Whistleblower.............................4

            3.    SEVP's 2016 Notice of Intent to Withdraw ITU's Certification...................5

            4.    ITU's Privilege Assertion and Response to the NOIW ...................................5

            5.    SEVP's 2017 Withdrawal on Notice ...............................................................6

            6.    SEVP's 2018 Withdrawal on Notice ...............................................................6

      C.    ITU's Complaint ........................................................................................................7

      D.    The Parties' Stipulation to Stay the Administrative Proceeding ...............................7

      E.    The Federal Defendants' Motion to Dismiss ............................................................7

      F.    ITU's PI Motion .......................................................................................................8

III.  LEGAL STANDARD.............................................................................................................8

IV.   ARGUMENT ..........................................................................................................................9

      A.    ITU's Request for a Preliminary Injunction Should Be Denied Because It Has
            Failed to Establish a Likelihood of Success On the Merits Nor Can It
            Demonstrate That There Are Serious Questions Going to the Merits. .....................9

            1.    ITU Will Not Succeed On Its Due Process Claim Alleging That the
                  Federal Defendants Breached The Attorney-Client Privilege. ........................9

                  (i)    ITU has failed to establish a likelihood of success on a
                         substantive due process claim. ..............................................................10

                         (a)    ITU has not alleged a substantive due process violation. ............10

                         (b)    ITU's allegations do not shock the conscience.............................12

(ii)    ITU has failed to establish a likelihood of success on a procedural due process claim.................................................13

2.    ITU Will Not Succeed On Its APA Claims. ...........................................14

(i)    ITU has failed to identify any final agency action subject to judicial review........................................................................14

3.    ITU's Motion Makes No Argument That It Is Likely To Succeed on the Merits of Its Mandamus and Venue Act and All Writs Act Claim, Nor Has It Established that the All Writs Act Provides Jurisdiction for an Injunction. ...................................................................................18

4.    To The Extent The Court Determines It Is Proper To Decide On the Merits ITU's Claim That the Nolan Memorandum is Privileged, The Federal Defendants Respectfully Request *In Camera* Review............................19

B.    ITU Has Not Established Irreparable Harm.......................................................21

C.    The Balance of Equities and The Public Interest Weigh Strongly Against Entry of a Preliminary Injunction. .......................................................................24

V.    CONCLUSION..................................................................................................25

1

## TABLE OF AUTHORITIES

2

Cases                                                                                          Page(s)

3
4

*Albright v. Oliver*,
510 U.S. 266 (1994).............................................................................................................. 12

5

*Aminoil U.S.A., Inc. v. Cal. State Water Res. Control Bd.*,
674 F.2d 1227 (9th Cir. 1982) ............................................................................................ 16

6
7

*Ariz. Dream Act Coal. v. Brewer*,
855 F.3d 957 (9th Cir. 2017) .............................................................................................. 21

8

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972).............................................................................................................. 14

9
10

*Beckler v. Superior Court*,
568 F.2d 661 (9th Cir. 1978) .............................................................................................. 10

11

*Bennett v. Spear*,
520 U.S. 154 (1997).............................................................................................................. 15

12
13

*Blackwell Coll. of Bus. v. Attorney Gen.*,
454 F.2d 928 (D.D.C. 1971) ................................................................................................ 11

14

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2006) .............................................................................................. 10

15
16

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) .............................................................................................. 23

17

*Chavez v. Martinez*,
538 U.S. 760 (2003).............................................................................................................. 10

18
19

*City of San Diego v. Whitman*,
242 F.3d 1097 (9th Cir. 2011) ...................................................................................... 15, 16

20

*Clutchette v. Rushen*,
770 F.2d 1469 (9th Cir. 1985) ..................................................................................... passim

21
22

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992).............................................................................................................. 12

23

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................................................................................................... 10, 12

24
25

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................................................ 8

26

*Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*,
774 F.2d 1371 (9th Cir. 1985) ............................................................................................ 21

27
28

*Drakes Bay Oyster Co. v. Jewell*,
474 F.3d 1073 (9th Cir. 2014) ............................................................................................ 23

*Engquist v. Or. Dep't of Agric.*,
  478 F.3d 985 (9th Cir. 2007) .................................................................................................. 10

*Fairbanks N. Star Borough v. U.S. Army Corp. of Eng'rs*,
  543 F.3d 586 (9th Cir. 2008) .................................................................................... 15, 16, 17

*Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*,
  769 F.3d 1127 (D.C. Cir. 2014) ............................................................................................. 25

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) ................................................................................................................ 16

*Gallo Cattle Co. v. U.S. Dep't of Agric.*,
  159 F.3d 1194 (9th Cir. 1998) ................................................................................................ 15

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) .................................................................................................... 8

*Goldie's Bookstore, Inc. v. Superior Court*,
  739 F.2d 466 (9th Cir. 1984) ............................................................................................ 22, 23

*Graphic Commc'ns Conference—Int'l Bhd. of Teamsters Local 404M v. Bakersfield Californian*,
  541 F. Supp. 2d 1117 (E.D. Cal. 2008) ................................................................................. 23

*Hale v. Norton*,
  476 F.3d 694 (9th Cir. 2007) .................................................................................................. 16

*Heckler v. Ringer*,
  466 U.S. 602 (1984) ................................................................................................................ 18

*Hecla Mining Co. v. EPA*,
  12 F.3d 164 (9th Cir. 1993) .................................................................................................... 16

*Herguan v. Immigration and Customs Enforcement, et al.*,
  258 F. Supp. 3d 1050 (N.D. Cal. 2017) ................................................................................. 24

*Herguan v. Immigration and Customs Enforcement, et al.*,
  2016 WL 7034133 (N.D. Cal. December 2, 2016) ........................................................... 23, 24

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) ................................................................................................ 18

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2nd Cir. 1985) ................................................................................................. 19

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ................................................................................................ 20

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ............................................................................................... 18

*In re Napster, Inc. Copyright Litig.*,
  479 F.3d 1078 (9th Cir. 2007) .......................................................................................... 10, 11

*Kildare v. Saenz*,
  325 F.3d 1078 (9th Cir. 2007) .......................................................................................... 14, 18

*Kim v. United States*,
    121 F.3d 1269 (9th Cir. 1997) .................................................................................. 12

*Koff v. Ahern*,
    No. 14-cv-04680, 2015 WL 1050167 (N.D. Cal. Mar. 9, 2015) .................................. 21

*Liang v. Ashcroft*,
    370 F.3d 994 (9th Cir. 2004) .................................................................................... 17

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    634 F.2d 1197 (9th Cir. 1980) ........................................................................... 21, 23

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .................................................................................................. 15

*Lydo Enterprises v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) .................................................................................... 9

*Maness v. Meyers*,
    419 U.S. 449 (1975) .................................................................................................. 10

*Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*,
    991 F.2d 536 (9th Cir. 1993) ...................................................................................... 9

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .................................................................................................. 17

*Navajo Nation v. Dep't of the Interior*,
    876 F.3d 1144 (9th Cir. 2017) ............................................................................... 9, 15

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ................................................................................................ 25

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................................. 24

*Nunez v. City of Los Angeles*,
    147 F.3d 867 (9th Cir. 1998) .................................................................................... 12

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ........................................................................... 22, 23

*Ogunleye v. Arizona*,
    66 F. Supp. 2d 1104 (D. Ariz. 1999) ......................................................................... 23

*ONRC Action v. Bureau of Land Management*,
    150 F.3d 1132 (9th Cir. 1998) .................................................................................. 16

*Or. Nat. Desert Ass'n. United States Forest Service*,
    465 F.3d 977 (9th Cir. 2006) .................................................................................... 16

*Oregon Nat. Res. Council v. Harrell*,
    52 F.3d 1499 (9th Cir. 1995) .................................................................................... 18

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985) .................................................................................................... 19

*Presbyterian Church (U.S.A.) v. United States*,
   870 F.2d 518 (9th Cir. 1989) ..................................................................................... 9

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018) ..................................................................................... 9

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*,
   749 F.2d 124 (2d Cir. 1984)...................................................................................... 23

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................. 21, 24

*Scott v. Pasadena Unif. Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ................................................................................... 17

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) ................................................................................... 9

*Sorannos Gasco, Inc. v. Morgan*,
   874 F.2d 1310 (9th Cir. 1989) ................................................................................. 14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................. 21

*the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ................................................................................... 8

