JOSHUA HILL JR. (SBN 250842)
JHill@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JANIE F. SCHULMAN (SBN 130461)
JSchulman@mofo.com
NILES A. PIERSON (SBN 307115)
NPierson@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
INTERNATIONAL TECHNOLOGICAL
UNIVERSITY FOUNDATION, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, in her official capacity as Secretary of the Department of Homeland Security, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, STUDENT AND EXCHANGE VISITOR PROGRAM, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.    5:18-cv-06228-EJD <br><br> Judge:  Hon. Edward J. Davila <br><br> **OPPOSITION TO MOTION TO DISMISS** <br><br> Hearing Date:  June 13, 2019 <br> Time:            9:00 a.m. <br> Place:           Courtroom 4, 5th Floor <br><br> Date Action Filed:  October 11, 2018 <br> Trial Date:  None set |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  ALLEGATIONS OF THE COMPLAINT ............................................................. 2

A.   ITU Is a Nonprofit WASC-Accredited University Offering Technology-Focused Graduate Programs to International Students ...................... 2

B.   ITU Engages Outside Counsel to Prepare the Privileged Report ........................... 2

C.   SEVP Improperly Relies on the Privileged Report ................................................ 3

D.   ITU Makes a Final Effort to Alert the Government to Its Constitutional Obligations ............................................................................................................... 5

E.   SEVP's Administrative Appeals Team Will Be Exposed to the Privileged Report ....................................................................................................................... 5

F.   SEVP's Continued Possession, Use, and Reliance on the Privileged Report Will Continue to Harm ITU ..................................................................................... 6

III. LEGAL STANDARD ............................................................................................. 6

IV.  ARGUMENT ........................................................................................................... 7

A.   The Court Has Subject-Matter Jurisdiction Over ITU's APA Claims .................... 7

1.   The APA's Waiver of Sovereign Immunity Applies ................................... 8

2.   The Court Has Jurisdiction to Provide Declaratory Relief .......................... 9

B.   ITU's APA Claims Are Well Pled ......................................................................... 10

1.   ITU Has Alleged Facts Sufficient to Show Final Agency Action ............. 10

2.   The Parties' Dispute Is Ripe for Judicial Review ..................................... 12

3.   Defendants' Arguments Regarding Exhaustion Are Baseless ................... 15

a.   Exhaustion Is Not Required Here Because ITU Would Suffer Irreparable Harm and It Would Be Futile ......................... 15

b.   Exhaustion Is Not Required Here Because ITU Raises a Colorable Constitutional Challenge to an Agency Procedure ....... 17

c.   Administrative Exhaustion Is an Affirmative Defense that Must Be Pled and Proven by Defendants .................................... 17

C.   Mandamus Relief Is Available Because the Agency Has No Discretion Regarding Attorney-Client Privilege, and the Court Has Prospective Jurisdiction ............................................................................................................ 18

1.   ITU's Allegations Support Relief Under the Mandamus and Venue Act ............................................................................................................... 19

2.   The Court May Issue a Writ in Aid of Its Prospective Jurisdiction Pursuant to the All Writs Act ..................................................................... 20

D.   ITU Has Stated Claims for Violation of Due Process .......................................... 21

V.   CONCLUSION ...................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Aleknagik Natives Ltd. v. Andrus*,
5
    648 F.2d 496 (9th Cir. 1980).................................................................................................15

6
*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014)............................................................................................16

7
*Bell. Atl. Corp. v. Twombly*,
8
    550 U.S. 544 (2007).............................................................................................................7

9
*Bennett v. Spear*,
    520 U.S. 154 (1997)....................................................................................................10, 11
10

11
*Boettcher v. Sec'y of Health & Human Servs.*,
    759 F.2d 719 (9th Cir. 1985)..............................................................................................17

12
*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
13
    188 F.R.D. 189 (S.D.N.Y. 1999) ......................................................................................20

14
*Butler v. Los Angeles County*,
    617 F. Supp. 2d 994 (C.D. Cal. 2008) ..............................................................................22
15

16
*In re Caesars Entm't Operating Co.*,
    562 B.R. 168 (Bankr. N.D. Ill. 2016).................................................................................13

17
*Chamber of Commerce of U.S. v. Reich*,
18
    74 F.3d 1322 (D.C. Cir. 1996) .............................................................................................9

19
*Chavez v. United States*,
20
    No. CV 16 00685 HG/KJM, 2017 WL 1424635 (D. Haw. Apr. 20, 2017)............................17

21
*Civ. Aeronautics Bd. v. Air Transp. Ass'n of Am.*,
    201 F. Supp. 318 (D.D.C. 1961) .......................................................................................21

22
*In re Coleman*,
23
    560 F.3d 1000 (9th Cir. 2009)......................................................................................13, 14

24
*Columbia Riverkeeper v. U.S. Coast Guard*,
    761 F.3d 1084 (9th Cir. 2014).....................................................................................10, 12
25

26
*Commodity Futures Trading Comm'n v. Weintraub*,
    471 U.S. 343 (1985)...........................................................................................................13

27
*Ctr. for Biological Diversity v. Brennan*,
28
    571 F. Supp. 2d 1105 (N.D. Cal. 2007) ............................................................................18

# TABLE OF AUTHORITIES
### (continued)

Page

*Dhakal v. Sessions*,
  895 F.3d 532 (7th Cir. 2018).............................................................................6, 8

*Dist. of Columbia. v. Grp. Ins. Admin.*,
  633 A.2d 2 (D.C. 1993)........................................................................................21

*Doe v. United States*,
  58 F.3d 494 (9th Cir. 1995)...................................................................................7

*F.T.C. v. Dean Foods Co.*,
  384 U.S. 597 (1966)..............................................................................................21

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996)...............................................................................14

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001).............................................................................19

*Haines v. Fed. Motor Carrier Safety Admin.*,
  814 F.3d 417 (6th Cir. 2016)................................................................................8

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  No. CV 08-1885-GHK, 2013 WL 2278122 (C.D. Cal. May 20, 2013).................12, 14, 18, 24

*AE ex rel. Hernandez v. Portillo, No.*
  CV F 09-2204LJODLB, 2010 WL 2719622 (E.D. Cal. July 6, 2010) ......................7

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010)..............................................................14, 16, 20, 21

*Idaho Watersheds Project v. Hahn*,
  307 F.3d 815 (9th Cir. 2002)................................................................................16

*Indep. Mining Co.. Babbitt*,
  105 F.3d 502 (9th Cir. 1997)................................................................................19

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*,
  408 F.3d 638 (9th Cir. 2005)..............................................................................10, 11

*Jama v. Dep't of Homeland Sec.*,
  760 F.3d 490 (6th Cir. 2014).................................................................................7

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) .............................................................................20, 21

1

### TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Lowry v. Soc. Sec. Admin.*,
   No. CV-99-1210-ST, 2000 WL 730412 (D. Or. June 7, 2000) ................................20

4

5

*Maldonado v. N.J. ex rel. Admin. Office of Cs.-Prob. Div.*,
   225 F.R.D. 120 (D.N.J. 2004)................................................................................24

6

7

*Mashiri v. Epsten Grinnell & Howell*,
   845 F.3d 984 (9th Cir. 2017)....................................................................................7

8

9

*Matter of the Search of 636 S. 66th Terrace, Kan. City, Kan.*,
   835 F. Supp. 1304 (D. Kan. 1993) ......................................................12, 14, 16, 18

10

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011)..................................................................................6

11

12

*McCarthy v. Madigan*,
   503 U.S. 140 (1992).................................................................................................17

13

14

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
   858 F.2d 1376 (9th Cir. 1988)..................................................................................9

15

*In re Napster, Inc. Copyright Litig.*,
   479 F.3d 1078 (9th Cir. 2007)................................................................................22

16

17

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017)..................................................................................9

18

19

*NetCoalition v. S.E.C.*,
   715 F.3d 342 (D.C. Cir. 2013) .................................................................................7

20

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
   465 F.3d 977 (9th Cir. 2006)..................................................................................10

21

22

*Patel v. Reno*,
   134 F.3d 929 (9th Cir. 1997)..................................................................................19

23

*Proyecto San Pablo v. I.N.S.*,
   189 F.3d 1130 (9th Cir. 1999).............................................................................8, 21

24

25

*Razaq v. Poulos*,
   No. C06-2461 WDW, 2007 WL 61884 (N.D. Cal. Jan. 8, 2007)...........................19

26

27

*Richards v. Jain*,
   168 F. Supp. 2d 1195 (W.D. Wash. 2001) ...................................................... *passim*

