1   JOSHUA HILL JR. (SBN 250842)
    JHill@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522

5   JANIE F. SCHULMAN (SBN 130461)
    JSchulman@mofo.com
6   NILES A. PIERSON (SBN 307115)
    NPierson@mofo.com
7   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
8   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
9   Facsimile: 213.892.5454

10
    Attorneys for Plaintiff
11  INTERNATIONAL TECHNOLOGICAL
    UNIVERSITY FOUNDATION, INC.
12
                        UNITED STATES DISTRICT COURT
13
                     NORTHERN DISTRICT OF CALIFORNIA
14
                              SAN JOSE DIVISION
15

| | |
|---|---|
| 16   INTERNATIONAL TECHNOLOGICAL<br>UNIVERSITY FOUNDATION, INC., | Case No.    5:18-cv-06228-EJD |
| 17                Plaintiff, | Judge:  Hon. Edward J. Davila |
| 18         v. | **REPLY IN SUPPORT OF**<br>**PRELIMINARY INJUNCTION** |
| 19   KIRSTJEN M. NIELSEN, in her official<br>capacity as Secretary of the Department of | Hearing Date:  June 13, 2019<br>Time:              9:00 a.m. |
| 20   Homeland Security, UNITED STATES OF<br>AMERICA, UNITED STATES | Place:            Courtroom 4, 5th Floor |
| 21   DEPARTMENT OF HOMELAND<br>SECURITY, UNITED STATES | Date Action Filed:  October 11, 2018<br>Trial Date:  None set |
| 22   IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, STUDENT AND | |
| 23   EXCHANGE VISITOR PROGRAM, and<br>DOES 1 through 10, inclusive, | |
| 24 | |
| 25                Defendants. | |

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND .................................................................................................... 1

III.    ARGUMENT .......................................................................................................... 2

        A.      The Opposition Fails to Negate ITU's Showing of a Likelihood of Success
                on the Merits. ............................................................................................... 2

                1.      The Government Had No Right to Unilaterally Reject ITU's
                        Privilege. ......................................................................................... 2

                2.      Defendants' Outrageous Conduct Violated ITU's Substantive Due
                        Process Rights. ................................................................................. 4

                3.      ITU Will Succeed on Its APA Claims. ............................................. 5

                        a.      SEVP's Action Was Final. .................................................... 6

                        b.      ITU's Claims Are Ripe for Judicial Determination. ........... 7

                        c.      ITU Has Exhausted All Available Administrative Remedies
                                Even Though It Is Not Required to Do So. ........................... 8

                4.      Mandamus Relief Is Available Because the Agency Has No
                        Discretion Regarding Privilege, and the Court Has Prospective
                        Jurisdiction. ................................................................................... 10

        B.      ITU's Request for a Preliminary Injunction Presents a Serious Question
                Going to the Merits. ................................................................................... 12

        C.      Prejudice, Tainted Proceedings, and Loss of Confidentiality Are
                Irreparable Harms. ..................................................................................... 13

        D.      The Balance of the Hardships Tips Sharply in ITU's Favor. ..................... 14

        E.      Public Interest Favors Protecting the Attorney-Client Privilege from
                Government Intrusion. ................................................................................ 14

IV.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aleknagik Natives Ltd. v. Andrus*,
   648 F.2d 496 (9th Cir. 1980)........................................................................8

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)..............................................................12, 15

*Baptiste v. Cushman & Wakefield, Inc.*,
   No. 03CIV.2102(RCC)(THK), 2004 WL 330235 (S.D.N.Y. Feb. 20, 2004).......................3-4

*Blackwell Coll. of Bus. v. Attorney Gen.*,
   454 F.2d 928 (D.C. Cir. 1971)..........................................................5 n.4, 15

*Boettcher v. Sec'y of Health & Human Servs.*,
   759 F.2d 719 (9th Cir. 1985).....................................................................9, 10

*Chavez v. United States*,
   No. CV 16 00685 HG/KJM, 2017 WL 1424635 (D. Haw. Apr. 20, 2017)...............................8

*Clutchette v. Rushen*,
   770 F.2d 1469 (9th Cir. 1985)....................................................................5

*Columbia Riverkeeper v. U.S. Coast Guard*,
   761 F.3d 1084 (9th Cir. 2014)....................................................................6

*Comet Techs. United States of Am. Inc. v. Beuerman*,
   No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018)...............................14

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)............................................................................3, 7

*Ctr. for Biological Diversity v. Brennan*,
   571 F. Supp. 2d 1105 (N.D. Cal. 2007)...........................................................11

*Dist. of Columbia. v. Grp. Ins. Admin.*,
   633 A.2d 2 (D.C. 1993)..........................................................................10

*E.E.O.C. v. Lutheran Soc. Servs.*,
   186 F.3d 959 (D.C. Cir. 1999)...................................................................14

*F.T.C. v. Dean Foods Co.*,
   384 U.S. 597 (1966).............................................................................10

*Freedom to Travel Campaign v. Newcomb*,
   82 F.3d 1431 (9th Cir. 1996)....................................................................8

*Gilder v. PGA Tour, Inc.*,
   936 F.2d 417 (9th Cir. 1991).................................................................................12

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ...............................................................................12 n.5

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010)...................................................................9, 11, 13

*Hufford v. McEnaney*,
   249 F.3d 1142 (9th Cir. 2001)..........................................................................5 n.4

*Idaho Watersheds Project v. Hahn*,
   307 F.3d 815 (9th Cir. 2002)..............................................................................8

