DAVID L. ANDERSON (CABN 149604)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

REBECCA A. FALK (CABN 226798)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7022
      FAX: (415) 436-6748
      Rebecca.Falk@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL TECHNOLOGICAL UNIVERSITY FOUNDATION, INC., <br><br>           PLAINTIFF, <br><br>     V. <br><br> KIRSTJEN M. NIELSEN, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, STUDENT EXCHANGE AND VISITOR PROGRAM, AND DOES 1 THROUGH 10, INCLUSIVE, <br><br>     Defendants. | CASE NO. 18-06228 EJD <br><br> DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS <br><br> Date:  June 13, 2019 <br> Time:  9 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………...ii

I.     INTRODUCTION ....................................................................................................................1

II.    ARGUMENT ...........................................................................................................................2

      A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's APA Claims
             Because There Has Been No Final Agency Action ......................................................2

             1.     The APA's limited waiver of sovereign immunity does not apply in
                   the absence of a final agency action. ...........................................................2

             2.     Plaintiff's APA claims are not ripe and have not been administratively
                   exhausted..........................................................................................................5

      B.     ITU Has Failed To Sufficiently Allege That This Court Has Jurisdiction
             Pursuant to the Mandamus and Venue Act or the All Writs Act. .......................................8

             1.     This Court lacks subject matter jurisdiction pursuant to the Mandamus
                   and Venue Act because Plaintiff failed to specify a nondiscretionary
                   duty that Defendants failed to perform. ........................................................8

             2.     In the absence of subject matter jurisdiction pursuant to the Mandamus
                   and Venue Act, this Court also lacks subject matter jurisdiction
                   pursuant to the All Writs Act because it does not confer jurisdiction
                   standing alone. .............................................................................................10

      C.     ITU Is Not Entitled To Declaratory Relief. ..............................................................10

      D.     ITU's First Claim For Declaratory Relief for Violation of Its Fifth
             Amendment Due Process Rights Should Be Dismissed For Failure to State a
             Claim. ........................................................................................................................11

III.   CONCLUSION......................................................................................................................15

1

2

# TABLE OF AUTHORITIES

3

Cases                                                                                    Page(s)

4

5

*Aircraft & Diesel Corp. v. Hirsch*,
   331 U.S. 752 (1947)............................................................................................. 7

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 11

7

*Barbur v. U.S. Citizenship & Immigration Servs.*,
   at 2013 WL 3285490 (June 26, 2013) ................................................................. 8

8

9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................... 11

10

11

*Bennett v. Spear*,
   520 U.S. 154, (1997)....................................................................................... 3, 4

12

*Blackwell Coll. of Bus. v. Attorney Gen.*,
   454 F.2d 928 (D.D.C. 1971) .............................................................................. 13

13

14

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988)............................................................................................. 3

15

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ................................................................................. 4

16

17

*Burns Ranches v. Dep't. of Interior*,
   851 F.Supp.2d 1267 (D. Oregon 2012).............................................................. 11

18

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ............................................................................... 11

19

20

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004)............................................................................................. 9

21

*Ching v. Mayorkas*,
   725 F.3d 1149 (9th Cir. 2013) ........................................................................... 12

22

23

*Clutchette v. Rushen*,
   770 F.2d 1469 (9th Cir.1985) ..................................................................... 7, 9, 12

24

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ............................................................................. 4

25

26

*Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*,
   642 F.3d 849 (9th Cir. 2011) ............................................................................. 10

27

*Cty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998)........................................................................................... 13

28

*Dunn & Black P.S. v. United States*,
    492 F.3d 1084 (9th Cir. 2007) .................................................................. 2

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) .................................................................. 4

*Gallo Cattle Co. v. U.S. Dep't of Agric.*,
    159 F.3d 1194 (9th Cir. 1998) .............................................................. 2, 3

*Gilbert v. DaGrossa*,
    756 F.2d 1455 (9th Cir. 1985) .................................................................. 2

*Heckler v. Ringer*,
    466 U.S. 602 (1984) .................................................................................. 9

*Hernandez v. Tanninen*,
    604 F.3d 1095 (9th Cir. 2010) .................................................................. 9

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2nd Cir. 1985) ................................................................ 10

*In re Coleman*,
    560 F.3rd 1000 (9th Cir. 2009) ................................................................ 6

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) .................................................................. 9

*In re Napster, Inc. Copyright Litig.*,
    479 F.3d 1078 (9th Cir. 2007) ................................................................ 12

*Kildare v. Saenz*,
    325 F.3d 1078 (9th Cir. 2003) .............................................................. 8, 9

*Liang v. Ashcroft*,
    370 F.3d 994 (9th Cir. 2004) .................................................................... 6

*Maness v. Meyers*,
    419 U.S. 449 (1975) ........................................................................ 7, 9, 12

*Matsuo v. United States*,
    416 F.Supp.2d 982 (D. Haw. 2006) .......................................................... 2

*Matter of the Search of 636 S. 66th Terrace, Kan. City., Kan*,
    835 F. Supp 1304 (D. Kan. 1993) ............................................................ 5

*McKart v. United States*,
    395 U.S. 185 (1969) .................................................................................. 6

*Monolith Portland Midwest Co. v. Reconstruction Finance Corp.*,
    178 F.2d 854 (9th Cir. 1949) .................................................................... 7