*U.S. Army Corps of Eng. V. Hawks Co.*,
   136 S. Ct. 1807 (2016) ............................................................................................. 15

*Ukiah Valley Med. Ctr. v. F.T.C.*,
   911 F.2d 261, 264 (9th Cir. 1990) ........................................................................... 15

*United States v. Chen*,
   99 F.3d 1495 (9th Cir. 1996) ............................................................................. 11, 19

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002) ................................................................................... 20

*United States v. Neill*,
   952 F.Supp. 834 (D.D.C. 1997) ............................................................................... 13

*United States v. Restrepo*,
   930 F.2d 705 (1991).................................................................................................. 13

*United States v. Schell*,
   775 F.2d 559 (4th Cir. 1985) ................................................................................... 13

*United States v. Stinson*,
   647 F.3d 1196 (2011)................................................................................................ 13

*United States v. Valenzuela–Bernal*,
   458 U.S. 858 (1982) ................................................................................................. 25

*United States v. Voight*,
   89 F.3d 1050 (3rd Cir. 1996) ................................................................................... 13

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ................................................................................................ 21

*V.N.A. of Greater Tift County, Inc. v. Heckler*,
    711 F.2d 1020 (11th Cir. 1983) ............................................................................ 19

*Vieux v. E Bay Reg'l Park Dist.*,
    906 F.2d 1330 (9th Cir. 1990) ............................................................................... 17

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) ................................................................................................ 10

*Weil v. Investment/Indicators, Research and Management, Inc.*,
    647 F.2d 18 (9th Cir. 1980) ................................................................................... 19

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................ 8, 21, 23

Statutes

5 U.S.C. § 702 ................................................................................................................. 15

5 U.S.C. § 704 ................................................................................................................. 15

5 U.S.C. § 706 ................................................................................................................... 7

5 U.S.C. § 706(2) ........................................................................................................... 15

28 U.S.C. § 1651(a) ........................................................................................................ 19

28 U.S.C. § 2201 ............................................................................................................... 7

28 U.S.C. §§ 1361 ............................................................................................................. 7

Rules

Federal Rule of Evidence 501 ....................................................................................... 11

Federal Rules of Civil Procedure 12(b)(1) ..................................................................... 7

Regulations

8 C.F.R. § 103.3(a) ........................................................................................................... 3

8 C.F.R. § 214.2(f)(5) ....................................................................................................... 2

8 C.F.R. § 214.3(a)(1)(ii) ................................................................................................. 3

8 C.F.R. § 214.3(a)(3)(i) ................................................................................................... 3

8 C.F.R. § 214.3(g)(1) ....................................................................................................... 5

8 C.F.R. § 214.3(l) ............................................................................................................ 3

8 C.F.R. § 214.4(a)(2) ..................................................................................................... 24

1

8 C.F.R. § 214.4(b) .................................................................................................................... 3

2

8 C.F.R. § 214.4(f) .................................................................................................................... 6

3

8 C.F.R. § 214.4(h) .................................................................................................................... 3

4

8 C.F.R. §§ 214.3(h)(3)(vi) ....................................................................................................... 3

5

8 CFR § 214.4(a)(2)(i) ........................................................................................................... 4, 6

6

8 CFR §§ 214.3(a)(3) ................................................................................................................ 3

7

C.F.R. § 214.2(f)(1) .................................................................................................................. 2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

This Court should deny Plaintiff International Technological University Foundation, Inc.'s ("ITU") motion for a preliminary injunction.  *See* Dkt. No. 26 ("PI Motion").  The U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Student Exchange Visitor Program ("SEVP") has an administrative action pending against ITU to withdraw ITU's certification to admit nonimmigrant students.  This action, which is based on SEVP's determination that ITU failed to comply with federally-mandated recordkeeping and reporting requirements, is not final because ITU's appeal is pending before an independent administrative appeals body within ICE. Several years after SEVP initiated its compliance review of ITU that formed the basis for this administrative action, it received an unsolicited whistleblower tip with a document attached.  ITU's Complaint alleges that this document is attorney-client privileged, and it seeks an order enjoining SEVP from using it.  ITU, however, has failed to establish the critical threshold element for a preliminary injunction, that it is likely to succeed on, or that there are serious questions going to the merits of, its claims, nor has it established any of the other elements required for such relief.

First, ITU has not established a due process claim because the Ninth Circuit has held that the attorney-client privilege is a rule of evidence, not a constitutional right protected by the Fifth Amendment, *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985), and because the government's conduct was not outrageous.  Given its pending administrative appeal, ITU has failed to establish any final agency action subject to judicial review, as required by the Administrative Procedure Act.  ITU also failed to identify any clear, nondiscretionary duty or lack of an adequate remedy in support of its mandamus claim, or a threat to the Court's jurisdiction that requires the extraordinary remedy of an All Writs Act injunction.  For these reasons, among others, federal defendants Kirstjen M. Nielsen, in her official capacity as Secretary of DHS, United States of America, DHS, ICE, and SEVP (collectively, "Federal Defendants") filed a Motion to Dismiss ITU's Complaint.  *See* Dkt. No. 27.

Second, ITU has failed to establish that it will be irreparably harmed in the absence of a preliminary injunction.  The two-year delay between ITU's assertion of the privilege and filing its Complaint demonstrates that this matter is not time-sensitive.  Furthermore, ITU's alleged harms are merely economic and speculative.

1    Finally, as there is a strong public interest in the completion of administrative actions, the

2    balance of equities and the public interest weighs strongly in favor of the Federal Defendants.

3    Accordingly, this Court should deny ITU's PI Motion.

4  **II.     BACKGROUND**

5        **A.     Statutory and Regulatory Framework**

6            **1.     Nonimmigrant Student Status**

7    "Nonimmigrant" classifications convey authorization for a foreign national to enter the United

8    States temporarily for a specific purpose.  The F-1 nonimmigrant student classification allows foreign

9    nationals to enter the United States to enroll in a full course of study at an SEVP-certified academic

10   institution or language training program.  8 U.S.C. § 101(a)(15)(F)(i).  To qualify for F-1 status, a

11   foreign national is required to (1) apply and gain admission to an approved U.S. educational institution,

12   (2) obtain a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by the U.S.

13   educational institution, and (3) if not visa-exempt, submit a visa application at the U.S. Embassy or

14   Consulate outside the United States, typically in the location where the foreign national resides; and (4)

15   be admitted to the United States as an F-1 nonimmigrant student.  8 C.F.R. § 214.2(f)(1).  F-1 visa-

16   holders are admitted for "duration of status," meaning the student is only authorized to stay in the United

17   States while he or she is pursuing a full course of study at an approved educational institution or

18   engaging in authorized practical training following the completion of his or her studies.  8 C.F.R.

19   § 214.2(f)(5).

20            **2.     SEVP Certification and Withdrawal of Certification**

21   SEVP, a program within ICE, manages the authorization process for schools seeking to enroll

22   nonimmigrant students.  Due to national security concerns, federal law requires careful tracking of

23   individuals present in the United States in nonimmigrant student status and the schools authorized to

24   enroll them.  *See, e.g.* Illegal Immigration Reform and Immigrant Responsibility Act; Uniting and

25   Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism

26   Act; Enhanced Border Security and Visa Entry Reform Act of 2002 ("EBSVERA"); Accreditation of

27   English Language Training Programs Act.  EBSVERA instituted a two-year recertification process for

28   all SEVP-certified schools.

1    Any school that wishes to enroll a nonimmigrant student in F-1 status must first obtain SEVP

2 certification by demonstrating that it is, among other things, a "bona fide school," and an "established

3 institution of learning," "possesses the necessary facilities, personnel, and finances to conduct

4 instruction in recognized courses," and "is, in fact, engaged in instruction in those courses."  8 C.F.R.

5 § 214.3(a)(3)(i).  The school must submit a Form I-17 petition stating the programs for which it seeks

6 approval to enroll nonimmigrant students and must certify that the designated school official ("DSO")

7 has read and understood the relevant federal regulations.  *See* 8 C.F.R. § 214.3(a)(1)(ii).  Each SEVP-

8 certified school appoints a principal designated school official ("PDSO") to carry out its recordkeeping,

9 reporting, and other SEVP-related responsibilities.  8 C.F.R. § 214.3(l).  SEVP uses the Student and

10 Exchange Visitor Information System ("SEVIS") to monitor both certified schools and nonimmigrant

11 students present in the United States in F-1 status.  8 C.F.R. § 214.2(f)(1)(iii).