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Rivera v. Internal Revenue Serv.*,
4
    708 F. App'x 508 (10th Cir. 2017) ........................................................................9

5
*Rochin v. California*,
    342 U.S. 165 (1952)................................................................................................23
6

*Sanchez v. Grandview Sch. Dist. No. 200*,
7
    No. CV-10-3118-EFS, 2012 WL 12918718 (E.D. Wash. Jan. 24, 2012)................18

8
*SEC v. G. C. George Sec., Inc.*,
    637 F.2d 685 (9th Cir. 1981)................................................................................15
9

10
*Sharkey v. O'Neal*,
    778 F.3d 767 (9th Cir. 2015)..................................................................................7

11
*Stellar IT Sols., Inc. v. U.S. Citizenship & Immigration Servs.*,
12
    No. CV 18-2015 (RC), 2018 WL 6047413 (D.D.C. Nov. 19, 2018)......................15

13
*Telecomm. Research & Action Ctr. v. F.C.C.*,
    750 F.2d 70 (D.C. Cir. 1984) ...............................................................................21
14

15
*United States v. Chevron Corp.*,
    No. C 94-1885 SBA, 1996 WL 444597 (N.D. Cal. May 30, 1996) ............13, 14, 19

16
*United States v. Neill*,
17
    952 F. Supp. 834 (D.D.C. 1997) ..........................................................................24

18
*United States v. Schell*,
    775 F.2d 559 (4th Cir. 1985)................................................................................23
19

20
*United States v. Segal*,
    313 F. Supp. 2d 774 (N.D. Ill. 2004) ...................................................................24

21
*United States v. Stinson*,
22
    647 F.3d 1196 (9th Cir. 2011)..............................................................................23

23
*United States v. Voigt*,
    89 F.3d 1050 (3d Cir. 1996)................................................................................23
24

25
*United States v. White*,
    879 F.2d 1509 (7th Cir. 1989)..............................................................................25

26
*V. Real Estate Grp., Inc. v. U.S. Citizenship & Immigration Servs.*,
27
    85 F. Supp. 3d 1200 (D. Nev. 2015) ...................................................................9, 21

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Whitewater Draw Nat. Res. Conservation Dist. v. Nielsen,*
No. 3:16-CV-02583-L-BLM, 2018 WL 4700494 (S.D. Cal. Sept. 30, 2018) ........................6, 8

*Wolfe v. Strankman,*
392 F.3d 358 (9th Cir. 2004)......................................................................................................6

*Yordy v. Astrue,*
No. 1:09-CV-03028-NJV, 2010 WL 653099 (N.D. Cal. Feb. 22, 2010)...................................7

**Statutes & Other Authorities**

5 U.S.C. § 702 ............................................................................................................................8, 9

5 U.S.C. § 706(2) ..........................................................................................................................22

28 U.S.C. § 1331 ...................................................................................................................7, 8, 21

28 U.S.C. § 1361 .............................................................................................................................8

Fed. R. Civ. P. 12(b)(1)...........................................................................................................6, 8, 9

Fed. R. Civ. P. 12(b)(6)........................................................................................................6, 7, 22

Fed. R. Civ. P. 15(a) ......................................................................................................................7

8 C.F.R. § 214.4(f) .........................................................................................................................4

1    **I.      INTRODUCTION**

2          Defendants' effort to avoid a reckoning for its intrusion into International Technological

3    University's ("ITU") privileged communications with its counsel is riddled with errors of law and

4    fact and should be denied.  Most fundamentally, Defendants' motion time and again erroneously

5    asserts that ITU's case seeks a disposition on the whole of the administrative proceedings now

6    pending in Washington, D.C.  Defendants' assertion is obviously contradicted by the Complaint,

7    and it is difficult to understand how one could reasonably construe the narrow relief expressly

8    stated and sought by ITU—protection of its privileged communications—as a wholesale attempt

9    to adjudicate the entirety of the administrative proceedings.

10         ITU initiated this case because the Department of Homeland Security's Student and

11   Exchange Visitor Program ("SEVP") has been in unauthorized possession of a privileged

12   communication between ITU and its counsel; has refused to return the document; has actively

13   concealed how it came into possession of the document; and has relied upon the document and its

14   contents in its to attempt to revoke ITU's ability to admit nonimmigrant students.  (Compl. ¶ 2.)

15   Accordingly, ITU seeks a declaration that SEVP's actions are contrary to the laws of the United

16   States and the Constitution, and to enjoin Defendants from any and all use of documents and

17   information protected by ITU's attorney-client privilege or the attorney work-product doctrine.

18   (*Id.* at ¶ 10.)  Defendants, unable to defend these intentional acts, instead misconstrue the narrow

19   relief sought by ITU in favor an artificial argument that ITU seeks to adjudicate SEVP's entire

20   challenge to ITU's certification.  Defendants construct this artificial narrative so that they can

21   resort to familiar arguments grounded in the administrative exhaustion doctrine.  The motion fails

22   for many reasons.

23         Defendants' motion to dismiss on jurisdictional grounds fails because the Complaint

24   raises a federal question; the Administrative Procedure Act's ("APA") waiver of sovereign

25   immunity applies, and Defendants have failed to identify an exception; and the Court has subject-

26   matter jurisdiction to enter declaratory relief in conjunction with ITU's federal claims.

27         Defendants' motion to dismiss the APA claims for failure to state a claim fails because

28   ITU has alleged sufficient facts to show that SEVP's failure to honor ITU's privilege assertion

1   constituted final agency action, this dispute is ripe for litigation, and ITU has exhausted its

2   administrative remedies or was otherwise excused from doing so.  Defendants' attacks on the

3   claims arising out of the Mandamus and Venue Act and the All Writs Act fail because all

4   conditions exist for the Court to issue alternative relief through the a writ of mandate.  Finally, the

5   Complaint alleges sufficient facts to support a due process violation.

6       For all of these reasons, ITU respectfully asks this Court to deny the motion to dismiss.

7   **II.     ALLEGATIONS OF THE COMPLAINT**

8       **A.     ITU Is a Nonprofit, WASC-Accredited University Offering**
           **Technology-Focused Graduate Programs to International Students.**
9

10      ITU is a nonprofit university accredited by the Western Association of Schools and

11   Colleges ("WASC") Senior Commission for Universities and Colleges offering

12   technology-focused graduate degree programs and conducting independent research in high

13   technology.  (Compl. ¶ 20.)  A substantial majority of ITU's students are non-American citizens

14   who have obtained F-1 visas, which allow them to travel to the United States to pursue academic

15   studies.  (*Id.* at ¶ 23.)  On behalf of the Department of Homeland Security and Immigration and

16   Customs Enforcement, SEVP manages schools and nonimmigrant students in the F visa

17   classification.  (*Id.* at ¶ 25.)  Schools seeking certification to issue Form I-20 to prospective

18   nonimmigrant students must apply to SEVP for certification.  (*Id.* at ¶ 33.)  ITU first received

19   SEVP certification in 2003 and has been recertified continuously from 2003 until the SEVP

20   review giving rise to this litigation.  (*Id.*)

21      **B.     ITU Engages Outside Counsel to Prepare the Privileged Report.**

22      In 2014, ITU engaged the law firm of Nolan, Barton & Olmos LLP (the "Nolan Law

23   Firm") to investigate certain recordkeeping concerns.  (Compl. ¶ 30.)  A Nolan Law Firm

24   attorney, Daniel Olmos, led this internal investigation, with support from his colleagues.  (*Id.*)

25   Upon completion of the internal investigation in September 2014, Olmos authored a

26   memorandum to ITU.  (*Id.*)  The final version of the memorandum is dated October 6, 2014 (the

27   "Privileged Report" or "Report").  (*Id.*)  The Privileged Report contains the Nolan Law Firm's

28   thoughts and impressions as counsel to ITU.  (*Id.*)  During and after the internal investigation, the

1   Nolan Law Firm advised ITU regarding its SEVP certification.  (*Id.* at ¶ 31.)  While the Nolan

2   Law Firm was investigating and advising ITU, both ITU and the Nolan Law Firm understood that

3   the investigation, the Privileged Report, and the related legal advice involved confidential

4   attorney-client communications subject to the protections of the attorney-client privilege.  (*Id.* at

5   ¶¶ 31-32.)  Both ITU and the Nolan Law Firm further understood that the Privileged Report

6   constituted confidential attorney work-product.  (*Id.*)  ITU never authorized the production of the

7   Privileged Report to any third party.  (*Id.* at 31.)  At no time did the Nolan Law Firm have reason

8   to believe or expect that ITU intended to waive attorney-client privilege or work-product

9   protections as to the Privileged Report.  (*Id.* at 32.)