*Indep. Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997)..............................................................................11

*Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*,
   408 F.3d 638 (9th Cir. 2005)..............................................................................6

*In re Coleman*,
   560 F.3d 1000 (9th Cir. 2009)............................................................................7

*In re Caesars Entm't Operating Co.*,
   562 B.R. 168 (Bankr. N.D. Ill. 2016)....................................................................7

*In re Ditropan XL Antitrust Litig.*,
   No. MDL 06-1761 JSW (EDL), 2007 WL 3256208 (N.D. Cal. Nov. 5, 2007) .................4 n.3

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) ...............................................................11, 12, 15

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) ...............................................................14, 15

*Lowry v. Soc. Sec. Admin.*,
   No. CV-99-1210-ST, 2000 WL 730412 (D. Or. June 7, 2000) ...............................10

*Matter of the Search of 636 S. 66th Terrace, Kan. City, Kan.*,
   835 F. Supp. 1304 (D. Kan. 1993) ..................................................... *passim*

*McCarthy v. Madigan*,
   503 U.S. 140 (1992), *abrogated by statute on other grounds as stated in*
   *Woodford v. Ngo*, 548 U.S. 81 (2006)....................................................................9

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977).......................................................................................15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) .......................................................................................6

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*,
  328 F. Supp. 3d 1133 (E.D. Wash. 2018) .................................................................6

*Richards v. Jain*,
  168 F. Supp. 2d 1195 (W.D. Wash. 2001) ......................................................... *passim*

*Sampson v. Murray*,
  415 U.S. 61 (1974) .....................................................................................................15

*Se. Pa. Transp. Auth. v. Caremark PCS Health, L.P.*,
  254 F.R.D. 253 (E.D. Pa. 2008) .................................................................................4

*Stellar IT Sols., Inc. v. U.S. Citizenship & Immigration Servs.*,
  No. CV 18-2015 (RC), 2018 WL 6047413 (D.D.C. Nov. 19, 2018) ..........................9

*Telecomm. Research & Action Ctr. v. F.C.C.*,
  750 F.2d 70 (D.C. Cir. 1984) ...................................................................................10

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) .....................................................................................4

*United States v. Chevron Corp.*,
  No. C 94-1885 SBA, 1996 WL 444597 (N.D. Cal. May 30, 1996) .....................2, 3, 7

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) .............................................................................................14, 15

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  No. CV 08-1885-GHK, 2013 WL 2278122 (C.D. Cal. May 20, 2013) ..............7, 8, 10, 14

*V.N.A. of Greater Tift Cnty., Inc. v. Heckler*,
  711 F.2d 1020 (11th Cir. 1983) ...........................................................................12 n.5

1

## I.  INTRODUCTION

2    The government invites this Court to condone its ethically bankrupt position that ICE,

3 DHS, and SEVP are free to unilaterally reject a private party's assertion of attorney-client

4 privilege whenever they see fit.  The government's arrogance should trouble the Court and all

5 members of the Bar.  Defendants do not refute ITU's showing that the Privileged Report was in

6 fact privileged, and they have presented no evidence that the privilege was waived.  They

7 acknowledge that outrageous government conduct can violate substantive due process rights, yet

8 they cite to inapt and distinguishable authority to argue that their conduct was not outrageous.

9 Defendants also fail to reckon with the fact that they did not provide ITU with adequate

10 procedural safeguards, as required by due process.  What's left is an Opposition that resorts to

11 cheap technical arguments (all without merit) straining to justify the unjustifiable.

12    ITU requests a preliminary injunction to maintain the status quo and prevent any further

13 intrusions into its attorney-client privilege until this case can be fully resolved on the merits.  That

14 is all.  In the absence of an injunction, ITU will suffer irreparable harm in the form of lost

15 confidentiality, evidentiary prejudice, and tainted administrative proceedings.  In addition, the

16 balance of hardships tip sharply in ITU's favor because it will suffer an irreparable harm and have

17 its interests impaired by the undermining of its legal confidences, while Defendants will still have

18 access to other sources of evidence.  The public interest favors protecting the attorney-client

19 privilege because it reduces litigation and encourages voluntary compliance with the law.

20 Because of the foregoing and the fact that ITU is likely to succeed on the merits of the narrow

21 privilege issue before the Court, the Court should issue a preliminary injunction.[1]

## II.  BACKGROUND

22

23    The Opposition's description of the factual background alone (and omissions therefrom)

24 makes plain that Defendants' actions are ethically and legally indefensible:

25    *First*, Defendants state that they received the Privileged Report in January 2015 from an

26 unnamed individual, but, despite the obvious signs that the Report was a communication between

27

---

28    [1] Defendants also concede, by omission, that a bond should not be required in this case.

lawyer and client, there is no evidence whatsoever that Defendants made any efforts to determine whether their possession of the Report was permissible.  (ECF No. 32 at 4-5.)

*Second*, after having concealed possession of the Report for over a year, upon receipt of correspondence from ITU asserting the attorney-client privilege, SEVP Division Chief James Hicks (without any stated qualifications to do so) declared that the Report was not privileged. (ECF No. 32 at 5.)  The Opposition contains no description of how SEVP supposedly made that determination, other than lack of a privilege legend (which was immaterial).  (ECF No. 32 at 12.) Moreover, Beth Gibble and Lisa Glasoe, the officials who signed the correspondence on behalf of SEVP (see O'Brien Decl., Exs. D, F, and H), are notably absent from the Opposition.