*Montana Chapter of Civilian Technicians v. Young*,
    514 F.2d 1165 (9th Cir. 1975) .................................................................. 7

*Murillo v. Mathews*,
    588 F.2d 759 (9th Cir. 1978) .................................................................... 7

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ................................................................................ 6

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) ............................................................ 3, 11

*Or. Nat. Desert Ass'n. v. U.S. Forest Service*,
   465 F.3d 977 (9th Cir. 2006) .............................................................. 4, 5

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*,
   474 U.S. 34 (1985) ................................................................................ 10

*Peters v. Rust Consulting, Inc.*,
   2013 WL 12202728 (C.D. Cal. Dec. 18, 2013) .................................... 2

*Presbyterian Church (U.S.A.) v. United States*,
   870 F.2d 518 (9th Cir. 1989) .............................................................. 3, 11

*Puga v. Chertoff*,
   488 F.3d 812 (9th Cir. 2007) ................................................................ 6

*Rashtabadi v. I.N.S.*,
   23 F.3d 1562 (9th Cir.1994) ................................................................. 8

*Renegotiation Board v. Bannercraft Clothing Co.*,
   415 U.S. 1 (1974) ................................................................................... 7

*Robinson v. Salazar*,
   885 F.Supp.2d 1002 (E.D. Cal. 2012) ................................................. 11

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................................. 13

*Scott v. Pasadena Unif. Sch. Dist.*,
   306 F.3d 646 (9th Cir. 2002) ................................................................ 6

*Sheikh v. Lynch*,
   2015 WL 7731802 (N.D. Cal. Dec. 1, 2015) ....................................... 6

*Skelly Oil Co. v. Phillips Petr. Co.*,
   399 U.S. 667 (1950) ............................................................................. 11

*Ukiah Valley Med. Ctr*,
   911 F.2d & n1 ........................................................................................ 6

*United States v. Chen*,
   99 F.3d 1495 (9th Cir.1996) ............................................................... 12

*United States v. Guerrero*,
   693 F.3d 990 (9th Cir. 2012) ................................................................ 9

*United States v. Neill*,
   952 F. Supp. 834 (D.D.C. 1997) ........................................................ 15

*United States v. Restrepo*,
   930 F.2d 705 (1991) ............................................................................ 14

*United States v. Ruehle,*
    583 F.3d 600 (9th Cir. 2009) .................................................................. 11

*United States v. Schell,*
    775 F.2d 559 (4th Cir. 1985) .................................................................. 14

*United States v. Stinson,*
    647 F.3d 1196 (2011) ............................................................................. 14

*United States v. Voight,*
    89 F.3d 1050 (3rd Cir. 1996) ................................................................. 14

*V.N.A. of Greater Tift County, Inc. v. Heckler,*
    711 F.2d 1020 (11th Cir. 1983) ............................................................. 10

*Vieux v. E Bay Reg'l Park Dist.,*
    906 F.2d 1330 (9th Cir. 1990) ................................................................. 6

*Wedges/Ledges of Cal., Inc. v. City of Phoenix,*
    24 F.3d 56 (9th Cir.1994) ....................................................................... 12

*Wild Fish Conservancy v. Jewell,*
    730 F.3d 791 (9th Cir. 2013) ................................................................... 2


Statutes

5 U.S.C. § 704 ................................................................................................. 7

5 U.S.C. § 706 ................................................................................................. 1

28 U.S.C. § 1651(a) ...................................................................................... 10

28 U.S.C. § 2201 ............................................................................................ 1

28 U.S.C. §§ 1361 ...................................................................................... 1, 8

28 U.S.C §§ 1331 ........................................................................................... 2

U.S. Const. amend. V ................................................................................... 11


Rules

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 1

Federal Rule of Civil Procedure 12(b)(6) .................................................... 11

## I.      INTRODUCTION

Plaintiff International Technological University Foundation, Inc. ("ITU") brings this action (1) for Declaratory Relief for Violation of Fifth Amendment Due Process Rights and Federal Common Law under 28 U.S.C. § 2201; (2) Declaratory Relief under the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"); (3) Injunctive Relief under the APA; and (4) Relief under the Mandamus and Venue Act and All Writs Act, 28 U.S.C. §§ 1361 and 1651.  ITU seeks an order from this Court enjoining the further use of a document that ITU alleges is attorney-client privileged ("Nolan Memorandum") in the ongoing administrative proceeding to withdraw ITU's certification to admit nonimmigrant students.  Federal defendants Kirstjen M. Nielsen, in her official capacity as Secretary of U.S. Department of Homeland Security ("DHS"), United States of America, DHS, and U.S. Immigration and Customs Enforcement ("ICE"), Student Exchange Visitor Program ("SEVP") (collectively, "Federal Defendants") filed a Motion to Dismiss ITU's Complaint on December 17, 2018.  Dkt. No. 27.  ITU filed an Opposition on March 22, 2019.  Dkt. No. 33.  Defendants herein reply to ITU's Opposition.