12    Consistent with SEVP's national security mission, federal law requires schools to petition SEVP

13 for recertification to demonstrate ongoing eligibility to enroll nonimmigrant students and continued

14 compliance with federal statutes and regulations.  *See, e.g.*, 8 CFR §§ 214.3(a)(3) and (h)(2).  Moreover,

15 federal regulations authorize SEVP to conduct an out-of-cycle review at any time to verify compliance

16 with regulations governing recordkeeping, retention, reporting, and other mandatory requirements.  *See,*

17 *e.g.*, 8 C.F.R. §§ 214.3(h)(3)(iii) and (e)(2).  Schools that fail to comply are subject to the withdrawal of

18 their certification.  8 C.F.R. §§ 214.3(h)(3)(vi) and  214.4.  To commence a withdrawal proceeding,

19 SEVP issues a Notice of Intent to Withdraw ("NOIW") to the school informing it of the reasons for the

20 withdrawal.  8 C.F.R. § 214.4(b).  The school has an opportunity to respond to the alleged violations.

21 *See id*.  If, after consideration of the school's response, SEVP decides to withdraw a school's

22 certification, it will issue a Withdrawal on Notice ("WON").  The school may then appeal to the

23 Administrative Appeals Team ("the AAT"), an internal appeals body within ICE pursuant to 8 C.F.R. §

24 214.4(h), and thereafter to federal court.

25    In order to file an appeal or a motion, the petitioner must submit a Form I-290B, "Notice of

26 Appeal or Motion," to SEVP.  *See* 8 C.F.R. § 103.3(a).  The Notice of Appeal must be supported by a

27 statement or brief specifically setting forth the grounds for contesting the withdrawal of the school's

28 certification.  8 C.F.R. § 214.4(h).  A petitioner may also submit additional evidence to demonstrate its

continuing eligibility for SEVP certification and compliance with all requirements.

The AAT considers an appealing school's supporting statement, any evidence provided, and any testimony offered during oral argument, if held, and issues an independent decision concerning the school's certification.  Declaration of James D. Hicks ("Hicks Decl.") ¶ 25.  The AAT is not bound by the decision of the original deciding body.  *Id.*

## B.   SEVP's Administrative Action to Withdraw ITU's Certification

Defendants do not repeat ITU's allegations regarding the timeline of events, as that information is already before the Court.  *See* Dkt. No. 27, 6:3-25.  Rather, here, Defendants clarify the procedural history of the ongoing administrative enforcement action to withdraw ITU's certification.

### 1.   SEVP's 2010 Out-Of-Cycle Review of ITU

Following ITU's failure to timely report a student's death as required, SEVP initiated an out-of-cycle review of the school in 2010.  Hicks Decl., ¶ 9.  From 2011 to 2012, SEVP issued to ITU multiple requests for evidence ("RFE") and student records, noting recordkeeping discrepancies in each response.  *Id.*, ¶ 11.  On December 6, 2013, ITU petitioned for recertification.  *Id.*, ¶ 13.  From January to April 2014, SEVP issued additional RFEs and requests for student records.  *Id.*  With each submission, SEVP observed that ITU failed to provide sufficient evidence that it was properly maintaining nonimmigrant student records because, e.g., records were entirely missing, contained significant discrepancies, or were illegible.  *Id.*  As SEVP noted in each of its enforcement notices to ITU concerning the school's certification, these systemic failures to comply with federally-mandated recordkeeping and reporting requirements provided a valid and substantive basis for SEVP to withdraw ITU's certification pursuant to 8 CFR § 214.4(a)(2)(i).  *Id.*, ¶ 16.

### 2.   Nearly Five Years Later, SEVP Received The Nolan Memorandum Via An Unsolicited Communication from a Whistleblower

In January 2015, SEVP received a communication from an ITU official expressing compliance-related concerns regarding ITU's recordkeeping and reporting practices and attaching a document later identified by ITU as the Nolan Memorandum.  Hicks Decl., ¶¶ 14, 17; Compl., ¶¶ 35-36.  SEVP informed ITU's counsel in correspondence from 2016 to 2018 of its belief that the Nolan Memorandum is not subject to the attorney-client privilege under state or federal law, and further, to the extent that it

1    was covered, the privilege was waived.  Hicks Decl., ¶ 15.

2                **3.    SEVP's 2016 Notice of Intent to Withdraw ITU's Certification**

3            On July 26, 2016, based on ITU's responses to the RFEs and related requests for student records,

4    SEVP served ITU with an NOIW alleging several regulatory violations, each sufficient to warrant

5    withdrawal of SEVP certification, including:  failure to maintain and provide SEVP with accurate

6    nonimmigrant student records, including admissions documents, financial records, and transfer credit

7    materials, as required by 8 C.F.R. § 214.3(g)(1); issuance by a DSO of a false statement, including

8    wrongful certification of a statement by signature, in connection with multiple students' applications for

9    employment or practical training; and, conduct on the part of a DSO that does not comply with the

10   regulations.  Hicks Decl., ¶ 16.  The NOIW stated that, in January 2015, SEVP received a copy of an

11   October 6, 2014 report.  *Id.*

12                **4.    ITU's Privilege Assertion and Response to the NOIW**

13           On August 26, 2016, ITU sent a letter to Timothy Hicks, Chief of SEVP's Analysis and

14   Operations Center.  Compl., ¶ 36; *see also* Hicks Decl, ¶ 17.  It asserted that the report cited in the

15   NOIW was protected by the attorney-client privilege and directed SEVP to return the document to ITU.

16   *See id.*  In September 2016, SEVP responded in a letter to ITU that stated "SEVP does not believe the

17   October 2014 Report is covered by the attorney-client privilege under state or federal law."  Hicks Decl.,

18   ¶ 17.  SEVP also stated that, "to the extent the document was ever covered by attorney-client privilege,"

19   the "privilege was waived by [the document's] intentional disclosure or lost by ITU's failure to timely

20   assert or reasonably protect the privilege."  *Id.*  ITU and SEVP continued to correspond about this matter

21   through August 2018.  *Id.*

22           On September 26, 2016, ITU formally responded to the NOIW in a letter brief supported by

23   witness declarations and documents.  *See* Compl., ¶ 37, *see also* Hicks Decl., ¶ 18.  ITU's submission

24   admitted to recordkeeping failures at the school.  Hicks Decl., ¶ 18.  It also referenced and attached a

25   May 16, 2016 letter from ITU's counsel indicating that the school believed certain documents it had

26   submitted to SEVP in connection with the above-mentioned RFEs and related requests, including

27   student records and financial documents, had been impermissibly altered or were otherwise not genuine.

28   *Id.*  The letter described, in detail, the indicia of unreliability attributed to the submitted records and

1   confirmed that at least some of the school personnel associated with their production were no longer

2   employed by ITU.  *Id.*  Copies of such presumably altered or otherwise unreliable records were included

3   as exhibits to the May 16, 2016 letter from ITU's counsel.  *Id.*  ITU's response requested an interview,

4   as permitted by SEVP regulations.  Compl., ¶ 28, *see also* 8 C.F.R. § 214.4(f).

### 5.      SEVP's 2017 Withdrawal on Notice

6           On July 18, 2017, SEVP served ITU with a Withdrawal on Notice ("2017 Withdrawal")

7   announcing that it was withdrawing ITU's certification to enroll nonimmigrant students.  *See* Compl.,

8   ¶ 39; Hicks Decl., ¶ 19.  In addressing the school's written response, including allegations that SEVP

9   impermissibly relied on the Nolan Memorandum, the 2017 Withdrawal expressly stated that the

10   violations outlined in the notice "were known to SEVP prior to obtaining the report and [that] the

11   withdrawal [was] not based on the internal investigation."  Hicks Decl., ¶ 19.  On August 1, 2017, ITU

12   filed an appeal citing, in part, its unfulfilled request for a telephonic interview and alleging that SEVP's

13   continued reliance on the report was a violation of ITU's due process rights.  *See* Compl., ¶ 40; Hicks

14   Decl., ¶ 20, 21.  Upon reviewing the appeal and confirming ITU's request for a telephonic interview,

15   SEVP issued a Motion by a Service Officer on September 28, 2017 to rescind the WON and reopen the

16   proceedings to permit ITU to supplement its NOIW response via a telephonic interview.  Hicks Decl.,

17   ¶ 21.  SEVP interviewed ITU via telephone on October 18, 2017.  *Id*., ¶ 22.