10   **C.      SEVP Improperly Relies on the Privileged Report.**

11   On July 26, 2016, SEVP served ITU with a Notice of Intent to Withdraw ITU's

12   certification ("Notice of Intent").  (Compl. ¶ 34.)  The Notice of Intent asserted that, "[o]n

13   January 13, 2015, SEVP received a copy of an October 6, 2014 report, commissioned by

14   International Technological University on May 2, 2014, summarizing an investigation 'regarding

15   ITU response to January 2014 Student and Exchange Visitor Program Request for Evidence,

16   Including History of Related Conduct.'"  (*Id.*)  Upon ITU's review of the Notice of Intent, it

17   became clear that SEVP's decision to withdraw ITU's certification was primarily based on

18   uncorroborated information SEVP had learned through its unauthorized possession and review of

19   the Privileged Report.  (*Id.* at ¶ 35.)  Prior to receipt of the Notice of Intent on July 26, 2016, ITU

20   did not know, and had no reason to know, that SEVP had possessed a copy of the Privileged

21   Report for the prior year-and-a-half.  (*Id.*)  ITU promptly (1) asserted its attorney-client privilege,

22   (2) that SEVP return all copies of the Privileged Report, and (3) requested that SEVP not rely on

23   the Report for any action by SEVP with respect to ITU's certification.  (*Id.* at ¶ 36.)  In response,

24   SEVP refused to return the Privileged Report and offered various and shifting justifications for its

25   unauthorized possession.  (*Id.*)  Specifically:

26           a)      On August 26, 2016, ITU wrote to SEVP's Analysis and Operations Center

27                   explaining that the Privileged Report was protected by the attorney-client privilege

28                   and that ITU had not authorized SEVP to receive a copy.  (*Id.*)

b)      On September 6, 2016, ITU received a letter response from SEVP denying that the Privileged Report was an attorney-client privileged document.  (*Id.*)

c)      On September 13, 2016, ITU sent another letter reiterating that the Privileged Report was privileged and requesting that SEVP provide the basis for its assertion that the privilege was waived.  (*Id.*)

d)      On October 3, 2016, ITU received a further response from SEVP declining to provide any explanation of how or from whom SEVP received the Privileged Report.  (*Id.*)

e)      On October 21, 2016, in its third letter to SEVP, ITU further explained the basis for its understanding of the privileged nature of the Privileged Report and again asked that SEVP provide support for its position that ITU's attorney-client privilege had been waived.  (*Id.*)

f)      On October 31, 2016, SEVP responded with a three-sentence letter reasserting its conclusion that the Privileged Report was not privileged and refusing to provide any further details.  (*Id.*)

On September 26, 2016, after the multiple unsuccessful attempts to prompt a return of the Privileged Report, ITU formally responded to the Notice of Intent (the "Response to the Notice of Intent").  (Compl. ¶ 37.)  Pursuant to 8 C.F.R. § 214.4(f), in the Response to the Notice of Intent, ITU requested a mandatory interview prior to SEVP's final determination on ITU's certification. (*Id.*)  In the Response to the Notice of Intent, ITU again notified SEVP that it was improperly relying on an attorney-client privileged communication as the basis for its allegations and again asked SEVP to return the Privileged Report.  (*Id.*at ¶ 38.)

Without responding to ITU's request for an interview, on July 18, 2017, SEVP served ITU with a Withdrawal on Notice (the "2017 Withdrawal") in which SEVP announced that ITU's certification was being withdrawn.  (Compl. ¶ 39.)  Despite ITU's repeated efforts to claw back the Privileged Report, SEVP explicitly based the withdrawal of certification on the privileged, hearsay statements contained in the Privileged Report.  (*Id.*)  ITU appealed on several grounds, including that no interview had been granted and that the 2017 Withdrawal improperly relied on

the Privileged Report.  (*Id.* at ¶ 40.)  On September 28, 2017, SEVP rescinded the 2017

Withdrawal and reopened the proceedings because it had failed to provide the mandatory

interview.  (Compl. ¶ 41.)  A telephonic interview was conducted on October 18, 2017, to allow

ITU to address grounds for withdrawal raised in the Notice of Intent.  (*Id.*)  After granting ITU the

perfunctory interview, SEVP issued a new Withdrawal on Notice on April 18, 2018, announcing

again that it was withdrawing ITU's SEVP certification (the "2018 Withdrawal").  (Compl. ¶ 42.)

SEVP doubled down on the use of the Privileged Report as a basis for withdrawing ITU's

certification.  (*Id.*)  SEVP stated that ITU had waived the privilege, but SEVP failed to provide

any facts or evidence supporting that conclusion.  (*Id.*)  SEVP summarily dismissed ITU's

arguments regarding the Privileged Report and explicitly indicated that SEVP was, in fact, relying

on the contents of the Privileged Report in seeking to withdraw ITU's certification.  (*Id.*)  ITU

still does not know how SEVP obtained the Privileged Report, because SEVP has never provided

any evidence regarding the circumstances of its disclosure.  (*Id.* at ¶ 41.)

> **D.     ITU Makes a Final Effort to Alert the Government to Its Constitutional Obligations.**

On August 6, 2018, ITU wrote yet another letter to SEVP to alert its staff to the continued

violation of ITU's attorney-client privilege and its constitutional obligation to ensure that all

copies of the Privileged Report be returned or destroyed.  (Compl. ¶ 44.)  ITU copied

Immigration and Custom Enforcement's ("ICE") Principal Legal Advisor Tracy, Short; ICE's

Associate Director of its Office of Professional Responsibility, Waldemar Rodriguez; and the

U.S. Attorney's Office for the Northern District of California on the correspondence.  (*Id.*)

> **E.     SEVP's Administrative Appeals Team Will Be Exposed to the Privileged Report.**

On July 16, 2018, ITU submitted its brief in support of the appeal of the 2018 Withdrawal.

(Compl. ¶ 49.)  The SEVP appeals process does not require that SEVP or any of its

representatives file any sort of opposition brief, and it does not provide ITU with any further

opportunities to reply to any arguments presented by SEVP's staff.  (*Id.*)  Because the 2018

Withdrawal explicitly and expansively refers to, quotes from, and attaches the Privileged Report,

1  as soon as an adjudicator takes on the appeal, SEVP's Administrative Appeals Team will be

2  exposed to the contents of the Privileged Report.  (*Id.*)

3        **F.**      **SEVP's Continued Possession of, Use of, and Reliance on the Privileged Report Will Continue to Harm ITU.**

4

5        ITU is harmed by SEVP's continuing, intentional intrusion into ITU's attorney-client

6  privilege.  (Compl. ¶¶ 46, 50.)  ITU will be further harmed by SEVP's possession of, use of, and

7  reliance on the Privileged Report in the adjudication of ITU's certification.  (*Id.* at ¶ 49.)  If any

8  member of the Administrative Appeals Team is permitted to review the case before an injunction

9  is issued, she will be exposed to the contents of the Privileged Report.  (*Id.*)  Just as the

10  administrative proceedings to date have been tainted by SEVP's possession of the Privileged

11  Report, any further adjudicative process will be prejudiced by knowledge of the contents of the

12  Report.  (*Id.*)

13  **III.**    **LEGAL STANDARD**

14        In reviewing a motion under Rule 12(b)(1) for lack of subject-matter jurisdiction, the

15  Court "'must accept as true all material allegations of the complaint and must construe the

16  complaint in favor of the complaining party.'"  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th

17  Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  "Plaintiff is not required to

18  provide evidence outside the pleadings" when "the defendants have made a facial rather than a

19  factual attack on subject matter jurisdiction."  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

20  2004).  To convert a motion to dismiss under Rule 12(b)(1) to a factual motion, a defendant must

21  present "affidavits or other evidence properly brought before the court."  *Id.*  That has not

22  happened here because Defendants have not submitted any evidence extrinsic to the Complaint.

23  Therefore, the Court should "draw all reasonable inferences in [Plaintiff's] favor."  *Id.*  In

24  addition, a motion based on the elements of the APA, including finality and exhaustion, is only

25  proper under Rule 12(b)(6) for failure to state a claim, not under Rule 12(b)(1) for lack of subject-

26  matter jurisdiction.  *See Whitewater Draw Nat. Res. Conservation Dist. v. Nielsen*, No. 3:16-CV-

27  02583-L-BLM, 2018 WL 4700494, at *2 (S.D. Cal. Sept. 30, 2018); *Dhakal v. Sessions*, 895 F.3d

28  532, 538 (7th Cir. 2018).