*Third*, Defendants state that the privilege was waived without identifying the person who purportedly supplied the Privileged Report and follow that with a failure to set forth any evidence showing that this mystery figure was authorized to waive ITU's privilege.  (ECF No. 32 at 12.)

*Lastly*, the Opposition fails to explain how any of the numerous lawyers who were copied on the correspondence and are subject to all rules of professional responsibility—including the United States Attorneys' Office, ICE's Principal Legal Officer, and ICE's Associate Director of Professional Responsibility—looked the other way as this gross violation of ITU's due process rights unfolded over multiple years.

## III.   ARGUMENT[2]

### A.   The Opposition Fails to Negate ITU's Showing of a Likelihood of Success on the Merits.

#### 1.   The Government Had No Right to Unilaterally Reject ITU's Privilege.

The government's defense of its handling of the Privileged Report veers dangerously close to authoritarianism and fails to recognize that Defendants' conduct was contrary to both federal common law and the Constitution.  As even Defendants admit, all ITU must do is make a prima facie showing of privilege (which it has done).  (ECF No. 32 at 20.)  *See United States v.*

---

[2] Defendants' Opposition, and this Reply brief, raise many of the same issues briefed in ITU's Opposition to Defendants' Motion to Dismiss, filed on March 22, 2019, and those arguments are incorporated by reference herein.  (*See* ECF No. 33.)

1  *Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *4 (N.D. Cal. May 30, 1996) ("the

2  party asserting the attorney-client privilege bears the initial burden of proving that the

3  communication in question is privileged.").  Next, once Defendants became aware that the Report

4  was privileged, it was incumbent upon the grown-ups in the room at ICE and SEVP to refrain

5  from reviewing the Report altogether.  *Id.* ("If the party seeking discovery asserts that the

6  privilege which initially attached to the communication in question was subsequently waived, that

7  party must bear the burden of *production* on the issue of waiver.") (citation omitted) (emphasis in

8  original).  Instead, ICE and SEVP ran roughshod over ITU's rights.

9            The Opposition makes two highly indefensible arguments.  One, Defendants appear to

10  argue that the Report was not privileged, and they determined this after they "carefully considered

11  ITU's privilege claim."  (ECF No. 32 at 20.)  Defendants fail to submit even a scintilla of

12  evidence showing any such deliberative process, not that it would matter, because it was not

13  Defendants' place to play judge and jury with respect to ITU's attorney-client privilege.  Two,

14  SEVP's contention that the privilege was waived because the Report is purported to have been

15  "voluntarily" provided is not sufficient to demonstrate waiver.  A corporation's privilege can only

16  be waived by an authorized person acting on behalf and in the fiduciary interest of the

17  corporation.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49

18  (1985) ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's

19  management . . . [who] must exercise the privilege in a manner consistent with their fiduciary

20  duty . . .").  Defendants acknowledge that SEVP received the Privileged Report from an unnamed

21  person but have refused to identify that person.  (ECF No. 32 at 1, 4, 20.)  Consequently,

22  Defendants must admit that ITU did not consent to the disclosure and that whoever made it could

23  not have been authorized.  It simply is not possible for ITU to have authorized someone to waive

24  attorney-client privilege if ITU does not even know who that person is.  Accordingly, SEVP's

25  determination regarding privilege is contrary to federal common law.

26            Defendants have no answer for ITU's factual showing of privilege.  (O'Brien Decl. Ex. A

27  [Declaration of Daniel Olmos] ¶ 8.)  Defendants' only argument is that the Privileged Report was

28  not marked confidential, but such markings are not required.  *Baptiste v. Cushman & Wakefield,*

1   *Inc.*, No. 03CIV.2102(RCC)(THK), 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004) ("the

2   determination of whether a document is privileged does not depend upon the technical

3   requirement of a privilege legend.") (citation omitted); *Se. Pa. Transp. Auth. v. Caremark PCS*

4   *Health, L.P.*, 254 F.R.D. 253, 263 (E.D. Pa. 2008) (stating that "failure to specifically label an

5   attorney's memorandum as 'confidential' or 'privileged' does not destroy the privilege.

6   Communications are confidential 'if not intended to be disclosed to third persons other than those

7   to whom disclosure is in furtherance of the rendition of professional legal services.'") (citation

8   omitted).  Finally, Defendants desperately seek *in camera* review of the Report.  Even though

9   such review would only further establish what ITU has said all along, it is not warranted in this

10  case.[3]

11              **2.      Defendants' Outrageous Conduct Violated ITU's Substantive Due**
                          **Process Rights.**

12              The Opposition starts with the mistaken premise that Defendants' violation of ITU's

13  attorney-client privilege does not implicate a constitutional right.  The Due Process Clause

14  protects the right to liberty, and "[t]he attorney-client privilege is essential to preservation of

15  liberty against a powerful government." *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir.

16  1996).  The *Chen* court explained just why the government's conduct in this case is of paramount

17  importance: "People need lawyers to guide them through thickets of complex government

18  requirements, and, to get useful advice, they have to be able to talk to their lawyers candidly

19  without fear that what they say to their own lawyers will be transmitted to the government." *Id.*

20  That Defendants would so cavalierly disregard due process interests in this case, to the point of

21  simply asserting without controlling authority that no such right exists, should trouble the Court.