ITU's Opposition fails to cure the fatal deficiencies in its Complaint.  First, ITU's Complaint fails to identify a "final agency action" that is subject to judicial review pursuant to the APA.  Instead, ITU's Opposition makes clear that it seeks to extricate from an ongoing administrative proceeding the agency's non-final position on a single document to obtain judicial review before the issue is ripe.  ITU's argument that SEVP's position on the Nolan Memorandum could be construed as "final" by way of an agency letter is directly contradicted by ITU's pending agency appeal, the outcome of which could moot the entire controversy.  Moreover, SEVP's position that the Nolan Memorandum is not privileged does not bear the necessary hallmarks of final agency action that would subject it, standing alone, to judicial review.  Second, Ninth Circuit precedent holds that the attorney-client privilege is a rule of evidence, not a constitutional right.  ITU has not addressed this authority, which forecloses its constitutional claim in this case.  Nor does the government's conduct shock the conscience, especially in light of the administrative procedures that allow ITU to advocate for continued SEVP certification.  Finally, given these fatal flaws, and its inability to identify a nondiscretionary duty of an officer, ITU's claims are insufficient to support its claim for a writ of mandamus.

Accordingly, ITU's Complaint should be dismissed in its entirety.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
18-6228 EJD                                      1

## II.    ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's APA Claims Because There Has Been No Final Agency Action

#### 1.    The APA's limited waiver of sovereign immunity does not apply in the absence of a final agency action.

Both ITU's Second and Third Claims for relief pursuant to the APA should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) because ITU has failed to identify a final agency action subject to judicial review. Tellingly, ITU never uses the words "final agency action" in its Complaint. *See* Compl., generally. In fact, ITU's Complaint concedes that SEVP's withdrawal proceeding against it is ongoing in light of its appeal pending with the agency. *See* Compl., ¶¶ 49-50. ITU's argument that certain agency actions "amount" to a final determination regarding SEVP's position on whether the Nolan Memorandum is privileged is not persuasive or supported by any relevant precedent. Nor can this argument be reconciled with correspondence between ITU and SEVP regarding this matter, or ITU's pending agency appeal.[1] *See* Opp., 18:8-22. In the absence of a final agency action, this court lacks subject matter jurisdiction over ITU's APA claims.

ITU's argument that it has established jurisdiction with respect to its APA claims is refuted by Ninth Circuit precedent. *See* Opp., 14:17-16:9; *see, i.e.*, *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 802 (9th Cir. 2013) (holding that because the claim did not challenge final agency action, the court lacked jurisdiction to consider it); *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198–99 (9th Cir. 1998) (in the absence of a final agency action, the court lacked subject matter jurisdiction). It is beyond dispute that the APA does not provide an independent basis for subject matter jurisdiction.[2] *See* *Gallo Cattle*, 159 F.3d at 1198–99. *See id.* Instead, the APA "contains a specific waiver of the United States' sovereign immunity." *Matsuo v. United States*, 416 F.Supp.2d 982, 988 (D. Haw. 2006) (citing

---

[1] In light of ITU's failure to allege a "final agency action," its argument that its Complaint should be read to include this allegation is tantamount to asserting new facts in its Opposition. However, "[t]he Court cannot consider new facts alleged in opposition papers in deciding a Rule 12(b)(6) motion." *Peters v. Rust Consulting, Inc.*, 2013 WL 12202728, at *2 (C.D. Cal. Dec. 18, 2013)).

[2] In its Motion to Dismiss, the Federal Defendants set out the well-settled proposition that the general jurisdictional statutes found at 28 U.S.C §§ 1331 and 1361 do not constitute a waiver of sovereign immunity. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (quoting *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458-59 (9th Cir. 1985). Although 28 U.S.C. § 1331 may provide jurisdiction over federal questions, that does not address whether sovereign immunity may bar a suit.

1  *Bowen v. Massachusetts*, 487 U.S. 879, 891–92 (1988)); *see also Navajo Nation v. Dep't of the Interior*,

2  876 F.3d 1144, 1168 (9th Cir. 2017).  The APA "waives sovereign immunity broadly for all causes of

3  action that meet its terms" irrespective of whether the claims satisfy the APA's requirements for judicial

4  review of an agency action.  *Navajo Nation*, 876 F.3d at 1172; *see also The Presbyterian Church*

5  *(U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (Section 702 is "an unqualified waiver of

6  sovereign immunity in actions seeking nonmonetary relief").

7          Ninth Circuit precedent further holds, however, that the APA's sovereign immunity waiver is

8  limited by the APA's requirements for judicial review of APA causes of action.  *See id. at* 1198–99 (the

9  APA's waiver of sovereign immunity is limited, including Section 704's limitation to review of only

10  "final agency action" and "agency action otherwise reviewable by statute").  In *Gallo Cattle*, the Ninth

11  Circuit affirmed the district court's dismissal of an APA claim where there was no final agency action

12  for lack of subject matter jurisdiction.  *See Gallo Cattle*, 159 F.3d at 1199 (holding that the lack of final

13  agency action meant § 704 "could not vest the district court with jurisdiction to review the order"); *id*. at

14  1200 (same).  The *Navajo Nation* panel recently revisited *Gallo Cattle*'s holding that the final agency

15  action requirement in section 704 is a limitation on the APA's waiver of sovereign immunity, and

16  concluded that it was better described as "an independent element without which courts may not

17  determine APA claims."  *Navajo Nation*, 876 F.3d at 1171 ("§ 704's requirement that to proceed under

18  the APA, agency action must be final or otherwise reviewable by statute is an independent element

19  without which courts may not determine APA claims.")  *Navajo Nation* did not, however, overrule

20  *Gallo Cattle*, nor did it criticize *Gallo Cattle*'s holding that with respect to claims pursuant to the APA,

21  the absence of a final agency action results in a lack of subject matter jurisdiction.  *See id*. at 1170-71.