### 6.      SEVP's 2018 Withdrawal on Notice

19           In April 2018, SEVP issued to ITU a superseding Withdrawal on Notice (the "2018

20   Withdrawal"), stating that it was withdrawing ITU's certification to enroll nonimmigrant students due to

21   recordkeeping and reporting failures and DSO misconduct.  Hicks Decl., ¶ 23.  The 2018 WON made

22   clear that ITU's admitted recordkeeping and reporting failures, standing alone, were sufficient to

23   withdraw the school's SEVP certification under 8 CFR 214.4(a)(2)(i).  *Id.*  The 2018 Withdrawal

24   clarified that the contents of the Nolan Memorandum merely added to the recordkeeping and reporting

25   violations on which the withdrawal of certification was based.  *Id.*  ITU appealed the 2018 Withdrawal.

26   *Id*., ¶ 26.

27   //

28   //

1    **C.    ITU's Complaint**

2    On October 11, 2018, ITU filed the instant action.  ITU alleges that SEVP "has been in the

3    unauthorized possession of a privileged communication between ITU and its counsel," "has refused to

4    return the document or reveal how it came into possession of the document;" and "has instead relied on

5    the document to attempt to revoke ITU's ability to admit nonimmigrant students, a potential death knell

6    for the school."  Compl., at ¶ 2.  ITU concedes, however, that it has appealed SEVP's 2018 Withdrawal,

7    and that as a result, "the final adjudication of ITU's certification is not yet complete[.]" Compl., ¶ 49-50.

8    ITU claims that, as a result of SEVP's possession, review and use of the Nolan Memorandum, it has

9    suffered an intrusion on its attorney-client privilege, incurable prejudice against it by the ICE employees

10   who accessed and reviewed the Nolan Memorandum, a reduction in student enrollment, and the future

11   harms of being unable to enroll enough students to continue operations, meet accreditation requirements,

12   and ultimately keep its doors open.  *See id.* at ¶¶ 46-50.  ITU asserts the following claims for relief: (1)

13   Declaratory Relief for Violation of Fifth Amendment Due Process Rights and Federal Common Law

14   under 28 U.S.C. § 2201; (2) Declaratory Relief under the Administrative Procedures Act, 5 U.S.C. § 706

15   ("APA"); (3) Injunctive Relief under the Administrative Procedures Act, 5 U.S.C. § 706; and (4) Relief

16   under the Mandamus and Venue Act and All Writs Act, 28 U.S.C. §§ 1361 and 1651.

17   **D.    The Parties' Stipulation to Stay the Administrative Proceeding**

18   Pursuant to the stipulation of the parties, ITU postponed the filing of any application for a

19   Temporary Restraining Order in light of the Federal Defendants' agreement to stay the adjudication of

20   ITU's appeal of the 2018 Withdrawal until this Court rules on ITU's PI Motion.  *See* Dkt. No. 22.

21   **E.    The Federal Defendants' Motion to Dismiss**

22   On December 17, 2018, the Federal Defendants filed a Motion to Dismiss ITU's Complaint in its

23   entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 27.  The

24   Defendants argued, in summary, that ITU failed to identify any final agency action subject to judicial

25   review pursuant to the APA, or any nondiscretionary duty that Defendants failed to perform pursuant to

26   the Mandamus and Venue Act.  *See id.*  Finally, in the absence of any constitutionally protected interest,

27   ITU failed to state a claim for a due process violation.  *See id.*

28   //

1    **F.      ITU's PI Motion**

2          On December 17, 2019, ITU moved for a preliminary injunction on the basis of its claims for

3    violation of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.  *See*

4    PI Mot. at 9:10-11 (all references are to the ECF page number).  ITU seeks a preliminary injunction to:

5    (i) prohibit the Federal Defendants from reviewing the Nolan Memorandum and any other documents

6    discussing or derived from the contents of the document; (ii) prohibit the Federal Defendants from

7    distributing the Nolan Memorandum and any other documents discussing or derived from its contents;

8    (iii) prohibit the Federal Defendants from disclosing the contents of the Nolan Memorandum to any

9    person or entity; (iv) prohibit the Federal Defendants from citing to or otherwise relying upon the Nolan

10   Memorandum and any other documents discussing its contents to support any action or to adjudicate any

11   alleged violations of applicable regulations or laws; and (v) prohibit the Federal Defendants from any

12   further adjudication of ITU's certification to enroll nonimmigrant students, including pending

13   administrative proceedings, during the pendency of this action.  *See id*. at 2:13-25.

14   **III.   LEGAL STANDARD**

15         A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear

16   showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S.

17   7, 22 (2008).  Preliminary injunctions are "never awarded as of right."  *Id*. at 24.  "A plaintiff seeking a

18   preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to

19   suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor,

20   and (4) an injunction is in the public interest."  *Garcia v. Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015)

21   (citing *Winter*, 555 U.S. at 20).  Alternatively, a plaintiff can show that there are "'serious questions

22   going to the merits' and the 'balance of hardships tips sharply towards' [plaintiff], as long as the second

23   and third *Winter* factors are [also] satisfied."  *Disney Enters., Inc. v. VidAngel, Inc*., 869 F.3d 848, 856

24   (9th Cir. 2017) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

25   The most important of the four factors is likelihood of success on the merits.  *See id*.  If a movant fails to

26   meet this "threshold inquiry," in the absence of "serious questions going to the merits," a court need not

27   consider the remaining three factors.  *Id*. (internal citations omitted).  A preliminary injunction may not

28   be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending

final judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1422 (9th Cir. 1984).

Delays in seeking relief are considered when determining whether preliminary injunctive relief should be granted.  *See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr*., 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal quotation marks and citation omitted); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

## IV.  ARGUMENT

### A.  ITU's Request for a Preliminary Injunction Should Be Denied Because It Has Failed to Establish a Likelihood of Success On the Merits Nor Can It Demonstrate That There Are Serious Questions Going to the Merits.

#### 1.  ITU Will Not Succeed On Its Due Process Claim Alleging That the Federal Defendants Breached The Attorney-Client Privilege.

ITU is unlikely to succeed on its claim that SEVP's possession, use and review of the Nolan Memorandum violates due process because the attorney-client privilege is not a constitutional right protected by the Fifth Amendment.[1]  *See* Compl., ¶ ¶ 53-57, *see also* PI Mot., 20:3-19.  The Due Process Clause provides that no person may be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.  "'A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.'" *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec*., 908 F.3d 476, 514 (9th Cir. 2018) (citation omitted).

ITU's Complaint alleges that "Defendants have violated the Due Process Clause by failing to promptly return the Privileged Report to ITU and by further possessing, concealing, reviewing, and using the Privileged Report in the adjudication of ITU's SEVP certification." Compl., ¶ 56.  ITU fails to specify which kind of due process, substantive or procedural, the Federal Defendants allegedly violated. Regardless, it is unlikely to succeed on either claim.

---

[1]ITU has conflated its due process and APA claims.  The Ninth Circuit has held that § 702 of the APA "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable."  *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 & n.9 (9th Cir. 1989).  Accordingly, ITU's due process claim is not subject to Section 704 of the APA, which limits judicial review to final agency actions.  *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017).  ITU's APA claims are, however, governed by Section 704's final agency action requirement, even if predicated on due process violations.  *See id*.

1

2

### (i)     ITU has failed to establish a likelihood of success on a substantive due process claim.

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that ... interferes with rights implicit in the concept of ordered liberty." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007), aff'd, 553 U.S. 591, (2008) (alteration in original) (citation omitted). Substantive due process protects "fundamental" rights. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted). To allege a violation of a fundamental right, a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim. *Chavez v. Martinez*, 538 U.S. 760, 775-76 (2003). And while in rare cases a "denial of fundamental fairness" may rise to the level of a substantive due process violation, to survive dismissal in a "challenge to executive action" such as this one, ITU must allege behavior that is "so egregious" and "outrageous" as "to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8, 850 (1998). "It is not enough to allege conscience shocking action, however. As a threshold matter, to establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (citation omitted). As set out below, ITU cannot meet this standard.