1    Under Rule 12(b)(6), the court must assume the complaint's allegations are true and draw

2    all inferences in the plaintiff's favor. *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988

3    (9th Cir. 2017). "Rule 12(b)(6) motions are viewed with disfavor and are properly granted under

4    extraordinary circumstances." *Yordy v. Astrue*, No. 1:09-CV-03028-NJV, 2010 WL 653099, at

5    *2 (N.D. Cal. Feb. 22, 2010). "*Twombly* and *Iqbal* do not require that the complaint include all

6    facts necessary to carry the plaintiff's burden." *AE ex rel. Hernandez v. Portillo*, No. CV F 09-

7    2204LJODLB, 2010 WL 2719622, at *4 (E.D. Cal. July 6, 2010) (quoting *al-Kidd v. Ashcroft*,

8    580 F.3d 949, 977 (9th Cir. 2009), *rev'd & remanded*, 563 U.S. 731 (2011)). "'Asking for

9    plausible grounds to infer' the existence of a claim for relief 'does not impose a probability

10   requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation

11   that discovery will reveal evidence' to prove that claim." *Id.* (quoting *Bell. Atl. Corp. v.

12   Twombly*, 550 U.S. 544, 556 (2007)). Finally, "a district court should grant leave to amend even

13   if no request to amend the pleading was made, unless it determines that the pleading could not

14   possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th

15   Cir. 1995); *see also* Fed. R. Civ. P. 15(a); *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

16   **IV.   ARGUMENT**

17        **A.     The Court Has Subject-Matter Jurisdiction Over ITU's APA Claims.**

18        Defendants' argument that the Court lacks jurisdiction should be rejected for the simple

19   reason that ITU's claims arise under the APA and the U.S. Constitution and assert that a federal

20   government agency violated federal law. (Compl. ¶ 10 ("By this action, ITU seeks a declaration

21   that SEVP's actions are contrary to the laws of the United States and the Constitution, and to

22   enjoin Defendants from any and all use of documents protected by ITU's attorney-client privilege

23   and the attorney work-product doctrine.").) "[T]he federal question statute, 28 U.S.C. § 1331,

24   'confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA

25   of its own force may serve as a jurisdictional predicate.'" *Jama v. Dep't of Homeland Sec.*, 760

26   F.3d 490, 494 (6th Cir. 2014) (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1997)); *see also*

27   *NetCoalition v. S.E.C.*, 715 F.3d 342, 347 (D.C. Cir. 2013) (stating that "an APA challenge falls

28   within the general federal question jurisdiction of the district court and must be brought there ab

1    initio").  The "general jurisdictional statutes"—28 U.S.C. §§ 1331 and 1361—confer jurisdiction

2    in this case, and there is no competent argument to the contrary.

3           Defendants argue that a purported lack of a waiver of sovereign immunity strips the Court

4    of jurisdiction.  (MTD at 10.)  Defendants claim that ITU's pending administrative proceedings

5    divest the court of jurisdiction.  This is without merit, because the APA is *not* a jurisdictional

6    statute.  *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016)

7    ("Because the APA is not a jurisdiction-conferring statute, the elements of a claim under the

8    APA, including the final agency action requirement, are not jurisdictional."); *Dhakal v. Sessions*,

9    895 F.3d 532, 538 (7th Cir. 2018) ("we agree with our colleagues on the Sixth Circuit that

10   because the APA is not a jurisdiction-conferring statute, the elements of a claim under the APA,

11   including exhaustion, are not jurisdictional.'") (citation omitted).  As one district court recently

12   stated, while the government often "characterize[s] the lack of finality . . . as

13   a jurisdictional issue, 'the fact that an agency decision is not final under the APA is not a defect in

14   subject matter jurisdiction.'"  *Whitewater Draw Nat. Res. Conservation Dist.*, 2018 WL 4700494,

15   at *2 (quoting *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002), *abrogated

16   on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).  "In the

17   absence of a specific statutory provision to the contrary, district courts have jurisdiction to review

18   agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331."  *Proyecto

19   San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 (9th Cir. 1999).

20          Under Rule 12(b)(1), therefore, all that must be shown is that ITU's Complaint raises a

21   federal question.  It does.  Therefore, Defendants' motion to dismiss the APA claims for lack of

22   subject-matter jurisdiction under Rule 12(b)(1) should be denied.

23                        **1.     The APA's Waiver of Sovereign Immunity Applies.**

24          Defendants separately argue that the APA's waiver of sovereign immunity does not apply.

25   This argument is equally flawed.  Section 702 of the APA provides that an action seeking relief

26   "other than money damages" against an "agency or an officer or employee thereof . . . shall not be

27   dismissed nor relief therein be denied on the ground that it is against the United States."  5 U.S.C.

28   § 702.  Courts are unequivocal: "§ 702 enacted a broad, unqualified waiver for all non-monetary

1    claims for relief against federal agencies." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144,

2    1172 (9th Cir. 2017).  The "APA's waiver of sovereign immunity applies to any suit whether

3    under the APA or not." *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir.

4    1996).  ITU has filed claims under the APA and the U.S. Constitution.  ITU's Complaint seeks

5    only declaratory and injunctive relief from a federal government agency's actions.  Here,

6    "[b]ecause Plaintiffs' suit against the [Defendant] does not seek monetary relief, it falls within the

7    APA's waiver of sovereign immunity unless an exception to the waiver applies." *Rivera v.*

8    *Internal Revenue Serv.*, 708 F. App'x 508, 511 (10th Cir. 2017).  Defendants have failed to

9    identify any exception to the APA's waiver of sovereign immunity that might apply in this case.

10            **2.     The Court Has Jurisdiction to Provide Declaratory Relief.**

11           Defendants assert that the Declaratory Judgment Act ("DJA") does not establish federal

12   jurisdiction (MTD at 17-18)—something that ITU *never* claims (Compl. ¶ 17).  While ITU never

13   alleged that the DJA conferred jurisdiction, it goes without saying that the Court has jurisdiction

14   to issue declaratory relief so long as it has jurisdiction pursuant to the APA, the Mandamus and

15   Venue Act, or the United States Constitution.  *See Morongo Band of Mission Indians v. Cal. State*

16   *Bd. of Equalization*, 858 F.2d 1376, 1384 (9th Cir. 1988) ("Whether the action is styled as one for

17   interpleader or for declaratory relief… Federal jurisdiction over both types of actions is proper if

18   the cause(s) of action anticipated by the plaintiff's suit would arise under federal law."); *V. Real*

19   *Estate Grp., Inc. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1200, 1210 (D. Nev.

20   2015) ("The Court also finds that Plaintiffs' cause of action for declaratory judgment falls within

21   the purview of the APA since it challenges a final action of the USCIS and does not seek

22   monetary relief.").  Moreover, the court also has jurisdiction to provide declaratory relief because

23   ITU has pled valid federal claims pursuant to the APA, the Mandamus and Venue Act, and the

24   All Writs Act.  SEVP's motion to dismiss pursuant to Rule 12(b)(1) should be denied.[1]

25

26            [1] Notably, by omission, Defendants have conceded that the court has jurisdiction to hear a
     constitutional claim.  They have argued only that ITU fails to state such a claim.  As explained
27   below, ITU has asserted a valid constitutional claim.

28

**B.     ITU's APA Claims Are Well Pled.**

Defendants next argue that ITU's APA claims should be dismissed because the administrative proceedings are pending.  This misses the point.  SEVP has taken final agency action with respect to the attorney-client issue, and besides, the issues raised in this case are ripe, and exhaustion of administrative remedies is not required.

**1.     ITU Has Alleged Facts Sufficient to Show Final Agency Action.**

Defendants' argument begins from a false premise that the Complaint challenges the withdrawal of ITU's certification.  That is not so.  ITU does not seek to adjudicate its certification in this federal court proceeding.  Rather, this case concerns only whether SEVP may possess, review, rely upon, and publish the Privileged Report, not SEVP's authority to withdraw ITU's certification.  (Compl. ¶¶ 57, 67-68, 78, 83, p. 19 ["Prayer for Relief"].)  *That* agency action— *i.e.*, SEVP's handling of the Privileged Report—is final, and, therefore, Defendants' retreat to arguments grounded in ripeness and exhaustion should be rejected.