22

23  _____

24  [3] To obtain *in camera* review, Defendants must make a showing, and the court must find,
    that the contents of the communication could form a basis for finding the Report not privileged.
25  *See, e.g., In re Ditropan XL Antitrust Litig.*, No. MDL 06-1761 JSW (EDL), 2007 WL 3256208,
    at *1 (N.D. Cal. Nov. 5, 2007) ("the court must 'require showing of a factual basis adequate to
26  support a good faith belief by a reasonable person . . . that in camera review . . . may reveal
    evidence to establish the claim that the crime-fraud exception applies.'") (quoting *United States v.*
27  *Zolin*, 491 U.S. 554, 572 (1989)).  Rather than even attempt to make that showing, Defendants
    fully concede that they "do not believe that the Court needs to review the Nolan Memorandum to
28  resolve this motion."  (ECF No. 32 at 20.)

1    Here, Defendants have engaged in outrageous conduct by deliberately turning Daniel

2    Olmos, ITU's attorney, into an informant against his client through the possession, review, and

3    use of the Privileged Report.  (*See* Pl. Mot. for Prelim. Inj. at 13-16, ECF No. 26.)  The Privileged

4    Report is, on its face, an attorney-client communication, as indicated by the letterhead bearing the

5    name of the Nolan law firm and a link to its website, "nab*law*.com," among other obvious

6    indicators.  (O'Brien Decl., Ex. B (emphasis added).)  Defendants make no credible argument that

7    the Report is not privileged.  Rather, the Opposition goes all in on the erroneous argument that

8    SEVP's intentional intrusion into the attorney-client privilege does not rise to the level of a Due

9    Process violation.  Defendants rely primarily on *Clutchette v. Rushen*, an easily distinguishable

10   case.  770 F.2d 1469, 1472 (9th Cir. 1985).  In *Clutchette*, the government accepted receipts that

11   were handed over to law enforcement by a criminal defendant's wife, who served as an

12   investigator for defense counsel.  *Id.* at 1470.  But the court noted at the outset that "the attorney-

13   client privilege does not cover physical evidence [and] concluded that the government had not

14   intruded into a privileged area and therefore had not violated Clutchette's constitutional rights."

15   *Id.* at 1471.  Because the evidence at issue did not constitute communications between an attorney

16   and client, *Clutchette* has no relevance to the instant Motion.  Here, on the other hand, SEVP has

17   relied directly upon a document that is itself privileged.[4]

18                    **3.      ITU Will Succeed on Its APA Claims.**

19       The APA empowers courts to set aside agency actions that are final and contrary to law.

20

21          [4] The Opposition raises the question of whether Defendants' actions also violated ITU's
       procedural due process rights.  (ECF No. 32 at 11-12.)  While the substantive due process
22     violation is at the center of ITU's Motion, as mentioned in the moving papers, ITU also disputes
       the improper evidentiary weight given to the Privileged Report.  (Mot. for Prelim. Inj. at 15 n.5.)
23     As Defendants concede, in addition to its liberty interest in communicating with its attorneys,
       ITU also has a property interest in its "approved status" to admit nonimmigrant students.  *See*
24     *Blackwell Coll. of Bus. v. Attorney Gen.*, 454 F.2d 928, 932 (D.C. Cir. 1971). (ECF No. 32 at 11.)
       Here, SEVP's handling of the Privileged Report violated ITU's procedural due process rights by
25     failing to provide "adequate procedural protections" for the attorney-client privilege within the
       context of those proceedings.  *Hufford v. McEnaney*, 249 F.3d 1142, 1150-51 (9th Cir. 2001)
26     (deferring to district court's determination of factually intensive procedural due process question).
       By failing to produce evidence of waiver, SEVP denied ITU basic procedural due process
27     protections necessary to safeguard both its immediate liberty interest in the Privileged Report and
       its ultimate property interest in certification.
28

1   *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 328

2   F. Supp. 3d 1133, 1147 (E.D. Wash. 2018) ("an agency action must be set aside and held

3   unlawful if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

4   law.'") (quoting 5 U.S.C. § 706(2)(A)).  Defendants argue that the government's violation of

5   ITU's attorney-client privilege was not a final agency action and therefore not ripe for litigation.

6   Defendants' arguments fail because SEVP's possession, review, and use of the Privileged Report

7   at every step in the administrative proceedings, culminating in the use, citation, and attachment of

8   the Privileged Report in the 2018 Withdrawal, amounts to a final determination of whether SEVP

9   would continue to violate ITU's attorney-client privilege.

10                  **a.      SEVP's Action Was Final.**

11                  An agency action is final if legal consequences flow from it or if it is intended to be acted

12  upon immediately, as is the case here.  The Ninth Circuit "focus[es] on the practical and legal

13  effects of the agency action" and views finality in a "pragmatic and flexible manner."  *Or. Nat.*

14  *Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted); *see also*

15  *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)

16  ("certain factors provide an indicia of finality, such as 'whether the [action] amounts to a

17  definitive statement of the agency's position, whether the [action] has a direct and immediate

18  effect on the day-to-day operations of the party seeking review, and whether immediate

19  compliance [with the terms] is expected.'") (citation omitted).  "[C]ourts consider whether the

20  practical effects of an agency's decision make it a final agency action, regardless of how it is

21  labeled.  Under the APA, for instance, even if the agency does not label its decision or action as

22  final, it may be reviewable if it 'has the status of law or comparable legal force' or if 'immediate

23  compliance with its terms is expected.'"  *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d

24  1084, 1094-95 (9th Cir. 2014) (citation omitted).