22  Either way, the Court lacks subject matter jurisdiction because ITU has failed to sufficiently allege any

23  final agency action.  The out-of-circuit authority cited by ITU is not controlling.  *See* Opp. 14:18-16:9.

24          ITU's argument that its Complaint identifies a final agency action has no merit.  An agency

25  action is final if (1) it "marks the consummation of the agency's decision-making process—it must not

26  be of a merely tentative or interlocutory nature" and (2) is "one by which rights or obligations have been

27  determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78,

28  (1997) (internal citations and quotations omitted).  ITU has failed to identify any action that marked the

end of SEVP's decision-making process with respect to ITU's assertion that the Nolan Memorandum is privileged. *See* Opp., 18:11-22. Moreover, the very definition of a "final agency action" renders moot ITU's argument that a series of events could "amount" to a final agency action, or that any one in a handful of actions could equally be considered under the law as a final agency action. *See* Opp., 18:8-10; *Bennett,* 520 U.S. 177–78. ITU's argument that any of the letters SEVP wrote to ITU about this matter, which ITU filed in support of its Motion for Preliminary Injunction and which have been incorporated by reference into its Complaint, can be considered the agency's final position is belied by the ongoing nature of the enforcement action, and, further, none of the letters contain such a statement.[3] *See* Request for Judicial Notice ("RJN"), Exh. B, D, and F. Nor has ITU alleged that SEVP included any statement in the superseding Withdrawal on Notice SEVP issued to ITU in April 2018 (the "2018 Withdrawal"), also incorporated by reference into ITU's Complaint, that its position on the Nolan Memorandum was final, and, again, ITU appealed. *See* Opp., 12:24-25; *see* RJN Exh. H. ITU's allegation that SEVP "ignored" its August 6, 2018 letter rings hollow, as ITU's agency appeal was pending at the time. Opp., 18:15-17.

Nor has ITU established that SEVP's position on the Nolan Memorandum has determined its rights or obligations. ITU alleges that it is SEVP-certified and gained access to SEVP's Student and Exchange Visitor Information System ("SEVIS") (Compl., ¶ 33), and concedes that access continues during the pendency of its appeal (Compl. ¶ 47). *See* Opp., 18:23-19:1. Moreover, ITU's citation to *Oregon Natural Desert Association* does nothing to advance its claims. *See* Opp., 10:14-22, citing *Or. Nat. Desert Ass'n. v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006). In *Oregon Natural Desert Association*, the administrative agency's action set final parameters for a grazing season and imposed legal consequences on a grazing permit holders with immediate effect. *Id.* Here, however, ITU's alleged loss of confidentiality and the alleged taint of the ongoing enforcement proceeding does not have a direct and immediate effect on its day-to-day operations. ITU alleges that in July 2016, SEVP

---

[3] As set out in Defendant's Request for Judicial Notice, documents incorporated by reference to a complaint may be considered by the court on motion to dismiss without converting it into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Defendants may attach the documents to a motion to dismiss and the court may consider them. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

informed it that SEVP had received the Nolan Memorandum in January 2015.  Compl, ¶ 34.  ITU makes

no allegations regarding how its day-to-day operations have been impacted by SEVP's ongoing

possession of the Nolan Memorandum from that time forward, especially where it concedes that it has

not alleged any loss of access to SEVIS or prohibition on its ability to enroll nonimmigrant students.

Compl., ¶ 47.  ITU alleges that its enrollment has decreased, but that is not a legal consequence.  *Id*.

Nor has ITU alleged that it is required to comply with any "terms" or other requirements by virtue of

SEVP's possession of the Nolan Memorandum.  Finally, given ITU's concession that the administrative

proceeding is ongoing, and that it is still entitled to admit nonimmigrant students and has access to

SEVIS, it is premature to say that SEVP's position on the Nolan Memorandum has had legal

consequences for ITU.  *See* Opp., 12:24-13:2.

ITU's Opposition fails to include any authority establishing that the alleged violation of attorney-

client privilege via SEVP's possession, review, and use of the Memorandum constitutes a final agency

action.  Rather than accept that it must await ICE's final determination in this enforcement action to seek

judicial review, ITU is, in effect, asking this Court to create a new standard that has no basis in case law

within this Circuit or, by ITU's admission, in any other Circuit.  To fashion this new standard, ITU

would have this Court borrow, for instance, from case law in the criminal seizure context, which has

little, if any, applicability here.  *See Matter of the Search of 636 S. 66th Terrace, Kan. City., Kan*, 835 F.

Supp. 1304 (D. Kan. 1993)(finding that irreparable harm is required for the exercise of the court's equity

jurisdiction in reference to circumstances where a movant pursuant to the rules of criminal procedure

cannot wait for the relief which might be afforded by a legal remedy and further determining that the

threat of criminal prosecution is not irreparable harm).  If a criminal indictment does not rise to the level

of irreparable harm, then nor does an administrative enforcement action in which a first arbiter's

determination is subject to independent review by an appellate body.