### (a)     ITU has not alleged a substantive due process violation.

ITU's allegations do not state a substantive due process violation. "Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985) (citing *Maness v. Meyers*, 419 U.S. 449, 466 n.15 (1975)); *Beckler v. Superior Court*, 568 F.2d 661, 662 (9th Cir. 1978) (the attorney-client privilege is applied pursuant to the Federal rules of evidence, not the Constitution). In *Clutchette*, the Ninth Circuit rejected a claim that the government violated an attorney-client relationship where a third party turned over evidence against a defendant, reasoning that "[t]he state did not deliberately intrude into [Petitioner's] privileged relationship with his attorney." *Id.* at 1472. The same holds true in this matter. These authorities foreclose any argument that ITU has a protected interest in its attorney-client privilege pursuant to the Fifth Amendment.

ITU's reliance on *In re Napster* is misplaced. *See* PI Mot., 20:3-20, citing *In re Napster, Inc.*

*Copyright Litig*., 479 F.3d 1078, 1093 (9th Cir. 2007), *abrogated by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). In *In Re Napster*, the Ninth Circuit evaluated the "proper procedures for deciding whether the crime-fraud exception applies." *See id*. at 1090. In the context of this discussion, it unequivocally stated that "[t]he attorney-client privilege is the oldest and arguably most fundamental of the common law privileges recognized under Federal Rule of Evidence 501." *Id.* It also stated that "[t]he attorney-client privilege protects fundamental liberty interests by allowing individuals to seek the legal advice they need "to guide them through [the] thickets" of complex laws. *Id*., citing *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir.1996). The Court did not, however, discuss, contradict, or overrule existing precedent holding that the attorney-client privilege itself is not a constitutional right, nor did it evaluate the attorney-client privilege in the context of a constitutional claim. *See Clutchette*, 770 F.2d at 1471. Accordingly, the *In Re Napster* Court's statement that the privilege protects an underlying liberty interest does not provide ITU with a predicate for a viable constitutional claim.

In light of ITU's narrow allegation that its due process rights have been violated by SEVP's possession, review, and use of the Nolan Memorandum (Compl., ¶ 56), and Ninth Circuit precedent stating the attorney-client privilege is not protected by the Fifth Amendment, its argument that it has been deprived of other liberty and property rights is unavailing. PI Mot., at 20:10-12. ITU argues that in addition to a violation of its attorney-client privilege, it has been deprived of "past and future lost revenue from the decline in student enrollment, and the potential loss of its certification to enroll nonimmigrant students." *Id*. ITU has pointed to no authority, and the Federal Defendants are aware of none, that it has a Fifth Amendment due process interest in lost revenue. With respect to the potential loss of its SEVP certification, the District of Columbia Circuit has held that a certification to admit nonimmigrant students is a valuable asset in the nature of a license that is entitled to procedural due process protection. *Blackwell Coll. of Bus. v. Attorney Gen*., 454 F.2d 928, 932 (D.D.C. 1971). In *Blackwell*, however, the government had already withdrawn the plaintiff school's certification, which has not happened here. *See id*. at 931. Moreover, this procedural due process question is not before the Court, nor is it ripe, because as ITU concedes, the administrative process is not yet complete and, thus, the loss of ITU's SEVP certification remains speculative. *See* Compl., ¶ 50.

Nor has ITU established a basis for the Court to recognize a new fundamental constitutional

1  right.  "The protections of substantive due process have for the most part been accorded to matters

2  relating to marriage, family, procreation, and the right to bodily integrity."  *Albright v. Oliver*, 510 U.S.

3  266, 272 (1994) (plurality opinion).  Given the Supreme Court's reluctance "to expand the concept of

4  substantive due process because guideposts for responsible decisionmaking in this unchartered area are

5  scarce and open-ended," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992), these fields of

6  fundamental rights "likely represent the outer bounds of substantive due process protection."  *Nunez v.*

7  *City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *Glucksberg*, 521 U.S. at 720 ("By extending

8  constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter

9  outside the arena of public debate and legislative action.").  "Where a fundamental right is not

10  implicated, as in this case, governmental action need only have a rational basis to be upheld against a

11  substantive due process attack."  *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997).  Here, in a

12  series of letters to ITU in 2016 and 2018, SEVP articulated, in detail, the reasons for which it had

13  concluded that the Nolan Memorandum was not privileged or, to the extent that any privilege attached,

14  the privilege had been waived.  *See* Compl., ¶ 36.  Specifically, the document is not marked

15  "confidential," or "attorney-client privileged" and was voluntarily provided to the agency by an ITU

16  official.  Hicks Decl., ¶ 15.

17  <center>**(b)  ITU's allegations do not shock the conscience.**</center>

18  Even if ITU's Fifth Amendment Claim were otherwise cognizable, it would be insufficient as a

19  matter of law because ITU fails to allege or establish conduct that is sufficiently egregious to "shock the

20  conscience."  The Supreme Court has developed a rigorous standard for substantive due process claims

21  that limits its protection to only the most egregious conduct.  *See County of Sacramento*, 523 U.S. 833,

22  846-47 (1998).  Although ITU does not agree with SEVP's use of the Nolan Memorandum, or ICE's

23  assessment that the Nolan Memorandum is not privileged or that any applicable privilege has been

24  waived, it fails to allege any government conduct that shocks the conscience.

25  None of the conduct in the criminal cases cited by ITU is analogous here, nor does it establish

26  that the government's conduct shocks the conscience.  *See* PI Mot., 20:20-22:6.  In *United States v.*

27  *Stinson*, the Ninth Circuit held there was no due process violation in light of allegations of outrageous

28  government conduct regarding certain government witnesses who were paid to testify, had previously

perjured themselves, and were allegedly threatened by law enforcement officers. *See United States v. Stinson*, 647 F.3d 1196, 1209 (2011). The Ninth Circuit held that "[i]n order to show outrageous government conduct, defendants must show conduct that violates due process in such a way that it is "so grossly shocking and so outrageous as to violate the universal sense of justice." *See id*. (internal citations omitted). This defense is "limited to extreme cases in which the government's conduct violates fundamental fairness." *See id*. (internal citations omitted). Similarly, the Ninth Circuit held there was no due process violation where an informant allegedly engaged in sexual activity with the defendant and introduced her to crack cocaine because such conduct transpired before the informant started working with the government. *See United States v. Restrepo*, 930 F.2d 705, 711, 712-13 (1991).

Similarly, the out of circuit authority cited by ITU is inapposite. For instance, the Fourth Circuit's decision that it was a due process violation for an attorney who became an AUSA to join the prosecution of his former clients regarding matters identical to those about which he had counseled them has no bearing on this matter. *See United States v. Schell*, 775 F.2d 559, 565 (4th Cir. 1985). ITU's claims are also not supported by the Third Circuit's holding that it was harmless error to not hold an evidentiary hearing regarding the existence of an attorney-client relationship because the record fell "woefully short of establishing the sort of purposeful intrusion into [the criminal defendant's] attorney client relationship with [her alleged attorney] that would rise to the level of outrageousness." *See United States v. Voight*, 89 F.3d 1050, 1069, 1071 (3rd Cir. 1996). Finally, a district court's denial of a defendant's motion to dismiss the charges against him or her for tax offenses on the basis of an alleged government invasion of the defendant's attorney-client privilege fails to further ITU's argument. *See United States v. Neill*, 952 F.Supp. 834, 841 (D.D.C. 1997).

In the absence of any constitutionally protected right or outrageous government conduct rising to the level of a due process claim, ITU's argument that it has been prejudiced cannot resuscitate its claim. *See* PI Mot. at 22:7-23:3.

### (ii) ITU has failed to establish a likelihood of success on a procedural due process claim.

To the extent ITU seeks to state a procedural due process claim, it is similarly unavailing. To state a claim for a procedural due process violation, a plaintiff must plead and prove facts sufficient to

establish "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2007). "Only upon a finding that the plaintiff has been deprived of such an interest do courts look to see if the government's procedures comport with due process." *Id.*; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests" protected by the Constitution); *Sorannos Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) ("The procedural due process guarantees . . . apply only when a constitutionally protected liberty or property interest is at stake.").

Thus, for the same reason that ITU lacks a constitutionally-protected interest in the attorney-client privilege sufficient to support a substantive due process claim, any procedural due process claim on the same ground also fails. *See supra*. In addition, ITU has alleged that it made a formal objection to SEVP's use of the Nolan Memorandum (i) in response to SEVP's 2016 Notice of Intent to Withdraw (¶ 38); (ii) in its appeal to the 2017 withdrawal (¶ 40); and (iii) in its appeal of the 2018 withdrawal (¶ 43).