The rule has long been that, for agency action to be final, it must "mark the consummation of the agency's decision making process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (citations omitted).  The Ninth Circuit "focus[es] on the practical and legal effects of the agency action" and views finality in a "pragmatic and flexible manner." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted); *see also Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (considering any "direct and immediate effect on the day-to-day operations of the party seeking review," and if "immediate compliance with the [action's] terms is expected") (citation omitted). "[C]ourts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled.  Under the APA, for instance, even if the agency does not label its decision or action as final, it may be reviewable if it 'has the status of law or comparable legal force' or if 'immediate compliance with its terms is expected.'" *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094-95 (9th Cir. 2014); *see also Bonneville Power Admin.*, 408 F.3d at 646 ("applying these principles, we have determined that certain factors provide an

1   indicia of finality, such as 'whether the [action] amounts to a definitive statement of the agency's

2   position, whether the [action] has a direct and immediate effect on the day-to-day operations of

3   the party seeking review, and whether immediate compliance [with the terms] is expected.'")

4          Defendants would have the Court believe that the final agency action to be evaluated here

5   is the adjudication of ITU's certification to admit nonimmigrant students.  (MTD at 11-13.)  The

6   true agency action to be considered, however, is SEVP's possession, review, and use of the

7   Privileged Report at every step in the administrative proceedings, culminating in the use, citation,

8   and attachment of the Privileged Report in the 2018 Withdrawal.  (Compl. ¶ 49.)  Defendants'

9   steadfast refusal to honor ITU's claim of privilege amounts to a final determination of whether

10  SEVP would continue to violate ITU's attorney-client privilege.

11         As alleged in the Complaint, after ITU learned of SEVP's possession and use of the

12  Privileged Report, it repeatedly notified SEVP that the Report was privileged and requested its

13  return.  (Compl. ¶¶ 35-36.)  SEVP, first on September 6, 2016, and then repeatedly thereafter (on

14  October 3, 2016 and on October 31, 2016) refused to return the Privileged Report and unilaterally

15  declared that ITU's privilege assertion was invalid.  (*Id.* at ¶¶ 36, 43.)  SEVP ultimately cited the

16  Privileged Report in the 2018 Withdrawal and ignored ITU's August 6, 2018 letter again seeking

17  the return of the Report.  (*Id.* at ¶¶ 43-44.)  Any of these actions satisfy the condition that the

18  agency's action "mark the consummation of the agency's decision making process."  *Bennett*, 520

19  U.S. at 177-78.  SEVP first came into possession of the Report in 2015, actively concealed that

20  possession from ITU for one-and-a-half years, and then later claimed that ITU had no right to

21  assert privilege over the document.  (Compl. ¶ 5.)  By any measure, SEVP's determination as to

22  whether it would honor ITU's attorney-client privilege is final.

23         Second, SEVP's final action had a "direct and immediate effect on the day-to-day

24  operations of the party [ITU] seeking review," and "immediate compliance with [or acquiescence

25  to] the [SEVP's] terms [was] expected."  *Bonneville Power Admin.*, 408 F.3d at 646 (citation

26  omitted).  The immediate consequences of SEVP's final action included the loss of the

27  confidentiality that should have attached to the Report, the compromising of SEVP personnel

28  who had been prejudiced by knowledge of the Report's contents, and the taint to the proceedings

based on exposure to and reliance upon the Report's contents.  *See, e.g.*, *Matter of the Search of 636 S. 66th Terrace, Kan. City, Kan.*, 835 F. Supp. 1304, 1306 (D. Kan. 1993) ("If the privileged communications materials are permitted to remain in the hands of the government it is apparent to the court that any confidentiality of the communications involved may well be lost, and the movants will be effectively denied the protection of the privilege."); *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK (AGRx), 2013 WL 2278122, at *3 (C.D. Cal. May 20, 2013) (finding prejudice where "counsel not only used privileged materials to craft their claims, but incorporated verbatim content from those materials in the pleadings"); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1200 (W.D. Wash. 2001) ("No matter through which ethical lens the possession and review of [privileged material] is viewed, **it is apparent that eleven months of access to privileged materials creates an appearance of impropriety and so taints the proceedings that the harsh remedy of disqualification is justified**.") (emphasis added).

In addition, "immediate compliance" was not merely "expected," it had already transpired. *Columbia Riverkeeper*, 761 F.3d at 1095.  SEVP not only reviewed the Privileged Report, it incorporated the entire document into the 2018 Withdrawal.  (Compl. ¶ 49.)  Indeed, the Ninth Circuit's pragmatic approach to determining agency final action has particular currency on these unique and troubling facts.  While there does not appear to be a case addressing this particular agency action – the knowing and willful violation of attorney-client privilege – practically speaking, ITU had no redress when SEVP refused to return the Report or honor ITU's privilege.  This Court should adopt the reasoning of the Ninth Circuit in the *Columbia Riverkeeper* case, where it stated that courts should look to the "practical effects of an agency's decision . . . even if the agency does not label its decision or action as final."  761 F.3d at 1094.  By any objective, reasonable, or practical standard, SEVP's unilateral decision to possess, review, and use the Privileged Report was a final action for purposes of the sovereign-immunity analysis.  The motion to dismiss should be denied on this ground.

## 2.   The Parties' Dispute Is Ripe for Judicial Review.

Defendants also argue that ITU's APA claims should be dismissed for lack of judicial ripeness.  Once again, Defendants' arguments fail, in large part because they conflate the

1   adjudication of ITU's certification with what is actually at issue in this case: SEVP's violation of

2   ITU's attorney-client privilege.  (MTD at 13-14.)  The judicial doctrine of ripeness has two

3   components—one constitutional and one prudential.  *In re Coleman*, 560 F.3d 1000, 1004 (9th

4   Cir. 2009).  Neither theory is available to Defendants.

5          Constitutional ripeness concerns whether a claim is sufficiently concrete to constitute a

6   controversy for purposes of Article III of the Constitution.  *Id.* at 1005 ("The issues presented

7   must be definite and concrete, not hypothetical or abstract.") (internal citations).  "Ripeness

8   presents a constitutional issue and thus a jurisdictional one only when a plaintiff's injury depends

9   on so many future events that a judicial opinion would be advice about remote contingencies."  *In*

10  *re Caesars Entm't Operating Co.*, 562 B.R. 168, 175 (Bankr. N.D. Ill. 2016) (internal citation

11  omitted).

12         Here, there are no future contingencies that stand in the way of adjudicating ITU's claim.

13  ITU asserted on numerous occasions that a particular document, the Privileged Report, is

14  protected by attorney-client privilege.  (Compl. ¶¶ 36, 38, 40, 44.)  SEVP did not produce

15  evidence of waiver as it was required to do before reviewing and relying upon that report.  *United*

16  *States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996)

17  (stating that if a party "asserts that the privilege which initially attached to the communication in

18  question was subsequently waived, that party must bear the burden of *production* on the issue of

19  waiver.") (citation omitted).  Indeed, SEVP refused to identify who disclosed the Privileged

20  Report, acknowledging that ITU did not know and therefore could not have authorized waiver.

21  (Compl. ¶ 36.)  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49

22  (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's

23  management . . . [who] must exercise the privilege in a manner consistent with their fiduciary

24  duty to act in the best interests of the corporation and not of themselves as individuals.").  SEVP

25  has in fact reviewed the Report and relied on it in issuing both the 2017 and the 2018

26  Withdrawals.  (Compl. ¶¶ 39, 43.)

27         Courts have specifically held that the loss of confidentiality of attorney-client privileged

28  documents is an injury warranting the exercise of the court's equitable powers.  *See, e.g.*,

1    *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) ("[A]n appeal after disclosure of the

2    privileged communication is an inadequate remedy for the irreparable harm a party likely will

3    suffer if erroneously required to disclose privileged materials or communications.") (quoting

4    *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1491 (9th Cir. 1989)); 835

5    F. Supp. at 1306 ("If the privileged communications materials are permitted to remain in the

6    hands of the government it is apparent to the court that any confidentiality of the communications

7    involved may well be lost, and the movants will be effectively denied the protection of the

8    privilege.  Once lost, confidentiality cannot be restored.  Movants have no other remedy, and their

9    injury is irreparable.").  Here, the record is indisputable that SEVP is in possession of the

10   Privileged Report and *refuses* to return it.  For that reason alone, ITU has suffered harm – and

11   continues to suffer harm.  Secondary, though no less important, is the harm to ITU from

12   prejudiced administrative proceedings, and arguably tainted SEVP documents and personnel.  *See*

13   *636 S. 66th Terrace*, 835 F. Supp. at 1306; *Kinetic Concepts*, 2013 WL 2278122 at *3; *Richards*,

14   168 F. Supp. 2d at 120.