25                  The attachment of the Privileged Report to the 2018 Withdrawal is SEVP's final

26  determination regarding whether the Privileged Report was protected by the attorney-client

27  privilege.  SEVP took immediate action by reviewing the Privileged Report and attaching the

28  Report to the 2018 Withdrawal for further review and circulation to SEVP personnel.  (O'Brien

Decl. Ex. J.)  That act has legal consequences, including the loss of confidentiality of a privilege communication, prejudice, and taint of the administrative proceedings.  *See, e.g.*, *Matter of the Search of 636 S. 66th Terrace, Kan. City, Kan.*, 835 F. Supp. 1304, 1306 (D. Kan. 1993) (stating that the government's possession of other parties' privileged information results in prejudice); *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK (AGRx), 2013 WL 2278122, at *3 (C.D. Cal. May 20, 2013) (finding prejudice where "counsel not only used privileged materials to craft their claims, but incorporated verbatim content from those materials in the pleadings"); *Richards v. Jain*, 168 F. Supp. 2d 1195, 1200 (W.D. Wash. 2001) ("[I]t is apparent that eleven months of access to privileged materials creates an appearance of impropriety and so taints the proceedings that the harsh remedy of disqualification is justified.").

### b.     ITU's Claims Are Ripe for Judicial Determination.

ITU's claims are ripe, both constitutionally and prudentially, because ITU is suffering a present injury, its claims raise a legal question requiring little factual development, and ITU will suffer great hardship without judicial intervention.  "Ripeness presents a constitutional issue and thus a jurisdictional one only when a plaintiff's injury depends on so many future events that a judicial opinion would be advice about remote contingencies."  *In re Caesars Entm't Operating Co.*, 562 B.R. 168, 175 (Bankr. N.D. Ill. 2016) (citation omitted).   Here, there are no future contingencies that stand in the way of adjudicating ITU's claim about the privileged status of the Report.  ITU asserted its privilege promptly, specifically, and serially.  SEVP did not produce evidence of waiver, as it was required to do before reviewing and relying upon that Report.  *See Chevron Corp.*, 1996 WL 444597, at *4 (stating that a party claiming waiver "must bear the burden of *production*.").  Indeed, SEVP refused to identify who disclosed the Privileged Report, acknowledging that ITU did not know the identity and therefore could not have authorized waiver.  *See Commodity Futures Trading Comm'n*, 471 U.S. at 348-49.  SEVP instead reviewed the Report and relied heavily on its contents in issuing the 2018 Withdrawals.

Courts apply a two-part test to determine prudential ripeness "in the administrative context: 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'"  *In re Coleman*, 560 F.3d 1000, 1006 (9th Cir. 2009) (citing

1   *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v.*

2   *Sanders*, 430 U.S. 99 (1997)).  "Legal questions that require little factual development are more

3   likely to be ripe."  *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir.

4   1996).  The question of whether a document is privileged is predominantly legal, and no further

5   factual development is required to determine the result.  SEVP has had numerous opportunities to

6   produce evidence that the privilege was waived—by responding to any of ITU's numerous letters

7   asserting privilege, responding to ITU's briefs filed with the administrative agency, or disclosing

8   the information orally in the "interview." SEVP has refused, time and again, to produce any

9   evidence that a waiver occurred, including in its Opposition.  Furthermore, ITU will suffer

10  significant hardship if SEVP is permitted to continue to review and circulate the Privileged

11  Report in the form of loss of confidentiality, prejudice, and tainted administrative proceedings.

12  *See 636 S. 66th Terrace*, 835 F. Supp. at 1306; *Kinetic Concepts*, 2013 WL 2278122 at *3;

13  *Richards*, 168 F. Supp. 2d at 1200.

14           **c.      ITU Has Exhausted All Available Administrative Remedies
                     Even Though It Is Not Required to Do So.**

15

16           Administrative exhaustion is an affirmative defense that Defendants, not ITU, must plead

17  and prove.  *Chavez v. United States*, No. CV 16 00685 HG/KJM, 2017 WL 1424635, at *3 (D.

18  Haw. Apr. 20, 2017) ("exhaustion of administrative remedies is . . . an affirmative defense that

19  a defendant has the burden of raising and proving.").  Here, SEVP cannot meet its burden to

20  prove that ITU failed to exhaust administrative remedies because numerous exceptions to the

21  exhaustion requirement apply.  *See, e.g., Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th

22  Cir. 1980) ("exhaustion is not required if administrative remedies are inadequate or not

23  efficacious, [citations]; where pursuit of administrative remedies would be a futile gesture,

24  [citations;] [w]here irreparable injury will result unless immediate judicial review is permitted,

25  [citations]; or where the administrative proceeding would be void, [citations].").

26           First, administrative exhaustion is not required where an agency action becomes operative

27  pending appeal.  *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 825 (9th Cir. 2002) ("if the

28  regulations do not allow for the decision to be rendered inoperative pending administrative

1    appeal, then exhaustion of administrative appeals is not required and the matter was properly

2    before the district court.") (citing *Darby v. Cisneros*, 509 U.S. 137, 154 (1993)).  This is precisely

3    the situation before this Court.  SEVP's current action regarding the Privileged Report became

4    immediately operative when SEVP possessed, used, reviewed, and cited the Privileged Report

5    and later attached it to the 2018 Withdrawal.