### 2.   Plaintiff's APA claims are not ripe and have not been administratively exhausted.

There is no dispute that SEVP's administrative action to withdraw ITU's certification to admit

nonimmigrant students is still pending.  ITU's Opposition makes clear that it filed this action

specifically to seek a ruling from this court regarding SEVP's position on the use of a document in this

1  ongoing administrative proceeding.  Opp., 19:27-20:2.  In the absence of any final agency action, and in

2  light of the ongoing administrative proceeding, ITU's argument that this Court should review SEVP's

3  position on the Nolan Memorandum, standing alone, and without first exhausting administrative

4  remedies, is without merit.

5      The ripeness doctrine avoids "premature adjudication" of disputes, *Scott v. Pasadena Unif. Sch.*

6  *Dist.*, 306 F.3d 646, 662 (9th Cir. 2002), and "prevents courts from deciding abstract issues that have not

7  yet had a concrete impact on the parties," *Vieux v. E Bay Reg'l Park Dist.*, 906 F.2d 1330, 1344 (9th Cir.

8  1990).  To determine whether a claim is ripe for judicial review, courts focus on "(1) the fitness of the

9  issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  *Nat'l*

10  *Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  In making its ripeness argument,

11  ITU cites *In re Coleman*, 560 F.3rd 1000 (9th Cir. 2009), and states, "the issues presented must be

12  definite and concrete, not hypothetical or abstract."  *In re Coleman*, 560 F.3rd at 1005.  Yet ITU's

13  speculation regarding how and if the Administrative Appeals Team ("AAT") may use and interpret the

14  Nolan Memorandum, if it has access to it at all, or its assumptions that ITU may lose its SEVP

15  certification, are also insufficient to justify a finding of ripeness pursuant to standard articulated in *In re*

16  *Coleman*.  Opp., 6.  Thus, these hypothetical future events surrounding the Nolan Memorandum are

17  insufficient to render this case ripe for judicial review.

18      Under the related doctrine of exhaustion, exhaustion of administrative matters is judicially

19  imposed as a prudential matter where (1) agency expertise makes agency consideration necessary to

20  generate a proper record and generate a proper decision, (2) relaxation of the requirement would

21  encourage the deliberate bypass of the administrative schedule, and (3) administrative review is likely to

22  allow the agency to correct its own mistakes and to preclude the need for judicial review.  *See Liang v.*

23  *Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004) ("Under the doctrine of exhaustion, 'no one is entitled to

24  judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'

25  Exhaustion can be either statutorily or judicially required") (quoting *McKart v. United States*, 395 U.S.

26  185, 193 (1969)); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Sheikh v. Lynch*, 2015 WL

27  7731802, at * 2 (N.D. Cal. Dec. 1, 2015); *cf. Ukiah Valley Med. Ctr*, 911 F.2d at 266-67 & n1

28  (discussing the relation between finality, ripeness and exhaustion in administrative law, but noting that

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
18-6228 EJD                                              6

"a finding of finality, or an applicable exception, is essential when the court's reviewing authority depends on one of the many statutes permitting appeal only of 'final' agency action, such as § 10 of the APA, 5 U.S.C. § 704").

ITU's argument that it does not have to exhaust administrative remedies because its presents a constitutional claim is baseless.  As the Supreme Court and Ninth Circuit have held, the attorney-client privilege is a rule of evidence, not a constitutional right.  *See* Opp., 24:6-22; s*ee, e.g., Maness v. Meyers*, 419 U.S. 449, 466 n.15 (1975) ("We are not aware that the Court has even identified a 'constitutionally protected attorney-client' privilege...."); *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985) ("Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right.").  ITU has failed to acknowledge or address this authority, or establish that it is proper for the Court to review a non-final agency decision during an ongoing administrative proceeding through any other means.  Given that ITU has not identified any final agency action with respect to SEVP's position on the Nolan Memorandum, it has not pointed to any facts or law showing that further adjudication by the agency is futile.

Despite ITU's claims to the contrary, exhaustion is required in this case.  As the Government has addressed, ITU has failed to point to any precedent demonstrating that the attorney-client privilege has risen to the level of a constitutional right, rendering its constitutional challenge in this case improper and its related argument that exhaustion is not required based on its constitutional challenge moot. Moreover, and significantly, even in cases where constitutional challenges have been averred, the Ninth Circuit has long held that the exhaustion of administrative remedies is required where relief may, as here, be granted by an administrative agency on other grounds.  *Murillo v. Mathews*, 588 F.2d 759, 761 (9th Cir. 1978) (finding that "affording the administrative agency an opportunity to resolve a dispute is especially important when administrative action may obviate the need for adjudication of constitutional issues," that "the doctrine of exhaustion of administrative remedies is not prevented from being applied solely by the fact the party applying for judicial relief urges a violation of rights secured by the federal constitution," and "[w]here relief may be granted on other nonconstitutional grounds, exhaustion is required."); *Montana Chapter of Civilian Technicians v. Young*, 514 F.2d 1165, 1167-68 (9th Cir. 1975); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974); *Aircraft & Diesel Corp. v.*