As ITU concedes, the administrative process governing to the withdrawal of its SEVP certification is ongoing because ITU appealed SEVP's 2018 withdrawal of its certification. *See* Compl., ¶ 50. To date, the school retains its SEVP certification, retains access to SEVIS, and continues to issue Forms I-20 for nonimmigrant students to obtain authorization to enter the United States for the purpose of enrolling in ITU. Hicks Decl., ¶ 27. In the absence of any evidence that the agency's administrative process is constitutionally inadequate, ITU has failed to establish a likelihood of success on a claim for a procedural due process violation.

### 2. ITU Will Not Succeed On Its APA Claims.

#### (i) ITU has failed to identify any final agency action subject to judicial review.

ITU has failed to establish a likelihood of success on its Second and Third Claims for Relief pursuant to Section 706(2) of the APA because it has not made any allegation that this case presents a final agency action that is subject to judicial review. ITU argues that SEVP's violation of its right to due process "forms the predicate" for its APA claim, as the statute provides that a court shall "hold unlawful and set aside agency action…found to be (B) contrary to constitutional right, power, privilege, or

immunity."  PI Mot., 20:3-8, citing 5 U.S.C. § 706(2).  Without any final agency action, however, ITU's APA claims are not subject to judicial review and, accordingly, must be dismissed.  *See Fairbanks N. Star Borough v. U.S. Army Corp. of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (finality is a jurisdictional requirement to obtaining judicial review under the APA) (internal citations omitted).

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The APA's judicial review provisions, however, apply only in limited circumstances such as when the challenged agency action is final or "otherwise reviewable by statute."  *See* 5 U.S.C. § 704; *see Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198–99 (9th Cir. 1998) (holding that the APA's waiver of sovereign immunity is limited, including Section 704's limitation to review of only "final agency action" and "agency action otherwise reviewable by statute"); *cf. Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017) ("§ 704's requirement that to proceed under the APA, agency action must be final or otherwise reviewable by statute is an independent element without which courts may not determine APA claims."); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (under the general review provisions of the APA, only final agency actions are subject to judicial review).

"Two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process . . . it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *U.S. Army Corps of Eng. V. Hawks Co.*, 136 S. Ct. 1807, 1813 (2016) (internal quotations and citations omitted); *Bennett v. Spear*, 520 U.S. 154 (1997) (internal citation omitted); *City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 2011) (for an agency action to be final it must "impose an obligation, deny a right or fix some legal relationship.").  When an action is not a "definitive" statement of the agency's position and does not have a "direct and immediate . . . effect on the day-to-day business" on the subject party, it is not "final."  *Ukiah Valley Med. Ctr. v. F.T.C.*, 911 F.2d 261, 264 (9th Cir. 1990) (explaining that the Federal Trade Commission's issuance of a complaint against the plaintiff did not in itself constitute a definitive determination that the agency had jurisdiction; rather, that issue was still pending before the

1   administrative law judge and could be resolved in the plaintiff's favor). This is especially relevant in the

2   instant case where, as in the *Ukiah Valley* case, neither the government's possession of the Nolan

3   Memorandum, nor the 2018 Withdrawal, have had a "direct and immediate" effect on ITU's day-to-day

4   business, as it may still enroll nonimmigrant students, issue Form I-20 and access SEVIS.  Hicks Decl.,

5   ¶ 27.

6        To qualify as an action that marks the 'consummation' of the agency's decisionmaking process

7   in satisfaction of the first prong, there must be an established "formal procedure," *Fairbanks*, 543 F.3d

8   586, 592–93 (9th Cir. 2008), in which the agency "evaluate[s] the merits of [the issue] to arrive at a

9   reasoned, deliberate decision," *see ONRC Action v. Bureau of Land Mgmt*, 150 F.3d 1132, 1136 (9th

10  Cir. 1998).  A final decision must establish an official position that is "considered, definite and firm,"

11  *Fairbanks*, 543 F.3d at 593, and constitutes the agency's "last word on the matter," *Or. Nat. Desert*

12  *Ass'n. v. United States Forest Service*, 465 F.3d 977, 984 (9th Cir. 2006).  A federal agency's informal

13  recommendation or assessment is not a final agency action.  *See City of San Diego*, 242 F.3d at 1101–

14  02; *Aminoil U.S.A., Inc. v. Cal. State Water Res. Control Bd.*, 674 F.2d 1227, 1231 (9th Cir. 1982).  ITU

15  has made no such allegations here, nor could it, given that the process has not yet resulted in the

16  agency's last word on this matter, as ITU has conceded.

17       To satisfy the second prong, an agency's decision must have the force and effect of law and be

18  binding on the plaintiff.  The decision must require the plaintiff to do or not do some action, *see*

19  *Fairbanks*, 543 F.3d at 593, such that the plaintiff's only choice is whether to comply with or defy a

20  legal requirement, *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239–40 (1980).  An expression of

21  the agency's view regarding what the law requires is not enough,  *Fairbanks*, 543 F.3d at 594, nor is a

22  decision that a statute applies to an activity or individual, *see Hale v. Norton*, 476 F.3d 694, 697 (9th

23  Cir. 2007) (a Park Service decision that landowners were subject to permit requirements was not a final

24  agency action); *Hecla Mining Co. v. EPA*, 12 F.3d 164, 165–66 (9th Cir. 1993) (the decision to include a

25  river and mine on the lists subjecting plaintiffs to permit requirements is not a final agency action).

26       Further, the agency's decision must have legal consequences.  Agency actions subjecting the

27  plaintiff to a "greater risk of increased fines," an "onerous administrative maze," or further agency

28  proceedings are not final, as these are practical effects, not legal consequences.  *Fairbanks*, 543 F.3d at

595–96.  Even an agency decision that triggers profound economic consequences is not final, as these are considered practical effects.  *See id*.  Rather, an agency's decision is final if it has tangible legal consequences or otherwise alters the legal relationship between the parties.  *Id*. at 594.

ITU concedes that "the final adjudication of ITU's certification is not yet complete."  Compl., ¶ 50.  ITU's PI Motion acknowledges that it filed an appeal with the agency, which is pending but stayed pursuant to the stipulation of the parties while ITU's PI Motion is before the Court.  PI Mot., 15:21-16:10.  Accordingly, the independent appellate body within ICE may still grant or deny ITU's appeal, notwithstanding the 2018 Withdrawal issued by SEVP.

Finally, because the agency's adjudication of ITU's appeal of the 2018 Withdrawal is ongoing, ITU cannot demonstrate that its APA claims are ripe for adjudication or have been administratively exhausted.  *See* Compl., ¶ 49-50 (asserting that ITU appealed the 2018 Withdrawal and the agency's final adjudication of that appeal is not yet complete).  The ripeness doctrine avoids "premature adjudication" of disputes, *Scott v. Pasadena Unif. Sch. Dist*., 306 F.3d 646, 662 (9th Cir. 2002), and "prevents courts from deciding abstract issues that have not yet had a concrete impact on the parties," *Vieux v. E Bay Reg'l Park Dist*., 906 F.2d 1330, 1344 (9th Cir. 1990).  To determine whether a claim is ripe for judicial review, courts focus on "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  The related doctrine of exhaustion of administrative matters is judicially imposed as a prudential matter where (1) agency expertise makes agency consideration necessary to generate a proper record and generate a proper decision, (2) relaxation of the requirement would encourage the deliberate bypass of the administrative schedule, and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.  *See Liang v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004) ("Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'").  Ripeness and exhaustion considerations weigh in favor of requiring the completion of the agency's adjudication, and, thus, weigh against any likelihood that ITU will succeed on the merits of its APA claims.  In this case, ICE's final adjudication has not yet been rendered, as evidenced by ITU's unimpeded access to SEVIS and continued ability to enroll nonimmigrant students.

1    Accordingly, ITU has failed to establish a likelihood of success on the merits of its APA claims.

2        **3.**    **ITU's Motion Makes No Argument That It Is Likely To Succeed on the**

3    **Merits of Its Mandamus and Venue Act and All Writs Act Claim, Nor Has It Established that the All Writs Act Provides Jurisdiction for an Injunction.**

4    Despite its suggestion that mandamus or an All Writs Act injunction would be proper here, ITU

5    has made no argument that it is likely to succeed on the basis of its Fourth Claim for Relief pursuant to

6    the Mandamus and Venue Act and All Writs Act, nor has it identified any jurisdictional basis for its

7    claim. *See* PI Mot., 18, n. 3. The Ninth Circuit's test concerning when mandamus is appropriate

8    requires that "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary,

9    ministerial and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is

10   available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003). "The extraordinary remedy of

11   mandamus lies within the discretion of the trial court, even if the three elements are satisfied." *Oregon*

12   *Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995). A plaintiff may not use mandamus to

13   circumvent the administrative appeals process. *Heckler v. Ringer*, 466 U.S. 602, 616-67 (1984)

14   (affirming dismissal of mandamus action when plaintiff had not satisfied the exhaustion requirement).