15        Regarding prudential ripeness, courts apply "a two-part test . . . in the administrative

16   context: 'the fitness of the issues for judicial decision' and 'the hardship to the parties of

17   withholding court consideration.'"  *In re Coleman*, 560 F.3d at 1006 (citing *Abbott Labs. v.*

18   *Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano*, 430 U.S. at 99).

19   For purposes of fitness, "[l]egal questions that require little factual development are more likely

20   to be ripe." *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir. 1996).  The

21   question of whether a document is privileged is predominantly legal, and no further factual

22   development is required to determine the result.  SEVP has had numerous opportunities to

23   produce evidence that the privilege was waived—by responding to any of ITU's numerous letters

24   asserting privilege, or responding to ITU's briefs filed with the administrative agency, or

25   disclosing the information orally in the "interview." (Compl. ¶¶ 36, 38, 40-44.)  SEVP simply

26   refused to produce any evidence that a waiver occurred.  (*Id.* at ¶¶ 36, 43.)  *See Chevron Corp.*,

27   1996 WL 444597, at *4.  Because these facts, which must be accepted as true, allow the Court to

28   decide this issue as a matter of law, the issue is fit for judicial determination.

1    Finally, because the hardship to ITU is clear (*supra* at pp. 5-6), the Complaint states

2    claims that are fit for judicial review.  The motion should be denied.

3                **3.      Defendants' Arguments Regarding Exhaustion Are Baseless.**

4    In their final attempt to defeat ITU's APA claims, Defendants argue that ITU cannot

5    proceed because it has not exhausted administrative remedies.  This argument, too, should be

6    rejected.  The Ninth Circuit recognizes that "exhaustion is not required if administrative remedies

7    are inadequate or not efficacious, [citations]; where pursuit of administrative remedies would be a

8    futile gesture, [citations;] [w]here irreparable injury will result unless immediate judicial review is

9    permitted, [citations]; or where the administrative proceeding would be void, [citations]."

10   *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1980).  *See also SEC v. G. C.*

11   *George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) ("[O]n occasion, a court is obliged to

12   exercise its jurisdiction in spite of a failure to exhaust, and 'is guilty of an abuse of discretion if it

13   does not.'") (quoting *Winterberger v. Gen. Teamsters Auto Truck Drivers & Helpers Local Union*

14   *162*, 558 F.2d 923, 925 (9th Cir. 1977)).  All four of the Ninth Circuit's criteria apply in this case.

15   It bears repeating that Defendants again try to reframe this narrowly circumscribed lawsuit

16   as something it simply is not – a wholesale challenge to the final adjudication of ITU's

17   certification.  (MTD at 14.)  If exhaustion is even required under these circumstances (it is not)

18   the relevant question is whether ITU has exhausted remedies with respect to the violation of

19   attorney-client privilege (it has).

20                **a.      Exhaustion Is Not Required Here Because ITU Would Suffer**
                 **Irreparable Harm and It Would Be Futile.**
21

22   Under the APA, "exhaustion may be excused if the litigant's interests in immediate

23   judicial review outweigh the government's interests in the efficiency or administrative autonomy

24   that the exhaustion doctrine is designed to further,] [a]nd one commonly recognized category of

25   cases where litigants' interests generally outweigh the interests of exhaustion is those

26   where irreparable injury would result unless immediate judicial review is permitted." *Stellar IT*

27   *Sols., Inc. v. U.S. Citizenship & Immigration Servs.*, No. CV 18-2015 (RC), 2018 WL 6047413, at

28   *5 (D.D.C. Nov. 19, 2018) (internal citations omitted).  "Irreparable harm is traditionally defined

1    as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream*

2    *Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  ITU will suffer irreparable harm if the

3    Court fails to grant this motion, for at least two reasons: (1) the prolonged loss of confidentiality

4    of its attorney-client communication and (2) the ongoing tainted adjudicatory proceedings.  *See,*

5    *e.g.*, *Richards*, 168 F. Supp. 2d at 1200 ("No matter through which ethical lens the possession and

6    review of [privileged material] is viewed, it is apparent that eleven months of access to privileged

7    materials creates an appearance of impropriety and so taints the proceedings that the harsh

8    remedy of disqualification is justified.").

9         Courts have specifically held that the loss of confidentiality of attorney-client privileged

10   documents is an irreparable injury.  *See, e.g.*, *Hernandez*, 604 F.3d at 1101 ("'[A]n appeal after

11   disclosure of the privileged communication is an inadequate remedy for the irreparable harm a

12   party likely will suffer if erroneously required to disclose privileged materials or

13   communications.'") (quoting *Admiral Ins. Co.*, 881 F.2d 1 at 1491 *636 S. 66th Terrace*, 835

14   F. Supp. at 1306 ("If the privileged communications materials are permitted to remain in the

15   hands of the government it is apparent to the court that any confidentiality of the communications

16   involved may well be lost, and the movants will be effectively denied the protection of the

17   privilege. Once lost, confidentiality cannot be restored. Movants have no other remedy, and their

18   injury is irreparable.").  Here, the complaint alleges that SEVP is in possession of the Privileged

19   Report and *refuses* to return it.  Waiting for SEVP's administrative team to review the Report

20   during the appeal process would only result in further violation of ITU's confidentiality and

21   additional taint to the administrative proceedings.  (Compl. ¶ 49.)  For that reason, ITU will suffer

22   (and, indeed, continues to suffer) irreparable harm and administrative exhaustion should not be

23   required.

24        Furthermore, administrative exhaustion is not required where the agency action is not

25   inoperative pending appeal.  *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 825 (9th Cir.

26   2002) ("if the regulations do not allow for the decision to be rendered inoperative pending

27   administrative appeal, then exhaustion of administrative appeals is not required and the matter

28   was properly before the district court.") (citing *Darby v. Cisneros*, 509 U.S. 137, 154 (1993)).

Here, the relevant action, review of and citation to the Privilege Report, was rendered immediately operative when SEVP refused to return the Privileged Report, refused to honor ITU's privilege assertion, and persisted in citing to the Report in the 2018 Withdrawal.  (Compl. ¶¶ 39, 43.)

### b. Exhaustion Is Not Required Here Because ITU Raises a Colorable Constitutional Challenge to an Agency Procedure.

Defendants' motion fails for the additional reason that exhaustion is not required because this case challenges the adequacy of the agency's procedures.  *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ("[E]xhaustion has not been required where the challenge is to the adequacy of the agency procedure itself, such that 'the question of the adequacy of the administrative remedy ... [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit.'"), *abrogated by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006).  The "availability of judicial review for 'colorable' constitutional claims is presumed."  *Boettcher v. Sec'y of Health & Human Servs.*, 759 F.2d 719, 721 (9th Cir. 1985). A constitutional challenge to agency procedures is colorable so long as it is not "wholly insubstantial, immaterial, or frivolous."  *Id.* at 722.  The precise problem here is that SEVP intruded on ITU's attorney-client privilege and rejected all requests for the return of the Privileged Report based on its unilateral assertion of waiver without providing evidence.  (Compl. ¶ 41.)  ITU was without recourse for review of that decision before SEVP issued the 2017 and 2018 Withdrawals, which cited to and attached the Privileged Report, thereby immediately rendering SEVP's privileged determination effective.  (*Id.* at ¶¶ 39, 43.)  A challenge to the adequacy of agency proceedings should not be required to be exhausted by resort to those very same inadequate proceedings.

### c. Administrative Exhaustion Is an Affirmative Defense that Must Be Pled and Proven by Defendants.

Defendants also fail to acknowledge that administrative exhaustion is an affirmative defense that Defendants, not ITU, must plead and prove.  *Chavez v. United States*, No. CV 16 00685 HG/KJM, 2017 WL 1424635, at *3 (D. Haw. Apr. 20, 2017) ("when exhaustion of administrative remedies is not jurisdictional, it is an affirmative defense that a *defendant* has the burden of raising and proving.") (emphasis in original).  As an affirmative defense that relies on

factually intensive inquiries, it is inappropriate for the Court to consider administrative exhaustion at the pleading stage. *Id.* (holding that the plaintiff "need not assert or prove that he has exhausted such review" and that "any determination on whether that review has concluded or should be excused will be subject to adversary proceedings."); *see also Sanchez v. Grandview Sch. Dist. No. 200*, No. CV-10-3118-EFS, 2012 WL 12918718, at *3 (E.D. Wash. Jan. 24, 2012) ("the exhaustion requirement appears more flexible than a rigid jurisdictional limitation— questions about whether administrative proceedings would be futile, or whether dismissal of a suit would be consistent with the general purposes of exhaustion, are better addressed through a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all.") (quoting *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 870 (9th Cir. 2011)).