6          Second, under the APA, "exhaustion may be excused if . . . irreparable injury would result

7    unless immediate judicial review is permitted."  *Stellar IT Sols., Inc. v. U.S. Citizenship &*

8    *Immigration Servs.*, No. CV 18-2015 (RC), 2018 WL 6047413, at *5 (D.D.C. Nov. 19, 2018)

9    (internal citations omitted).  Courts acknowledge that the loss of confidentiality of attorney-client

10   privileged documents is an irreparable injury.  *See, e.g.*, *Hernandez v. Tanninen*, 604 F.3d 1095,

11   1101 (9th Cir. 2010) (stating that "appeal after disclosure of the privileged communication is an

12   inadequate remedy for the irreparable harm a party likely will suffer") (quoting *Admiral Ins. Co.*

13   *v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1491 (9th Cir. 1989)); *636 S. 66th Terrace*,

14   835 F. Supp. at 1306 ("Once lost, confidentiality cannot be restored. Movants have no other

15   remedy, and their injury is irreparable.").  Here, SEVP is in possession of the Privileged Report,

16   refuses to return it, and indeed threatens to distribute it further by making it part of the public

17   record.  In addition to this loss of confidentiality, allowing the 2018 Withdrawal to pass through

18   the remaining steps of the SEVP Appeal Process will spread the prejudice stemming from

19   knowledge of the Privileged Report and further taint the administrative proceedings.  *See, e.g.*,

20   *Richards*, 168 F. Supp. 2d at 1200.  Accordingly, if Defendants are not stopped, ITU will suffer

21   irreparable harm both from the loss of confidentiality and by enduring tainted proceedings.

22         Third, exhaustion is not required because ITU challenges the adequacy of the agency's

23   procedures.  *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ("[E]xhaustion has not been

24   required where the challenge is to the adequacy of the agency procedure itself, such that 'the

25   question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical

26   with the merits of [the plaintiff's] lawsuit.'"), *abrogated by statute on other grounds as stated in*

27   *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006).  The "availability of judicial review for 'colorable'

28   constitutional claims is presumed."  *Boettcher v. Sec'y of Health & Human Servs.*, 759 F.2d 719,

1   721 (9th Cir. 1985).  A constitutional challenge to agency procedures is colorable so long as it is

2   not "wholly insubstantial, immaterial, or frivolous."  *Id.* at 722.  The problem here is that SEVP

3   intruded on ITU's attorney-client privilege based on its assertion of waiver without providing

4   evidence or an opportunity to rebut the claim.  One challenging the adequacy of agency

5   proceedings should not first be required to endure, and suffer the irreparable harms caused by,

6   those inadequate proceedings.

7       Finally, to the extent it must, ITU has exhausted all available administrative remedies

8   relating to the citation of the Privileged Report in the 2018 Withdrawal.  SEVP's unauthorized

9   use, possession, review, and citation of the Privileged Report, and its refusal to return the Report,

10  constitute final agency action.  (*Supra* pp. 6-7.)  SEVP's actions led to the loss of confidentiality,

11  prejudice, and taint of the judicial proceedings.  *See 636 S. 66th Terrace*, 835 F. Supp. at 1306;

12  *Kinetic Concepts*, 2013 WL 2278122, at *3; *Richards*, 168 F. Supp. 2d at 1200.  ITU raised the

13  issue of privilege multiple times, taking all action available to the school—first in several letters

14  to SEVP before responding to the Notice of Intent; then in its responsive brief to the Notice of

15  Intent; then in two appeals of the 2017 and 2018 Withdrawals.

16          **4.      Mandamus Relief Is Available Because the Agency Has No Discretion
                      Regarding Privilege, and the Court Has Prospective Jurisdiction.**

17

18      The Opposition claims (without basis) that mandamus relief is not available to ITU.  As

19  ITU has separately argued, to the extent SEVP's action may not be final, the Court may also

20  provide emergency relief pursuant to the Mandamus and Venue Act ("MVA") and the All Writs

21  Act ("AWA"), so long as ITU's claims are (1) clear and certain, (2) nondiscretionary, and (3) no

22  other adequate remedy is available.  *Lowry v. Soc. Sec. Admin.*, No. CV-99-1210-ST, 2000 WL

23  730412, at *20 (D. Or. June 7, 2000).  Specifically, the MVA permits a court to direct the action

24  of an inferior tribunal through a writ of mandamus, and the AWA extends the court's jurisdiction

25  to matters over which it has prospective jurisdiction.  *See F.T.C. v. Dean Foods Co.*, 384 U.S.

26  597, 603 (1966); *see also Dist. of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 14-15 (D.C. 1993);

27  *Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984)  Just as a circuit

28  court can rely upon these acts to intercede in ongoing district court proceedings to protect the

1   attorney-client privilege, so too must a district court be able to rely on them to issue emergency

2   relief in an administrative proceeding to do the same.  *See Hernandez*, 604 F.3d at 1101; *In re*

3   *Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761-63 (D.C. Cir. 2014).  Defendants argue that these

4   precedents in which both the Ninth Circuit and the D.C. Circuit directed district courts to observe

5   the attorney-client privilege are not directly on point.  (ECF No. 32 at 18.)  On the contrary, they

6   demonstrate that the attorney-client privilege is so important to the preservation of liberty in this

7   country that interlocutory review is often necessary to protect it.  *Hernandez*, 604 F.3d at 1102

8   ("because the district court's order finding a blanket waiver of both the attorney-client and work

9   product privileges is 'particularly injurious' . . . we conclude that it is appropriate to grant a writ

10   of mandamus to correct the district court's overbroad privilege ruling.").  This Court's authority

11   to review the actions of Defendants directly parallels the authority that an appellate court has to

12   review the actions of a district court.