*Hirsch*, 331 U.S. 752, 772 (1947); *Monolith Portland Midwest Co. v. Reconstruction Finance Corp.*, 178 F.2d 854, 858 (9th Cir. 1949), cert. denied, 339 U.S. 932 (1950).  In *Barbur v. U.S. Citizenship & Immigration Servs.* at 2013 WL 3285490, 3 (June 26, 2013), the District of Nevada held that the mere allegation of or reference to a right secured by the Federal Constitution does not prevent the doctrine of exhaustion from being applied.  Indeed, as in *Montana Chapter of Civilian Technicians*, the court found that relief could be provided even avoiding the constitutional question.  *Id.*  Specifically, the court found "that the immigration judge and Board of Immigration Appeals were fully capable of remedying violations of due process relating to the statutes and regulations within their authority."  *Id.*  The court further held that allegations of due process violations are precisely the sorts of procedural errors which require exhaustion because, given the opportunity, the immigration court could correct any potential procedural error.  *Id., see Rashtabadi v. I.N.S.*, 23 F.3d 1562, 1567 (9th Cir.1994).  Significantly, the court noted that "plaintiff will be entitled to de novo review of her waiver application; that review by itself may resolve the claims raised in the Complaint.  Thus, Plaintiff is required to exhaust her administrative remedies before bringing suit in [the district c]ourt."  *Barbur* at *3.  In the instant case, ITU has not established a constitutional right to the attorney-client privilege.  And, as seen from the foregoing binding precedent, even where a constitutional claim is asserted, there is no exception from administrative exhaustion where, as here, the agency can decide and potentially moot the matter on other grounds.

**B.   ITU Has Failed To Sufficiently Allege That This Court Has Jurisdiction Pursuant to the Mandamus and Venue Act or the All Writs Act.**

**1.   This Court lacks subject matter jurisdiction pursuant to the Mandamus and Venue Act because Plaintiff failed to specify a nondiscretionary duty that Defendants failed to perform.**

ITU's Opposition fails to establish that this Court has jurisdiction over its request for a writ of mandamus.  Pursuant to the Mandamus & Venue Act of 1962 ("MVA"), 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  ITU does not dispute that the Ninth Circuit's test concerning when mandamus is appropriate requires that "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial

and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."
*Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003).  The writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes."  *United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)).

Moreover, ITU has failed to establish that it can satisfy the three required elements of this claim and that this court has jurisdiction as a result.  *Kildare*, 325 F.3d at 1084 (internal citation omitted) (subject matter jurisdiction for a mandamus claim will lie under § 1361 only if all elements of the claim are met).  Here, ITU's claim is not clear and certain.  ITU's assertion that the Nolan Memorandum is privilege reflects its own legal conclusion, with which SEVP has indicated it does not agree.  Given that the administrative proceeding is ongoing, and ITU has a pending appeal, this claim is not clear or certain.  *See* Compl., ¶ 36.  Nor has ITU asserted a nondiscretionary, ministerial duty.  ITU's assertion that SEVP's duty is nondiscretionary because it is prescribed by the Constitution fails in light of Supreme Court and Ninth Circuit authority states the attorney-client privilege is a rule of evidence, not a constitutional right.  *See, e.g., Maness*, 419 U.S. at 466 n.15, ("We are not aware that the Court has even identified a 'constitutionally protected attorney-client' privilege...."); *Clutchette*, 770 F.2d at 1471 ("Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right.").  Finally, ITU's appeal of the 2018 Withdrawal is pending.  *See* Compl, ¶ 49-50. In light of ITU's clarification that it seeks relief from this Court with respect to SEVP's position on the Nolan Memorandum, it is asking the Court to take this matter outside the purview of an ongoing administrative action.  *See* Opp. at 17:8-11.  A plaintiff, however, may not use mandamus to circumvent the administrative appeals process.  *Heckler v. Ringer*, 466 U.S. 602, 616-67 (1984) (affirming dismissal of mandamus action when plaintiff had not satisfied the exhaustion requirement).  ITU's mandamus claim should be dismissed on this ground alone.

ITU's reliance on *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010) and *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) for the proposition that this Court has mandamus jurisdiction because ITU is challenging an alleged intrusion into the attorney-client privilege is misplaced.  *See* Opp., 27:1-6.  In both cases, an appellate court considered a petition for a writ of mandamus challenging a district court ruling because no interlocutory appeal was available.  These

1   cases do not govern here, as ITU seeks to have the Court intervene in an ongoing administrative action.

2         **2.    In the absence of subject matter jurisdiction pursuant to the Mandamus and**
          **Venue Act, this Court also lacks subject matter jurisdiction pursuant to the**
3         **All Writs Act because it does not confer jurisdiction standing alone.**

4         ITU has failed to establish any threat to this Court's jurisdiction arising out of its pending appeal

5   of the 2018 Withdrawal prior to any subsequent district court litigation that would justify a writ pursuant

6   to the All Writs Act.  The All Writs Act provides that the "Supreme Court and all courts established by

7   Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and

8   agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  A party seeking an injunction

9   pursuant to the All Writs Act need only show that a court's jurisdiction may be impaired by the related

10  litigation or proceeding.  *See In re Baldwin-United Corp.*, 770 F.2d 328, 338-39 (2nd Cir. 1985) (noting

11  that All Writs Act injunctions "are needed to prevent third parties from thwarting the court's ability to

12  reach and resolve the merits of the federal suit before it").  ITU's argument that the Court must issue a

13  writ to "preserve the integrity of the proceedings" at the administrative level is not sufficient to meet this

14  high standard.  *See* Opp., 28:14-15.