15   Here, ITU has failed to identify a nondiscretionary duty that Defendants owe it and that is "free of

16   doubt." Further, ITU has filed an administrative appeal in which it has the right to make factual, legal,

17   or procedural challenges. If ITU is dissatisfied with the appeal outcome, it may seek judicial review of

18   the final agency decision at that time. Granting mandamus here would allow ITU to override the

19   administrative process.

20   ITU's reliance on *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010) and *In re Kellogg*

21   *Brown & Root, Inc*., 756 F.3d 754 (D.C. Cir. 2014) for the proposition that this Court has mandamus

22   jurisdiction because ITU is challenging an alleged intrusion into the attorney-client privilege is

23   misplaced. *See* PI Mot., n. 3. In both cases, an appellate court considered a petition for a writ of

24   mandamus challenging a district court ruling because no interlocutory appeal was available. These

25   cases do not govern here, where ITU seeks to have the Court intervene in an administrative action that is

26   not yet final.

27   The All Writs Act provides that the "Supreme Court and all courts established by Act of

28   Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

1   agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  A party seeking an injunction

2   pursuant to the All Writs Act need only show that a court's jurisdiction may be impaired by the related

3   litigation or proceeding.  *See In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2nd Cir. 1985) (noting

4   that All Writs Act injunctions "are needed to prevent third parties from thwarting the court's ability to

5   reach and resolve the merits of the federal suit before it").  Although the Supreme Court has held that, in

6   some circumstances, the All Writs Act can provide a district court with jurisdiction to issue an

7   injunction in an administrative proceeding, such an action requires that the party seeking the injunction

8   establish (1) that the refusal to grant the injunction will defeat the court's review jurisdiction once the

9   agency action is final, and (2) that Congress intended to permit or preclude a status quo injunction.  *See*

10  *V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d 1020, 1029 (11th Cir. 1983) (internal citations

11  omitted).  ITU has failed to articulate any threat to the Court's jurisdiction by allowing the

12  administrative proceeding to go forward that would make such a writ "necessary" or "appropriate."

13  *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Although [the All

14  Writs Act] empowers federal courts to fashion extraordinary remedies when the need arises, it does not

15  authorize them to issue ad hoc writs whenever compliance with statutory procedures appears

16  inconvenient or less appropriate.").

17          **4.      To The Extent The Court Determines It Is Proper To Decide On the Merits
                      ITU's Claim That the Nolan Memorandum is Privileged, The Federal
18                    Defendants Respectfully Request *In Camera* Review**

19          As set out above, ITU has failed to establish a likelihood on the merits of its claims.  If, however,

20  the Court is inclined to decide on the merits ITU's claim that the Nolan Memorandum is privileged in

21  order to reach a determination on ITU's PI Motion, the Federal Defendants respectfully request that the

22  Court first review the Nolan Memorandum *in camera*.

23          Generally speaking, the attorney-client privilege protects confidential disclosures made by a

24  client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures.

25  *United States v. Chen*, 99 F.3d at 1501 (quotation omitted), *cert. denied*, 520 U.S. 1167 (1997).

26  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly

27  construed."  *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir.

28  1980).  The party asserting the attorney-client privilege has the burden of proving that it applies.  *Id*. at

25.  Moreover, a party claiming the privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."  *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).  For the privilege to apply, "the communication must be between the client and lawyer for the purpose of obtaining legal advice."  *Id.*  The mere "fact that a person is a lawyer does not make all communications with that person privileged."  *Id.* at 999.  The party asserting the privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

SEVP reviewed the Nolan Memorandum after it was voluntarily submitted to the agency by a whistleblower, and, further, carefully considered ITU's privilege claim.  *See* Hicks Decl., ¶¶ 14-17. The Nolan Memorandum does not contain any of the language or bear any legend that would indicate that the author believed it was privileged, such as "Confidential" or "Attorney-Client Privileged".  *See id.*  SEVP has consistently taken the position that it did not regard the Nolan Memorandum as privileged.  *See id.*  Further, to the extent that any privilege applied, SEVP has consistently underscored that because the Nolan Memorandum was voluntarily sent to SEVP by an individual who self-identified as an ITU official, ITU implicitly waived any claim to privilege by failing to take reasonable steps to protect the confidentiality of the document.  *See id.*  SEVP also confirmed that its decision to withdraw ITU's certification was not "primarily" motivated by the contents of the Report, as alleged by ITU, but rather by an administrative record detailing ITU's regulatory violations, including its acknowledged production of likely impermissibly altered documents in response to SEVP's lawful request for student records.  *See id.* at ¶¶ 14-23.

The United States Attorney's Office has not reviewed the Nolan Memorandum, and ITU withheld consent for such review.  Declaration of Rebecca A. Falk ("Falk Decl."), ¶¶ 3-4.  While the Federal Defendants do not believe that the Court needs to review the Nolan Memorandum to resolve this motion in Defendants' favor given the arguments set out above, if the Court determines it has jurisdiction over ITU's claims, and believes that reviewing the document would help to resolve such claims, the Federal Defendants respectfully request that ITU provide a copy of the Nolan Memorandum for *in camera* review.  ITU objects to *in camera* review.  Falk Decl. at ¶ 5.  The Federal Defendants

1    further request that the Court permit submission of further arguments regarding the applicability of the

2    attorney-client privilege and waiver at that time.

3           **B.     ITU Has Not Established Irreparable Harm.**

4           ITU has failed to make the required clear showing of irreparable harm absent preliminary relief.

5    *Winter*, 555 U.S. at 20.  A preliminary injunction serves the "limited purpose" of "preserv[ing] the

6    relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451

7    U.S. 390, 395 (1981).  Accordingly, "[a]n essential prerequisite" before granting a preliminary

8    injunction is a showing that irreparable injury is likely in the absence of an injunction.  *See Dollar Rent*

9    *A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985); *Winter*, 555 U.S. at

10   19-20.  "Irreparable harm" is traditionally defined as harm for which there is no adequate legal remedy,

11   such as an award of damages.  *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017), cert.

12   denied, 138 S. Ct. 1279 (2018).  Such harm must also be "concrete and particularized."  *Koff v. Ahern*,

13   No. 14-cv-04680, 2015 WL 1050167, at *3 (N.D. Cal. Mar. 9, 2015) (quoting *Summers v. Earth Island*

14   *Inst.*, 555 U.S. 488, 493 (2009)); *accord Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football*

15   *League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  This standard is demanding:  "Mere injuries, however

16   substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not

17   enough" to qualify as irreparable, and "[t]he possibility that adequate compensatory or other corrective

18   relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."  *Sampson*

19   *v. Murray*, 415 U.S. 61, 90 (1974).

20          Here, ITU asserts that it has been irreparably harmed by the alleged violation of its attorney-

21   client privilege, and that SEVP's administrative proceeding is tainted, which will cause the likely

22   revocation of its SEVP certification, closure of the school, loss of enrollment, loss of employment at

23   ITU, and a lessening of the value of a degree from ITU. PI Mot. at 23:16-26:4. These purported injuries,

24   however, are insufficient to justify the extraordinary relief ITU demands, particularly where the agency

25   has not yet rendered a final determination regarding ITU's certification to enroll nonimmigrant students

26   and ITU has maintained its SEVIS access and ability to enroll nonimmigrant students.  Hicks Decl. at

27   ¶¶ 25-26.