In fact, ITU has exhausted all available administrative remedies relating to the issue presented by the Complaint. SEVP's unauthorized use, possession, review, and citation of the Privileged Report, and its refusal to return the Report, constitute final agency action. (*Supra* pp. 10-12.) SEVP's actions led to the loss of confidentiality, prejudice, and taint of the judicial proceedings. *636 S. 66th Terrace*, 835 F. Supp. at 1306; *Kinetic Concepts*, 2013 WL 2278122, at *3; *Richards*, 168 F. Supp. 2d at 1200. ITU raised the issue of privilege multiple times, taking all action available — by sending several letters to SEVP before responding to the Notice of Intent; then in its responsive brief to the Notice of Intent; then in its appeal to the 2017 Withdrawal; then in its "interview" in October 2017, and then in its appeal of the 2018 Withdrawal. (Compl. ¶¶ 36, 38, 43-44.)

ITU has done everything it could possibly do to exhaust its administrative remedies with respect to the specific issue presented in the Complaint. Defendants' arguments grounded in exhaustion should be rejected, and the motion denied.

**C.     Mandamus Relief Is Available Because the Agency Has No Discretion Regarding Attorney-Client Privilege, and the Court Has Prospective Jurisdiction.**

Generally, where the relief sought "is identical under either the APA or the mandamus statute, proceeding under one as opposed to the other is insignificant." *Ctr. for Biological*

1  *Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1124 (N.D. Cal. 2007).  Nevertheless, should the

2  court consider SEVP's action specific to the Privileged Report non-final, the Mandamus and

3  Venue Act and the All Writs Act provide alternative avenues for relief through a writ of mandate.

**1.  ITU's Allegations Support Relief Under the Mandamus and Venue Act.**

5  The Ninth Circuit has stated that three elements must be satisfied in order to obtain a writ

6  of mandate pursuant to the Mandamus and Venue Act ("VMA"): (1) a clear and certain claim, (2)

7  a "ministerial," *i.e.*, nondiscretionary, duty to act, and (3) no other adequate remedy.  *Patel v.*

8  *Reno*, 134 F.3d 929, 931 (9th Cir. 1997).  In this case, all three of the Ninth Circuit's criteria are

9  met.  Defendants' lead argument that these conditions are not satisfied again requires a

10  misreading of ITU's Complaint.  ITU is "not asking the Court to dictate the outcome of the

11  administrative proceedings," and the Court "is not being asked to dictate the substance of the

12  decision."  *Razaq v. Poulos*, No. C06-2461 WDW, 2007 WL 61884, at *2 (N.D. Cal. Jan. 8,

13  2007).  The Complaint alleges facts sufficient to establish the three elements necessary to

14  maintain an action under the VMA.  The motion should be denied.

15  First, ITU's claim that SEVP violated the attorney-client privilege by its unauthorized

16  possession, use, and review of the Privileged Report is clear and certain.  "Federal common law

17  recognizes a privilege" with three elements: "[1] communications between client and attorney, [2]

18  for the purpose of obtaining legal advice, [3] provided such communications were intended to be

19  confidential."  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001).  The Privileged Report

20  was a communication between the Nolan law firm and its client, ITU.  (Compl. ¶¶ 31-32.)  It

21  provided legal advice regarding an investigation, and it was intended to be confidential.  (*Id.*)

22  Furthermore ITU did not waive the privilege because it never authorized anyone to disclose the

23  privileged report.  (*Id.*)  Despite its obligation to produce evidence to the contrary, SEVP never

24  did so.  (*Id.* at ¶¶ 36, 43.)  *See Chevron Corp.*, 1996 WL 444597, at *4.

25  Second, Defendants' duty to honor the attorney client privilege and refrain from reviewing

26  the report is also ministerial because it is nondiscretionary.  *Indep. Mining Co.. Babbitt*, 105 F.3d

27  502, 508 (9th Cir. 1997) ("An agency 'ministerial act' for purposes of mandamus relief has been

1    defined as a clear, non-discretionary agency obligation…"). Circuit courts issue writs of mandate

2    requiring lower courts to uphold the attorney-client privilege where the lower courts' decisions

3    were "clearly erroneous as a matter of law," and therefore nondiscretionary. *Hernandez*, 604

4    F.3d at 1099; *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761-63 (D.C. Cir. 2014).  The

5    Government argues that it has discretion to withdraw ITU's SEVP approval, but it does not argue

6    that it has discretion to ignore attorney-client privilege. *Bristol-Myers Squibb Co. v. Rhone-*

7    *Poulenc Rorer, Inc.*, 188 F.R.D. 189, 199-200 (S.D.N.Y. 1999) ("[U]nder the law of this country

8    a communication covered by attorney-client privilege is entitled to protection regardless of

9    whether the proceeding is civil, criminal or administrative, whether the question arises in grand

10   jury, in discovery or at trial, unless the client has waived the privilege. . . .").

11          All that SEVP must do to comply is to respect ITU's privilege assertion and refrain from

12   its unauthorized possession, review, and use of the Privileged Report; there is no discretion that

13   the agency must exercise in determining how *not* to act.  Moreover, because ITU has also stated a

14   constitutional claim, the duties imposed on Defendants by the Constitution are properly

15   characterized as ministerial.  *Lowry v. Soc. Sec. Admin.*, No. CV-99-1210-ST, 2000 WL 730412,

16   at *21 (D. Or. June 7, 2000) ("Any duty prescribed by the Constitution is ministerial and leaves

17   no discretion to the governmental official. Because [Plaintiff]'s claims are based on the Fifth

18   Amendment, he has sufficiently stated a ministerial duty.").

19          Third, courts have long recognized that no other adequate means of relief is available in

20   the case of an erroneous order to disclose attorney-client privilege documents because "appeal

21   after final judgment will come too late because the privileged communications will already have

22   been disclosed…." *In re Kellogg Brown & Root*, 756 F.3d at 761.  Here, SEVP has already

23   violated ITU's right to keep the Privileged Report confidential and threatens to further destroy the

24   confidentiality of the Report.  Accordingly, to the extent SEVP's determination with respect to

25   privilege is not a reviewable final agency action, there is no other adequate means of relief

26   because review following the SEVP appeal will come too late.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.   The Court May Issue a Writ in Aid of Its Prospective Jurisdiction Pursuant to the All Writs Act.

The All Writs Act ("AWA") permits a court to issue writs in aid of its prospective jurisdiction "and extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966); *see also Dist. of Columbia. v. Grp. Ins. Admin.*, 633 A.2d 2, 14-15 (D.C. 1993); *Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984). This Court has ultimate jurisdiction to review any final agency action by SEVP with respect to ITU. *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999) ("In the absence of a specific statutory provision to the contrary, district courts have jurisdiction to review agency action as part of their general federal question jurisdiction, 28 U.S.C. § 1331."); *V. Real Estate Grp., Inc.*, 85 F. Supp. 3d at 1210 (federal court has jurisdiction "over challenges to federal agency action as claims arising under federal law.") (citation omitted).

Here, a writ of mandate is critical to preserve the integrity of proceedings over which the Court will ultimately have jurisdiction. *See Hernandez*, 604 F.3d at 1099; *In re Kellogg Brown & Root*, 756 F.3d at 761-63. "The attorney-client privilege is deeply imbedded and is part of the warp and woof of the common law. In order to abrogate it in whole or in part as to any proceeding whatsoever, affirmative legislative action would be required that is free from ambiguity." *Civ. Aeronautics Bd. v. Air Transp. Ass'n of Am.*, 201 F. Supp. 318, 318 (D.D.C. 1961) (holding that attorney client privilege limited the Civil Aeronautics Board's subpoena power.) Accordingly, the All Writs Act, in conjunction with the Mandamus and Venue Act, extend the court's jurisdiction to the extent the appeal from a non-final agency action would be premature.