13       ITU's claims are clear and certain for the same reasons that ITU is likely to succeed on the

14   merits of those claims.  *See Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1124

15   (N.D. Cal. 2007) (noting that, where the relief sought "is identical under either the APA or the

16   mandamus statute, proceeding under one as opposed to the other is insignificant.").  SEVP

17   violated ITU's substantive due process rights by intentionally reviewing and relying on the

18   Privileged Report with knowledge that it was privileged and no reasonable basis for claiming

19   waiver.  (*Supra* pp. 4-5.)  SEVP violated ITU's procedural due process rights by ignoring the

20   evidence ITU presented that the document is privileged and asserting that a waiver occurred

21   without presenting any evidence that it had. (*Supra* p. 5, n. 4.)  SEVP's final determination as to

22   whether the document was privileged and could be reviewed and cited by the agency was

23   contrary to federal common law.  (*Supra* pp. 2-4.)

24       Furthermore, the duty to refrain from reviewing and citing to attorney-client privileged

25   communications does not entail any discretion and is totally free from doubt.  *See Indep. Mining*

26   *Co. v. Babbitt*, 105 F.3d 502, 508 (9th Cir. 1997) ("An agency 'ministerial act' for purposes of

27   mandamus relief has been defined as a clear, non-discretionary agency obligation . . .");

28   *Hernandez*, 604 F.3d at 1101 (issuing writ of mandamus to bar disclosure of attorney-client

1    privileged document); *Kellogg*, 756 F.3d at 761-63 (same).  All that Defendants must do is *stop*

2    reviewing and relying upon the contents of the Privileged Report.  Defendants need not make any

3    discretionary decisions in carrying out such a simple duty.

4              Having established the other two elements, to the extent ITU is not permitted to pursue

5    this action under the Constitution or the Administrative Procedure Act directly, there are no

6    adequate means for ITU to seek relief other than through a writ of mandate.  Accordingly, ITU

7    seeks mandamus relief only as an alternative in the event relief is not otherwise available.[5]

8          **B.    ITU's Request for a Preliminary Injunction Presents a Serious Question**
              **Going to the Merits.**
9
             In addition to being likely to succeed on the merits, ITU's request for a preliminary
10
     injunction presents a serious question going to the merits and the balance of hardships tips sharply
11
     in ITU's favor.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)
12
     ("'serious questions going to the merits' and a hardship balance that tips sharply toward the
13
     plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test
14
     are also met.").   A serious question is one "which cannot be resolved one way or the other at the
15
     hearing on the injunction and as to which the court perceives a need to preserve the status quo lest
16
     one side prevent resolution of the questions or execution of any judgment by altering the status
17
     quo."  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (citation omitted).  "Serious
18
     questions need not promise a certainty of success, nor even present a probability of success, but
19
     must involve a 'fair chance of success on the merits.'"  *Id.* (citation omitted).  ITU's claim present
20

21              [5] Defendants contend that the Court lacks jurisdiction that cannot be supplemented by the
     AWA.  The authorities they cite, however, involved cases where the court found no applicable
22   exception to the exhaustion requirement or where Congress specifically "intended to limit judicial
     review to specific situations" not involving review of the merits of the substantive agency action.
23   *V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1031-33 (11th Cir. 1983) (holding
     that though jurisdiction was possible, the "lengthy review of the merits required in a close case
24   such as this is so at odds with the statutory framework [under 42 U.S.C. § 405, regarding health
     benefits] that a conflict is created which requires . . . that higher standards for a preliminary
25   injunction be applied in this case."); *see also Heckler v. Ringer*, 466 U.S. 602, 618 (1984)
     (holding that "respondents do not raise a claim that is wholly 'collateral' . . . they have no
26   colorable claim that an erroneous denial . . . will injure them in a way that cannot be remedied . . .
     [and] exhaustion is in no sense futile.").  Here, however, numerous exceptions to the exhaustion
27   requirement apply.  (*Supra* pp. 8-10.)  Moreover, ITU does not seek review of the merits of the
     Withdrawal decision, only of the collateral decision regarding attorney-client privilege.
28

such a serious question because, without a Preliminary Injunction, SEVP will be permitted to alter the status quo by further distributing the Privileged Report and defeating the entire purpose of this action.

## C.      Prejudice, Tainted Proceedings, and Loss of Confidentiality Are Irreparable Harms.

The Opposition's attempt to counter ITU's showing of irreparable harm falls flat, as courts routinely recognize that the loss of confidentiality of attorney-client privileged documents is an irreparable injury warranting the exercise of the Court's equitable powers. *See, e.g.*, *Hernandez*, 604 F.3d at 1101; *636 S. 66th Terrace*, 835 F. Supp. at 1306.  Here, the record is clear that SEVP is in possession of the Privileged Report and will not return it.  For that reason alone, ITU will suffer irreparable harm.  In addition, the further spread of the Report will taint the entire administrative process. *See, e.g.*, *Richards*, 168 F. Supp. 2d at 1200.