15        Although the Supreme Court has held that, in some circumstances, the All Writs Act can provide

16  a district court with jurisdiction to issue an injunction in an administrative proceeding, such an action

17  requires that the party seeking the injunction establish (1) that the refusal to grant the injunction will

18  defeat the court's review jurisdiction once the agency action is final, and (2) that Congress intended to

19  permit or preclude a status quo injunction.  *See V.N.A. of Greater Tift County, Inc. v. Heckler*, 711 F.2d

20  1020, 1029 (11th Cir. 1983) (internal citations omitted).  ITU has made no showing that allowing the

21  agency to complete the administrative proceeding will defeat this court's review jurisdiction, or that

22  Congress intended to either permit or preclude a status quo injunction.  *See Pennsylvania Bureau of*

23  *Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Although [the All Writs Act] empowers

24  federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue

25  ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.").

26        **C.    ITU Is Not Entitled To Declaratory Relief.**

27        There is no dispute that the Declaratory Judgment Act creates a remedy where jurisdiction

28  already exists.  *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir.

2011) ("while the DJA expanded the scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction"); *see also* Opp., 16:11-24.  As set out in full in the Federal Defendants' Motion to Dismiss and this Reply, ITU has failed to establish jurisdiction or state a claim for which relief can be granted.  Accordingly, declaratory relief is not available.  *Skelly Oil Co. v. Phillips Petr. Co.*, 399 U.S. 667, 671 (1950); *Burns Ranches v. Dep't. of Interior*, 851 F.Supp.2d 1267, 1271-72 (D. Oregon 2012).

### D.   ITU's First Claim For Declaratory Relief for Violation of Its Fifth Amendment Due Process Rights Should Be Dismissed For Failure to State a Claim.

ITU's First Claim for Declaratory Relief for violation of either its substantive or its procedural Fifth Amendment due process rights should be dismissed.[4]

As an initial matter, there is no dispute that on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Here, ITU's assertion that the Defendants have violated its privilege is a legal conclusion, as is the attendant underlying assumption that the privilege applies to the Nolan Memorandum in the first instance.  *See United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (holding that "[i]ssues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law" and setting out an eight-part test to determine whether information is covered by the privilege.)

As noted in Defendant's Motion to Dismiss, the Due Process Clause of the Fifth Amendment

---

[4] The Ninth Circuit has held that § 702 of the APA "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable." *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 & n.9 (9th Cir. 1989). Accordingly, ITU's due process claim is not subject to Section 704 of the APA, which limits judicial review to final agency actions. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017); *see also Robinson v. Salazar*, 885 F.Supp.2d 1002, 1027–28 (E.D. Cal. 2012) (concluding that the holding of *Presbyterian Church* was limited to constitutional claims seeking equitable relief).

1   provides that no person shall "be deprived of life, liberty, or property, without due process of law.  U.S.

2   Const. amend. V.; Dkt. 27 at 16-23.  A threshold requirement to a substantive or procedural due process

3   claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Ching v.*

4   *Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*,

5   24 F.3d 56, 62 (9th Cir.1994)).  As Defendants' motion also pointed out, both the Supreme Court and

6   the Ninth Circuit have declined to recognize the attorney-client privilege, standing alone, as

7   constitutionally protected.  *See, e.g., Maness*, 419 U.S. at 466 n.15 ("We are not aware that the Court has

8   even identified a 'constitutionally protected attorney-client' privilege...."); *Clutchette*, 770 F.2d at 1471

9   ("Standing alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a

10  constitutional right.").  ITU fails to acknowledge either this Supreme Court or Ninth Circuit precedent,

11  which forecloses its claim for a violation of either its substantive or due process rights.

12      ITU's reference to a Ninth Circuit discussion of the attorney-client privilege in the context of the

13  crime-fraud exception does not resuscitate its claim.  *See* Opp., 29:17-30:2, citing *In re Napster, Inc.*

14  *Copyright Litig.*, 479 F.3d 1078, 1093 (9th Cir. 2007), *abrogated by Mohawk Indus., Inc. v. Carpenter*,

15  558 U.S. 100 (2009).  In the context of evaluating whether the crime-fraud exception applied in the civil

16  case before it, the *In re Napster* Court stated that "[t]he attorney-client privilege protects fundamental

17  liberty interests by allowing individuals to seek the legal advice they need "to guide them through [the]

18  thickets" of complex laws.  *Id.*, citing *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir.1996).  It did

19  not, however, overrule or even consider the Supreme Court and Ninth Circuit precedent holding that the

20  attorney-client privilege is a rule of evidence, not a constitutional right.  *See Maness*, 419 U.S. at 466

21  n.15, *see also Clutchette*, 770 F.2d at 1471.

22      In light of ITU's narrow allegation that its due process rights have been violated by SEVP's

23  possession, review, and use of the Nolan Memorandum (Compl., ¶ 56), and Ninth Circuit precedent

24  stating the attorney-client privilege is not protected by the Fifth Amendment, its argument that it has

25  been deprived of other liberty and property rights is unavailing.  Opp. at 29:12-17.  ITU argues that in

26  addition to a violation of its attorney-client privilege, it has been deprived of "past and future lost

27  revenue from the decline in student enrollment, and the potential loss of its certification to enroll

28  nonimmigrant students."  *Id.*  ITU has pointed to no authority, and the Federal Defendants are aware of

none, that it has a Fifth Amendment due process interest in lost revenue.  With respect to the potential loss of its SEVP certification, the District of Columbia Circuit has held that a certification to admit nonimmigrant students is a valuable asset in the nature of a license that is entitled to procedural due process protection.  *Blackwell Coll. of Bus. v. Attorney Gen.*, 454 F.2d 928, 932 (D.D.C. 1971).  In *Blackwell*, however, the government had already withdrawn the plaintiff school's certification, which ITU does not allege has happened here.  *See id.* at 931.  Moreover, this procedural due process question is not before the Court, nor is it ripe, because as ITU concedes, the administrative process is not yet complete and, thus, the loss of ITU's SEVP certification remains speculative.  *See* Compl., ¶ 50.