28          ///

First, ITU's assertion that it has been irreparably harmed by "the prolonged loss of confidentiality of its attorney-client communication" is belied by its more than two-year delay in filing its Complaint from its original assertion of privilege regarding the Nolan Memorandum.  PI Mot. at 23:20, Dkt. No. 1.  "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  ITU learned in mid-2016 that SEVP was in possession of the Nolan Memorandum.  *See* Compl., ¶ 34.  Specifically, ITU alleges that on July 26, 2016, SEVP served ITU with a NOIW, which described the alleged misconduct of former school administrators as a ground for the revocation of ITU's certification and cited to the Nolan Memorandum.  *See id*.  On August 26, 2016, ITU sent a letter to SEVP asserting that the Nolan Memorandum was protected by the attorney-client privilege, that ITU had not authorized SEVP to receive a copy, and directing SEVP to return the document.  *See id*. at ¶ 36(a).  ITU did not, however, file its Complaint until October 11, 2018, more than two years after it learned that SEVP had the Nolan Memorandum.  *See* Dkt. No. 1.  ITU filed its PI Motion on December 17, 2018, after the Federal Defendants agreed to stay the administrative action.  *See* Dkt. No. 22.  Given ITU's long delay in filing its Complaint, its request for an injunction should be denied.

Second, ITU claims that the ongoing administrative proceeding is tainted, which will cause "cascading harm." PI Mot. at 23:21; 24:12. Specifically, ITU alleges it is irreparably harmed by the revocation of its SEVP certification and the likely closure of the school.  PI Mot. 24:13-14.  These purported harms, however, are entirely speculative, and "[s]peculative injury does not constitute irreparable injury" sufficient to warrant granting a preliminary injunction." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).  ITU does not allege, nor can it, that its certification has already been revoked, or that there is a certainty that it will be revoked in light of ITU's appeal in the ongoing administrative process.  ITU's appeal, though currently stayed pursuant to the parties' stipulation, provides an opportunity for an independent adjudicator to review ITU's statements and evidence, to assess how the law and SEVP policy were applied by the original adjudicator, and to consider whether to place any reliance on the Nolan Memorandum.  *See* Hicks Decl., ¶¶ 25-26.  The other potential harms identified by ITU are likewise conjecture.  ITU alleges that if SEVP withdraws its certification, it will no longer be able to enroll enough students to continue operating, its employees will

1   lose their jobs, its current students will have to halt their educations, and former students will see the

2   value of their degrees diminish.  PI Mot. 24:23-27.  Such allegations fall well short of demonstrating

3   "immediate threatened injury."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.

4   1988) (citation omitted); accord *Winter*, 555 U.S. at 22 (injury must be likely, not possible).  In addition,

5   ITU's claims about lost employment opportunities are not sufficiently concrete.  *Cf. Ogunleye v.*

6   *Arizona*, 66 F. Supp. 2d 1104, 1111 (D. Ariz. 1999) (finding no irreparable harm where plaintiff claimed

7   her "family will be uprooted . . . and her career will be permanently damaged"); *accord Graphic*

8   *Commc'ns Conference—Int'l Bhd. of Teamsters Local 404M v. Bakersfield Californian*, 541 F. Supp. 2d

9   1117, 1125 (E.D. Cal. 2008) ("In general, the hardships caused by temporary loss of employment do[]

10  not constitute irreparable harm.").

11          Finally, ITU's arguments that its enrollment is declining as a result of the withdrawal

12  proceedings and that it may close if SEVP withdraws its certification do not establish irreparable harm.

13  It is well established that monetary and financial harms are not irreparable injuries.  *E.g., L.A. Mem'l*

14  *Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *Goldie's Bookstore*,

15  739 F.2d at 471 ("Mere financial injury…will not constitute irreparable harm if adequate compensatory

16  relief will be available in the course of litigation.").  ITU asserts that its enrollment has dropped by 37%

17  since the summer of 2017, when SEVP issued its initial Withdrawal on Notice.  PI Mot. at 25:5-19.

18  Although the loss of "an ongoing business representing many years of effort and the livelihood of its

19  [owners] constitutes irreparable harm," here, such an outcome remains speculative in light of the

20  ongoing administrative action.  *Drakes Bay Oyster Co. v. Jewell*, 474 F.3d 1073, 1099 (9th Cir. 2014)

21  (citing *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co*.,749 F.2d 124, 125-26 (2d Cir.

22  1984) (per curium)).  ITU's argument that it will be irreparably harmed by its declining enrollment and

23  the potential closure of the school is undermined by its delay in seeking relief from this Court.  ITU

24  claims its enrollment started to decline in summer 2017, but it waited more than a year to file this case.

25  Again, this delay weighs against a finding of irreparable harm.  *See Oakland Tribune*, 762 F.2d at 1377.

26          This matter is different from a case where the district court held that imminent loss of access to

27  SEVIS after SEVP withdrew its certification, which would lead to a loss of accreditation and require a

28  school's nonimmigrant students to enroll elsewhere, was sufficient to establish immediate and

1    irreparable harm in support of its application for a temporary restraining order. *Herguan v. Immigration*

2    *and Customs Enforcement, et al.*, 2016 WL 7034133 at *3 (N.D. Cal. December 2, 2016); *see also*

3    *Herguan v. Immigration and Customs Enforcement, et al.*, 258 F. Supp. 3d 1050 (N.D. Cal. 2017)

4    (granting the government's motion to dismiss where a certified school failed to exercise institutional

5    control over official who submitted falsified documents after finding that 8 C.F.R. § 214.4(a)(2)

6    "provides [SEVP] with broad powers for withdrawal of certification" to enroll nonimmigrant students,

7    including for the past conduct of removed school officials).  In *Herguan*, however, SEVP's

8    administrative process was final as ICE's administrative appeals body upheld SEVP's decision to

9    withdraw the school's certification. *See* 2016 WL 7034133 at *2.  Here, the administrative action is

10   ongoing in light of ITU's pending appeal.  In addition, ITU's SEVIS access remains unchanged pending

11   the outcome of its stayed administrative appeal.  Significantly, in *Herguan*, plaintiff's requested

12   temporary restraining order was denied because it failed to demonstrate a likelihood of success on its

13   claim that SEVP's conduct in withdrawing its certification was contrary to law. *See* 2016 WL 7034133

14   at *5.

15       Accordingly, ITU has failed to establish that it will be irreparably harmed in the absence of a

16   preliminary injunction.

17   **C.    The Balance of Equities and The Public Interest Weigh Strongly Against Entry of a Preliminary Injunction.**

18

19       Granting a preliminary injunction would be contrary to the public interest.  The balance of harms

20   and the public interest elements of the injunctive relief test merge when the government is the opposing

21   party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

22       At its center, ITU's PI Motion asks this Court to step into an ongoing administrative proceeding

23   to make an evidentiary ruling.  The public consequences of injunctive relief are significant.  Preliminary

24   injunctive relief that impacts SEVP's administrative procedures for withdrawing certification to admit

25   nonimmigrant students, or weighing evidence as part of that process, would disturb the balance achieved

26   between schools who have obtained such certification and the interests of the government in enforcing

27   immigration laws. *See Sampson*, 415 U.S. at 949-50 (noting the "historical denial of all equitable relief

28   in court cases [affecting the administrative process]" because of the "well-established rule that the

1   Government has traditionally been granted the widest latitude in the 'dispatch of its own internal

2   affairs.'") (internal case citations omitted).  Any order that enjoins a governmental agency from

3   enforcing statutes and executive orders promulgated by the duly-elected representatives of the people

4   constitutes an irreparable injury that weighs heavily against the entry of injunctive relief, *see, e.g., New*

5   *Motor Vehicle Bd. v. Orrin W. Fox Co*., 434 U.S. 1345, 1351 (1977), *see also United States v.*

6   *Valenzuela–Bernal*, 458 U.S. 858, 864 (1982) ("The power to regulate immigration—an attribute of

7   sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the

8   political branches of the Federal Government."); *Fogo de Chao (Holdings) Inc. v. U.S. Dep't of*

9   *Homeland Sec*., 769 F.3d 1127, 1151 n.10 (D.C. Cir. 2014) ("[O]ur Constitution places such sensitive

10  immigration and economic judgments squarely in the hands of the Political Branches, not the courts[.]").

11  The injunction ITU seeks would frustrate and displace the administrative process by circumventing the

12  review and appeals process set out in federal regulations.  The public interest, therefore, weighs against

13  the injunctive relief ITU seeks.

14  **V.    CONCLUSION**

15       For the foregoing reasons, the Court should deny ITU's PI Motion.

16  DATED: March 22, 2019                              Respectfully submitted,

17

18                                                     DAVID L. ANDERSON
                                                       United States Attorney

19                                                     */s Rebecca A. Falk*
                                                       REBECCA A. FALK
20                                                     Assistant United States Attorney

21

22

23

24

25

26

27

28