### D.   ITU Has Stated Claims for Violation of Due Process.

Defendants make two arguments in support of their assertion that ITU has failed to state a claim upon which relief can be granted: (1) ITU failed to exhaust administrative remedies; and (2) ITU has failed to allege a Due Process violation. For reasons expressed in detail above (*supra* at pp. 15-18), Defendants' exhaustion arguments are baseless. Defendants' arguments regarding the

1   Due Process allegations are also without merit, for reasons explained as follows.

2          The Court must accept as true all factual allegations in the Complaint, including, for

3   example, that the Privileged Report is a confidential communication between an attorney and its

4   client for the purposes of seeking legal advice (Compl. ¶¶ 30-32), Defendants have violated that

5   privilege by their unauthorized possession, review, and use of the Report (*id.* at ¶ 35), and

6   Defendants rejected all efforts to seek return of the Report (*id.* at ¶ 36).[2]  As further alleged in the

7   Complaint, SEVP's possession, review, and use of the Privileged Report have violated, and

8   continue to violate, ITU's Due Process rights.  (*Id.* at ¶ 50.)  These violations of ITU's

9   constitutional rights form the predicate for claims for relief for violation of the Fifth Amendment,

10  *see* Fifth Amendment, U.S. Constitution, and the claim for violation of the APA, which states that

11  this Court shall "hold unlawful and set aside agency action . . . found to be . . . (B) contrary to

12  constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2).  Defendants' acts and

13  omissions, taken singularly or collectively, have resulted in a deprivation of property and liberty

14  interests of ITU, including the violation of confidentiality that should be afforded its

15  communications with counsel, past and future lost revenue from the decline in student enrollment,

16  and the potential loss of its certification to enroll nonimmigrant students, all of which are

17  protected under the Due Process Clause of the Fifth Amendment of the U.S. Constitution.  *See In*

18  *re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090,1093 (9th Cir. 2007) (noting that

19  "[t]he attorney-client privilege protects fundamental liberty interests" and holding that due

20  process requires that "in a civil case the party resisting an order to disclose materials allegedly

21  protected by the attorney-client privilege must be given the opportunity to present evidence and

22

23          [2] Defendants claim in their brief that the Privileged Report was "voluntarily provided to
    ICE," but that fact appears nowhere in the Complaint and is entirely unsubstantiated.  Defendants
24  are not entitled to substitute their own self-serving factual allegations on a motion to dismiss.
    *Butler v. Los Angeles County*, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008) ("On a motion to
25  dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must limit its review to
    the four corners of the operative complaint, and may not consider facts presented in briefs or
26  extrinsic evidence.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001))  This
    novel allegation is contradicted by the facts that ITU does not know how SEVP obtained the
27  Privileged Report and that ITU did not authorize its disclosure.  (Compl. ¶¶ 2, 31, 36, 41.)

28

1    argument in support of its claim of privilege"), *abrogated on other grounds by Mohawk Indus.,*

2    *Inc. v. Carpenter*, 558 U.S. 100 (2009).

3         The Supreme Court has long recognized that outrageous government conduct can rise to

4    the level of a due process violation.  *Rochin v. California*, 342 U.S. 165 (1952); *United States v.*

5    *Schell*, 775 F.2d 559, 562-63, 566 (4th Cir. 1985) (defendants' due process rights were violated

6    when their attorney represented them during grand jury proceedings, then participated in their

7    prosecution in the same matter), *cert. denied*, 475 U.S. 1098 (1986).  The violation of a party's

8    attorney-client privilege will violate due process rights if the violation was caused by serious

9    governmental misconduct that is outrageous enough to shock the judicial conscience.

10   *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (district court should have conducted

11   evidentiary hearing on whether government engaged in outrageous conduct by using attorney as

12   an informant when she was allegedly representing defendant), *cert. denied*, 519 U.S. 1047 (1996).

13        Under the test articulated in *Voigt*, a party must establish three elements "to raise a

14   colorable claim of outrageousness pertaining to alleged governmental intrusion into the

15   attorney-client relationship": "(1) the government's objective awareness of an ongoing, personal

16   attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into

17   that relationship; and (3) actual and substantial prejudice."  *Voigt*, 89 F.3d at 1067 (footnote and

18   citation omitted).  The Ninth Circuit has described outrageous conduct as that which "violates due

19   process in such a way that it is 'so grossly shocking and so outrageous as to violate the universal

20   sense of justice.'"  *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (quoting

21   *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)).

22        In this case, the government's conduct has been outrageous and offends all notions of

23   fundamental fairness.  First, SEVP was aware that the Nolan Law Firm had an attorney-client

24   relationship with ITU at the time it came into possession of the Privileged Report.  (Compl. ¶ 30.)

25   Indeed, it is apparent on the face of the Privileged Report that it is an attorney-client

26   communication containing legal advice.  (*Id*.)  Moreover, ITU notified SEVP of the document's

27   privileged nature in *multiple* correspondences after ITU received the Notice of Intent and,

28   thereby, first realized that the government had been concealing its possession of the Privileged

1  Report.  (*Id*. at ¶ 36.)  Second, SEVP deliberately intruded into ITU's attorney-client relationship

2  by relying on the Privileged Report as evidence in support of the 2017 and 2018 Withdrawals,

3  notwithstanding its privileged status.  (*Id*. at ¶¶ 39, 43.)  It is evident from SEVP's own words,

4  first in the Notice of Intent and then in the Withdrawals, that SEVP fully intended to and, in fact,

5  did turn ITU's own lawyers into witnesses *against* ITU.  (*Id*. at ¶ 39, 40.)  A unilateral decision

6  on the part of the government to rely on improperly obtained privileged material "constitutes a

7  *per se* intentional intrusion" into the attorney-client relationship.  *United States v. Neill*, 952 F.

8  Supp. 834, 840-41 (D.D.C. 1997).

9      Lastly, SEVP's possession, review, and use of the Privileged Report actually,

10  substantially, and irreversibly prejudiced ITU.  The ongoing intrusion into ITU's confidential

11  relationship with counsel constitutes prejudice.  *See, e.g.*, *Richards*, 168 F. Supp. 2d at 1207

12  (disqualifying counsel and finding prejudice when privileged documents were "relevant to the

13  factual predicate" of claim against the privilege holder); *Kinetic Concepts* 2013 WL 2278122, at

14  *3 (finding prejudice where "counsel not only used privileged materials to craft their claims, but

15  incorporated verbatim content from those materials in the pleadings"); *Maldonado v. N.J. ex rel.

16  Admin. Office of Cs.-Prob. Div.*, 225 F.R.D. 120, 140 (D.N.J. 2004) (holding that disclosure of a

17  letter "meant to be used . . . for [a party's] attorney . . . to prepare their defense, either in the

18  [administrative] proceeding, or in a future civil action" and that served as "a blue print to merits

19  of Plaintiff's case, as well as Defendants' defenses" constituted prejudice).  The Notice of Intent

20  and both Withdrawals rely on the Privileged Report to support the withdrawal, to ITU's

21  significant detriment.  (Compl. ¶¶ 12, 20, 25, 33.)  The fact that the Privileged Report was

22  attached in full to the 2018 Withdrawal is evidence enough that it was relevant and substantially

23  relied on by Defendants.  (*Id.*, Ex. J at p. 3 n.9 (referring to the Privileged Report as a "Summary

24  of Investigation" and attaching it as "Addendum A").  The *Kinetic Concepts* court condemned

25  behavior as egregious as Defendants' conduct in this case where counsel continued to quote "in

26  the pleadings portions of privileged documents" even after having been put on notice of the

27  privilege concerns.  *Kinetic Concepts, Inc.*, 2013 WL 2278122, at *2.

28      Moreover, the facts alleged in the Complaint are readily distinguishable from cases where

courts have rejected claims of outrageous conduct based on an intrusion into the attorney-client relationship.  *E.g.*, *United States v. Segal*, 313 F. Supp. 2d 774, 780 (N.D. Ill. 2004) (finding no "evidence that the Government deliberately read communications that it affirmatively knew were protected by Defendants' attorney-client privilege"); *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (finding that the privileged materials were not actually entered into evidence). Unlike those cases, here, SEVP *did* "deliberately read communications that it affirmatively knew were protected by Defendants' attorney-client privilege" and *did* enter the Privileged Report into evidence in the administrative proceedings.  For all of the reasons discussed above, SEVP's unauthorized possession, review, and use of the Privileged Report is contrary to the Fifth Amendment.  Defendants' motion to dismiss should be denied.

## V.      CONCLUSION

Defendants' motion to dismiss ITU's Complaint should be denied in its entirety. Otherwise, ITU should be granted leave to amend.


Dated: March 22, 2019                          MORRISON & FOERSTER LLP


                                               By:     */s/ Joshua Hill Jr.*
                                                          JOSHUA HILL JR.

                                               Attorneys for Plaintiff
                                               INTERNATIONAL TECHNOLOGICAL
                                               UNIVERSITY FOUNDATION, INC.