Defendants argue that, despite these authorities clearly stating that intrusions into the attorney-client privilege cause irreparable harm, ITU's delay in seeking injunctive relief in court should be counted against it.  (ECF No. 32 at 22.)  Notably, Defendants do not cite a single analogous case in support of this argument.  Paradoxically, Defendants also argue that ITU cannot seek that relief because SEVP's decision regarding withdrawal is not yet final.  (*Id.* at 14.) Which one is it?  In any event, ITU did not delay in asserting the privilege; it did so as soon as it could after learning that SEVP possessed the Privileged Report.  (O'Brien Decl. Ex. C.)  ITU then repeatedly asserted its privilege at every opportunity, including in the Response to the Notice of Intent and in two appeal briefs.  (*Id.* ¶¶ 19, 21, 27.)  Nevertheless, ITU reasonably waited to see whether SEVP would actually rely on the Report.  SEVP responded by actually attaching the Report to the 2018 Withdrawal, a shocking and intentional display of disdain for ITU's privilege assertion and legal ethics.  (*Id.*, Ex. J.)  This action is timely, and the fact that it took some time before the issue was ready for judicial determination is a product of the timing of the SEVP

1    adjudicative process, not because of any lack of diligence on ITU's part.[6]

2    **D.    The Balance of the Hardships Tips Sharply in ITU's Favor.**

3    The injury that ITU may suffer at the hands of Defendants far outweighs any harm a

4    preliminary injunction might cause Defendants. *Comet Techs. United States of Am. Inc. v.*

5    *Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (finding

6    that the balance tipped in the plaintiff's favor because the plaintiff would be harmed by disclosure

7    of confidential information, though the defendant would not be harmed if restrained from

8    disclosing that information). As detailed above, those injuries include the loss of confidentiality

9    and prejudice to ITU in all further proceedings before SEVP. *636 S. 66th Terrace*, 835

10   F. Supp. at 1306; *Kinetic Concepts*, 2013 WL 2278122, at *3; *Richards*, 168 F. Supp. 2d at 1200.

11   On the other hand, SEVP will not suffer any meaningful hardship from having to respect

12   ITU's attorney-client privilege. SEVP will still have "access to any sources of possible evidence"

13   and "can easily obtain whatever evidence . . . appears in the lawyers' witness summaries by

14   interviewing the witnesses itself." *E.E.O.C. v. Lutheran Soc. Servs.*, 186 F.3d 959, 966 (D.C. Cir.

15   1999). Furthermore, "the long-range consequences could be quite damaging" to the

16   government's interests by "[w]eakening the ability of lawyers to represent clients at the pre-claim

17   stage of anticipated litigation" and "inevitably reduc[ing] voluntary compliance with the law,

18   produc[ing] more litigation, and increas[ing] the workload of government law-enforcement

19   agencies." *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998).[7]

20   **E.    Public Interest Favors Protecting the Attorney-Client Privilege from Government Intrusion.**

21

22   The Supreme Court has recognized that "sound legal advice or advocacy serves public

23

24   [6] Defendants' discussion of the *Herguan* cases is of no moment because ITU is not
25   seeking to reverse SEVP's ultimate adjudication of ITU's certification, as in those cases. This
     case is focused on SEVP's violation of ITU's attorney-client privilege.

26   [7] Defendants attempt to prejudice this Court through a lengthy recitation of purported
     evidence related to ITU's compliance with SEVP regulations. If SEVP believes it can show a
27   basis for withdrawal of ITU's certification without reliance on the Privileged Report—and
     without all personnel tainted by access to the Report—it should do so and cease the violation of
28   ITU's attorney-client privilege.

1   ends and that such advice or advocacy depends upon the lawyer's being fully informed by the

2   client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Therefore, the attorney-client

3   privilege serves a public purpose by "encouraging full and frank communication between

4   attorneys and their clients and thereby promote[s] broader public interests in the observance of

5   law and administration of justice."  *Id.*  Circuit courts agree that, without the privilege, there

6   would be less voluntary compliance and more litigation.  *In re Sealed Case*, 146 F.3d at 887.

7   Here, ITU sought to better comply with the law by seeking legal advice.  Defendants' conduct

8   undermines those efforts at voluntary compliance.  *Id.*; *see also Kellogg*, 756 F.3d at 760-61

9   (discussing the importance of confidential internal investigations in heavily regulated industries).

10  The public interest heavily supports strong protections for attorney-client privileged materials.

11      A court dealing with the exact same regulations at issue here has explained that "[t]he

12  interests of the government . . . simply are not so urgent . . . that the private interest of the school

13  in protecting its license should not be accorded procedures consistent with due process."

14  *Blackwell Coll.*, 454 F.2d at 935.  On the other hand, Defendants' contrary authorities are

15  distinguishable because they address circumstances in which plaintiffs sought to enjoin *all* efforts

16  to enforce legislation or to enjoin the government's control of its "internal affairs" through

17  termination of its employees.  *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S.

18  1345, 1345 (1977) (staying an order that permanently "enjoined enforcement of the California

19  Automobile Franchise Act"); *Sampson v. Murray*, 415 U.S. 61, 83 (1974) (discussing denial of

20  injunctions to prevent termination of employees and citing *White v. Berry*, 171 U.S. 366 (1898)).[8]

21  **IV.    CONCLUSION**

22      The Court should grant ITU's motion for a preliminary injunction.

23

24

25

26      [8] Defendant's other authorities simply are not relevant because they stand only for the proposition that the executive branch has special expertise in the realm of immigration law, but

27  they say nothing about its competence with respect to Due Process and the attorney-client privilege.

28

1    Dated:  April 5, 2019                    MORRISON & FOERSTER LLP

2

3                                             By:  _____/s/ Joshua Hill Jr._____
                                                      JOSHUA HILL JR.
4
                                             Attorneys for Plaintiff
5                                            INTERNATIONAL TECHNOLOGICAL
                                             UNIVERSITY FOUNDATION, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28