ITU's attempt to salvage its claim by arguing, in the alternative, that the Federal Defendants' conduct rises to the level of "outrageous government conduct" fares no better.  Opp. at 30:3-31:8.  To establish a substantive due process violation, ITU must demonstrate that Defendants' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998), abrogated on other grounds by *Saucier v. Katz*, 533 U.S. 194 (2001).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *Id.* at 849.

Here, ITU alleges that it corresponded on multiple occasions with SEVP regarding its use of the Nolan Memorandum.  Compl. ¶ 36, 44, Opp. at 10:21-11:15.  ITU argues that it was never told that the Nolan Memorandum was "voluntarily" provided to the agency, that this is a "novel allegation," and that "ITU does not know how SEVP obtained" the document.  *See* Opp., 29:23-27 n. 2.  However, ITU has incorporated in its Complaint and placed on the record in this action correspondence from SEVP that states a whistleblower intentionally provided the document to the agency.  *See* Dkt. 26-5-10.

ITU acknowledges that it has had two opportunities to appeal during the administrative proceedings before the agency.  Compl., ¶ 40, 49, Opp. at 11:27-12:3.  One appeal resulted in SEVP reopening the proceedings to provide ITU with a telephonic interview, and one appeal is still pending.  Compl., ¶ 40, 49; Opp. at 12:1-3; 12:24-25.  Although ITU alleges that SEVP relied on the Nolan Memorandum in its notices regarding the reasons for its withdrawal of ITU's certification, ITU incorporated by reference into its Complaint and placed on the record in this matter a letter from SEVP indicating there were additional grounds for the action.  *See* Compl., ¶ 39, 42; Opp. 11:25-27; 12:7-8,

RJN Exh. G.  In fact, in its September 28, 2017 Motion by Service Officer, SEVP asserted that during compliance reviews between 2010 to 2014, ITU's responses indicated that it had failed to maintain the required records.  RJN, Exh. G.  Although ITU disagrees with SEVP's actions, it has failed to allege that the Federal Defendants have engaged in any conduct that shocks the conscience.

None of the conduct in the criminal cases cited by ITU is analogous here, nor does it establish that the government's conduct shocks the conscience.  *See* Opp., 30:3-31:8.  In *United States v. Stinson*, the Ninth Circuit held there was no due process violation in light of allegations of outrageous government conduct regarding certain government witnesses who were paid to testify, had previously perjured themselves, and were allegedly threatened by law enforcement officers.  *See United States v. Stinson*, 647 F.3d 1196, 1209 (2011). The Ninth Circuit held that "[i]n order to show outrageous government conduct, defendants must show conduct that violates due process in such a way that it is "so grossly shocking and so outrageous as to violate the universal sense of justice."  *See id*. (internal citations omitted).  This defense is "limited to extreme cases in which the government's conduct violates fundamental fairness."  *See id*. (internal citations omitted).  Similarly, the Ninth Circuit held there was no due process violation where an informant allegedly engaged in sexual activity with the defendant and introduced her to crack cocaine because such conduct transpired before the informant started working with the government.  *See United States v. Restrepo*, 930 F.2d 705, 711, 712-13 (1991).

Similarly, the out of circuit authority cited by ITU is inapposite.  For instance, the Fourth Circuit's decision that it was a due process violation for an attorney who became an AUSA to join the prosecution of his former clients regarding matters identical to those about which he had counseled them has no bearing on this matter.  *See United States v. Schell*, 775 F.2d 559, 565 (4th Cir. 1985).  ITU's claims are also not supported by the Third Circuit's holding that it was harmless error to not hold an evidentiary hearing regarding the existence of an attorney-client relationship because the record fell "woefully short of establishing the sort of purposeful intrusion into [the criminal defendant's] attorney client relationship with [her alleged attorney] that would rise to the level of outrageousness."  *See United States v. Voight*, 89 F.3d 1050, 1069, 1071 (3rd Cir. 1996).  Finally, a district court's denial of a defendant's motion to dismiss the charges against him or her for tax offenses on the basis of an alleged government invasion of the defendant's attorney-client privilege fails to further ITU's argument.  *See*

1    *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997).

2         In the absence of any constitutionally protected right or outrageous government conduct rising to

3    the level of a due process claim, ITU's argument that it has been prejudiced cannot resuscitate its claim.

4    *See* Opp., 31:9-32:10.

5    **III.   CONCLUSION**

6         For the reasons stated above, Plaintiff's Complaint should be dismissed in its entirety.

7    DATED: April 5, 2019                          Respectfully submitted,

8

9                                                  DAVID L. ANDERSON
                                                   United States Attorney

10                                                 */s Rebecca A. Falk*
                                                   REBECCA A. FALK

11                                                 Assistant United States Attorney

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28